1 | ROBBINS GELLER RUDMAN
   & DOWD LLP
2 | DAVID C. WALTON (167268)
BRIAN E. COCHRAN (286202)
3 | 655 West Broadway, Suite 1900
San Diego, CA  92101
4 | Telephone:  619/231-1058
619/231-7423 (fax)
5 | davew@rgrdlaw.com
bcochran@rgrdlaw.com
6 |     – and –
SAMUEL H. RUDMAN
7 | 58 South Service Road, Suite 200
Melville, NY  11747
8 | Telephone:  631/367-7100
631/367-1173 (fax)
9 | srudman@rgrdlaw.com

10 | Attorneys for Plaintiff

11 | UNITED STATES DISTRICT COURT

12 | CENTRAL DISTRICT OF CALIFORNIA

13 | WESTERN DIVISION

| | |
|---|---|
| R. BRIAN TERENZINI, Individually and on Behalf of All Others Similarly Situated, | Case No. 2:20-cv-11444 |
| | CLASS ACTION |
| Plaintiff, | COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAW |
| vs. | |
| GOODRX HOLDINGS, INC., DOUGLAS HIRSCH, TREVOR BEZDEK and KARSTEN VOERMANN, | |
| Defendants. | DEMAND FOR JURY TRIAL |

Plaintiff R. Brian Terenzini ("plaintiff"), individually and on behalf of all others similarly situated, alleges the following based upon information and belief as to the investigation conducted by plaintiff's counsel, which included, among other things, a review of U.S. Securities and Exchange Commission ("SEC") filings by GoodRx Holdings, Inc. ("GoodRx" or the "Company") and securities analyst reports, press releases, and other public statements issued by, or about, the Company.  Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.     This is a federal securities class action brought on behalf of all purchasers of GoodRx Class A common stock (the "Class") between September 23, 2020 and November 16, 2020, inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

## JURISDICTION AND VENUE

2.     The claims asserted herein arise under §§10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. §240.10b-5.  This Court has jurisdiction over the subject matter of this action under §27 of the Exchange Act, 15 U.S.C. §78aa, and 28 U.S.C. §1331, because this is a civil action arising under the laws of the United States of America.

3.     Venue is proper in this District under §27 of the Exchange Act, 15 U.S.C. §78aa, and 28 U.S.C. §1391(b)-(d).  The Company maintains its principal executive offices in this District, and many of the acts charged herein, including the dissemination of materially false and misleading information, occurred in substantial part in this District.

4.     In connection with the acts alleged in this complaint, defendants (defined below) directly or indirectly, used the means and instrumentalities of interstate commerce, including, without limitation, the U.S. mail, interstate telephone and other

1  electronic communications, and the facilities of the NASDAQ Global Select Market
2  ("NASDAQ"), a national securities exchange.

3  **PARTIES**

4  5.   Plaintiff R. Brian Terenzini, as set forth in the accompanying certification
5  incorporated by reference herein, purchased GoodRx Class A common stock
6  (hereinafter "common stock" or "common shares") during the Class Period and has
7  been damaged thereby.

8  6.   Defendant GoodRx is a holding company that owns and operates a U.S.
9  consumer-focused digital healthcare platform.  The Company maintains its principal
10  executive offices in Santa Monica, California and its common stock is listed and
11  trades on the NASDAQ under the ticker symbol "GDRX."

12  7.   Defendant Douglas Hirsch ("Hirsch") is, and was at all relevant times,
13  Co-Chief Executive and a director of GoodRx.

14  8.   Defendant Trevor Bezdek ("Bezdek") is, and was at all relevant times,
15  Co-Chief Executive and a director of GoodRx.

16  9.   Defendant Karsten Voermann ("Voermann") is, and was at all relevant
17  times, Chief Financial Officer of GoodRx.

18  10.   Defendants Hirsch, Bezdek and Voermann are collectively referred to
19  hereinafter as the "Individual Defendants."  GoodRx and the Individual Defendants
20  are collectively referred to herein as "defendants."

21  11.   Because of the Individual Defendants' executive positions, they each had
22  access to the undisclosed adverse information about GoodRx's business, operations,
23  services, competition, competitive market trends, and present and future business
24  prospects via internal corporate documents, conversations and connections with other
25  corporate officers and employees, attendance at management and Board of Directors
26  meetings and committees thereof.

27  12.   Each of the Individual Defendants was directly involved in the
28  management and day-to-day operations of the Company at the highest levels and was

privy to confidential proprietary information concerning the Company and its business, operations, services, competition, competitive market trends and present and future business prospects, as alleged herein.  In addition, the Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein, were aware of, or recklessly disregarded, the false and misleading statements being issued regarding the Company, and approved or ratified these statements, in violation of the federal securities laws.

13.    As officers and controlling persons of a publicly held company whose common stock is registered with the SEC pursuant to the Exchange Act and trades on the NASDAQ, which is governed by the provisions of the federal securities laws, the Individual Defendants each had a duty to promptly disseminate accurate and truthful information with respect to the Company's operations, business, services, markets, competition, competitive market trends and present and future business prospects.  In addition, the Individual Defendants each had a duty to correct any previously issued statements that had become materially misleading or untrue, so that the market price of the Company's publicly traded common shares would be based upon truthful and accurate information.  Defendants' false and misleading misrepresentations and omissions during the Class Period violated these specific requirements and obligations.

14.    The Individual Defendants, because of their positions of control and authority as officers and/or directors of the Company, were able to, and did, control the content of the various SEC filings, press releases and other public statements pertaining to the Company during the Class Period.  Each Individual Defendant was provided with copies of the documents alleged herein to be misleading before or shortly after their issuance and/or had the ability and/or opportunity to prevent their issuance or cause them to be corrected.  Accordingly, each Individual Defendant is responsible for the accuracy of the public statements detailed herein and is, therefore, primarily liable for the representations contained therein.

15.     Each defendant is liable as a participant in a fraudulent scheme and course of business that operated as a fraud or deceit on purchasers of GoodRx common stock by disseminating materially false and misleading statements and/or concealing material adverse facts.  The scheme: (i) deceived the investing public regarding GoodRx's business, operations, services, competition, competitive market trends and present and future business prospects; (ii) facilitated the Company's September 2020 initial public offering ("IPO"); (iii) created artificial demand for the GoodRx common shares sold in the IPO; (iv) enabled the Company to receive *$887 million* in net proceeds from the sale of GoodRx common stock in the IPO; (v) enabled certain existing shareholders, including affiliates of the Individual Defendants, executive officers and Company employees, to collectively reap gross proceeds of more than *$369 million* from the sale of GoodRx common stock in the IPO; and (vi) caused plaintiff and the Class to purchase GoodRx publicly traded common stock at artificially inflated prices.

## SUBSTANTIVE ALLEGATIONS

16.     Nearly a decade ago, defendant Hirsch, a former Facebook Inc. executive, and defendant Bezdek created what has now become a popular and fast-growing digital U.S. prescription drug shopping platform designed to aid people in finding the lowest prescription drug prices in their local areas.  In October 2015, GoodRx acquired 100% of the outstanding shares of GoodRx, Inc., the entity that owns and operates the digital shopping platform created by defendants Hirsch and Bezdek.

17.     GoodRx represents that it provides consumers with free information and tools that allow them to compare prices and save on their prescription drug purchases. The Company provides its users with these services via apps and websites that display prices and discounts at local and mail-order pharmacies for both insured and uninsured Americans.

18.     GoodRx primarily earns its revenue from prescription transaction fees paid by Pharmacy Benefit Managers ("PBMs") that manage formularies and prescription transactions.  The Company also generates revenue from subscription, advertising and telehealth services.

19.     Generally, PBMs are obligated to pay the Company prescription transaction fees when a prescription is filled with a GoodRx code provided through its platform that allows the consumer to purchase the prescribed drug at a price that is less than a pharmacy's list price.  The agreements between GoodRx and PBMs generally provide that when a consumer uses a GoodRx code presented on its platform, the Company is entitled to either a percentage of fees the PBM charges the pharmacy or a fixed amount per type of medication prescription.  GoodRx recognizes revenue for the estimated fee due from the PBM when the pharmacy fills the prescribed medication.

20.     On August 28, 2020, GoodRx filed with the SEC a Form S-1 Registration Statement (the "Registration Statement") for its IPO signed by the Individual Defendants.  The Registration Statement, as amended, was declared effective by the SEC on September 22, 2020.

21.     On September 24, 2020, GoodRx filed with the SEC a prospectus, which forms part of the Registration Statement (the "Prospectus"), for the IPO offering to sell to the public over 23.4 million common shares by the Company (excluding the underwriters' option to purchase an additional 5.2 million common shares) and 11.2 million common shares by certain selling stockholders.

22.     On September 25, 2020, GoodRx closed its IPO.  In the offering, the Company and certain existing stockholders sold over 39.8 million common shares for $33 per share, including the full exercise of the underwriters' option, generating over $1.3 billion in gross offering proceeds.

23.     At the time of the IPO, unbeknownst to investors, Amazon.com, Inc. ("Amazon") was developing and would soon introduce its own online and mobile

prescription medication ordering and fulfillment service that would directly compete with GoodRx. Defendants timed the IPO so that it was priced before Amazon announced its online pharmaceutical business to facilitate the IPO and create artificial demand for the common shares sold therein, as well to maximize the amount of money the Company and the selling stockholders could raise in the IPO. Given defendants' knowledge of Amazon's intention to enter the online pharmaceutical business, and their misleading statements about GoodRx's competitive position made contemporaneously with that knowledge, defendants' materially false and/or misleading statements alleged herein were made willfully and caused GoodRx common stock to trade at artificially inflated prices during the Class Period.

## MATERIALLY FALSE AND MISLEADING STATEMENTS AND OMISSION ISSUED DURING THE CLASS PERIOD

24. The Class Period begins on September 23, 2020, the first day GoodRx common stock began publicly trading on the NASDAQ. The previous day, the SEC had declared the Registration Statement effective. The Registration Statement remained alive and uncorrected throughout the Class Period and was incorporated into and formed part of the Prospectus filed on September 24, 2020.

25. The Registration Statement contained materially false and misleading statements about GoodRx's competitive positioning, stating, in pertinent part: ***"Our partnerships across the healthcare ecosystem, scale and strong consumer brand create a deep competitive moat that is reinforced by our proprietary technology platform***, which processes over 150 billion pricing data points every day and integrates that data into an interface that is convenient and easy to use for consumers."[1]

26. Similarly, the Registration Statement stated, in pertinent part: "***We are a market leader with a significant scale and brand advantage over our competitors***.

---

[1]     Unless otherwise noted, all emphasis herein is added.

1     ***Our growth accelerates self-reinforcing network effects that further strengthen our***

2     ***competitive position***."

3         27.     The Registration Statement also identified various competitive

4     advantages which purportedly "set[] [GoodRx] [a]part," stating, in pertinent part:

5         **What Sets Us Apart**

6         ***We are a market leader with a significant scale and brand***

7         ***advantage over our competitors. Our growth accelerates self-***

8         ***reinforcing network effects that further strengthen our competitive***

9         ***position. Our competitive strengths consist of***:

10       •     ***Leading Platform:***   We believe that we are the largest platform

11          that aggregates pricing for prescriptions. Our proprietary platform

12          enables us to collect and normalize over 150 billion prescription

13          pricing data points every day from sources spanning the

14          healthcare industry.

15       •     ***Trusted Brand:***   We have built a trusted brand based on nearly a

16          decade of consumer-focused product development. We strive to

17          be with the consumer throughout their healthcare journey. We are

18          guided by the principle of doing well for consumers and the

19          healthcare industry as a whole, which we believe helps us build

20          trust, engagement and brand loyalty.

21       •     ***Scaled and Growing Network:***   Our leading consumer-focused

22          digital healthcare platform and brand have facilitated rapid growth

23          in our consumer base, which has helped us achieve significant

24          scale. As we have scaled, we have been able to increase the

25          savings that we provide our consumers, in part by leveraging our

26          growing consumer base to attract more partners and source better

27          prices.

28

- **Consumer-focus:** We empower consumers with the tools and resources to navigate the complexity of the healthcare system. Our platform delivers a consumer-first experience that is convenient and is easy to use and understand.

- **Extensible Platform:** The large number of highly engaged consumers who trust our brand and platform provide a strong foundation for the development of new products that extend across the healthcare market. We have demonstrated our ability to develop new products such as our subscription offerings and pharmaceutical manufacturer solutions offering, and integrate acquired companies such as HeyDoctor.

- **Cash Generative Monetization Model:** We believe our business model has facilitated the rapid growth and expansion of our platform. We have a track record of generating cash flows, allowing us to reinvest in platform expansion and growth.

28.    In addition, the Registration Statement provided generic statements of potential competitive pressures that "may" or "could" impact GoodRx's business in the future, but failed to disclose the imminent and known direct competitor that was being developed by Amazon at the time of the IPO, which would have severe negative consequences for GoodRx's business, operations and financial prospects. Indeed, the Registration Statement did not even identify Amazon as a potential competitor, instead stating in pertinent part:

> We compete with companies that provide savings on prescriptions, as well as companies that offer telehealth services and advertising and market access for pharmaceutical manufacturers. Within the prescriptions market, our competition is fragmented and consists of competitors that are smaller than us in scale. There can be no assurance that competitors will not develop and market similar offerings to ours, or

that industry participants, such as integrated PBMs and pharmacy providers, will not seek to leverage our platform to drive consumer demand and traffic to their networks and eventually away from, or outside of, our platform. We ***may*** face increased competition from those that attempt to replicate our business model or marketing tactics, such as discount websites, apps, cash back and loyalty programs and new comparison shopping sites from various industry participants, any of which ***could*** impact our ability to attract and retain consumers.

29. Rather than disclose the truth, the Registration Statement highlighted the Company's purported successes in growing its market share, stating, in pertinent part:

Our success is demonstrated by our 4.4 million Monthly Active Consumers for the second quarter of 2020, the 15 million Monthly Visitors for the second quarter of 2020, the approximately $20 billion of cumulative consumer savings generated for GoodRx consumers through June 30, 2020 and our consumer and healthcare professional NPS scores of 90 and 86, respectively, as of February 2020. On average, we have been the most downloaded medical app on the Apple App Store and Google Play App Store for the last three years. Our GoodRx app had a rating of 4.8 out of 5.0 stars in the Apple App Store and 4.7 out of 5.0 stars in the Google Play App Store, with over 700,000 combined reviews as of June 30, 2020. In both app stores, our HeyDoctor app had a rating of 5.0 out of 5.0 stars, with over 8,000 combined reviews as of June 30, 2020.

30. The Registration Statement likewise stated: "We believe our financial results reflect the significant market demand for our offerings and the value that we provide to the broader healthcare ecosystem."

31. Moreover, the Registration Statement highlighted the Company's close cooperation with Amazon and the purported benefits provided to GoodRx's business

and platform as a result of this close relationship.  For example, the Registration Statement represented: "We leverage major third-party cloud and data service providers, such as Amazon Web Services" and claimed that GoodRx had "built a modular system of services on top of this infrastructure" that was "cloud native, scalable and reliable."  The Registration continued, in pertinent part:

> **We rely on software-as-a-service, or SaaS, technologies from third parties**.
>
> We rely on SaaS technologies from third parties in order to operate critical functions of our business, including financial management services, relationship management services, marketing services and data storage services. For example, we rely on Amazon Web Services for a substantial portion of our computing and storage capacity . . . .  Amazon Web Services provides us with computing and storage capacity pursuant to an agreement that continues until terminated by either party.

32.     On November 12, 2020, GoodRx issued a press release announcing its financial results for the 2020 third quarter, the period ended September 30, 2020. Later that day, GoodRx held a conference call with analysts and investors to discuss the Company's operations and earnings release.  During the conference call, just four business days before Amazon announced its intention to enter the online pharmaceutical business, defendants were asked by a securities analyst to "talk about any changes you're seeing in the competitive environment." In response, defendant Bezdek falsely and misleadingly stated, in pertinent part, "*what we've seen is we have not seen sort of any competitors that have really impacted our business in any way sort of historically or currently*."

33.     The statements referenced in ¶¶25-32 above were materially false and misleading when made because they misrepresented and failed to disclose the adverse

1  facts about Amazon's imminent entry into the online pharmaceutical business, which

2  were known to defendants or recklessly disregarded by them.

3      34.    Specifically, defendants knew, but failed to disclose, that Amazon had

4  been in the process of developing and would soon introduce its own online and mobile

5  prescription medication ordering and fulfillment service.  Indeed, numerous media

6  outlets had been reporting about Amazon's anticipated foray into the online

7  pharmaceutical business after its 2018 acquisition of PillPack, Inc., an online

8  pharmacy startup founded in 2013.  However, outside investors did not know the

9  scope or specific nature of Amazon's pharmaceutical activities until the revelations

10  detailed herein, including Amazon's use of discount cards that can be used in brick

11  and mortar pharmacies, its plans to enter the discount cash-pay market and its attempt

12  to directly replicate and compete with the GoodRx business model.

13      35.    Moreover, defendants were aware that Amazon's entry into the online

14  prescription medication ordering and fulfillment business was imminent because of

15  the Company's close relationship with Amazon and reliance on Amazon Web

16  Services to support the Company's platform.  Furthermore, Amazon subsequently

17  teamed up with Inside Rx, a leading source for prescription drug prices and savings in

18  the United States that procures discounts on thousands of brand name and generic

19  medications.  GoodRx has been a partner of Inside Rx since May 2017, and its

20  website states that it and Inside Rx have partnered with major drug manufacturers and

21  pharmacies to reduce the cost of more than 209 brand-name prescription drugs.

22      36.    On November 17, 2020, just weeks after GoodRx completed its IPO,

23  Amazon announced two new pharmacy offerings, a Prime Rx plan and a discount card

24  program, which, among other things, would compete directly with GoodRx's platform

25  by making it "simple for customers to compare prices and purchase medications for

26  home delivery, all in one place."  The Amazon press release stated, in pertinent part:

27      Amazon.com, Inc. (NASDAQ: AMZN) today announced two new

28      pharmacy offerings to help customers conveniently purchase their

prescription medications. Amazon Pharmacy, a new store on Amazon, allows customers to complete an entire pharmacy transaction on their desktop or mobile device through the Amazon App.  Using a secure pharmacy profile, customers can add their insurance information, manage prescriptions, and choose payment options before checking out. Prime members receive unlimited, free two-day delivery on orders from Amazon Pharmacy included with their membership. . . .

Also new today, Prime members can access savings on medications at Amazon Pharmacy when paying without insurance, as well as at over 50,000 other participating pharmacies nationwide.  The Amazon Prime prescription savings benefit saves members up to 80% off generic and 40% off brand name medications when paying without insurance.  Prime members will have access to their prescription savings at checkout on Amazon Pharmacy, or can learn more at amazon.com/primerx.

*Together the Amazon Prime prescription savings benefit and Amazon Pharmacy make it simple for customers to compare prices and purchase medications for home delivery, all in one place.*

37.     That same day, CNBC.com reported that Amazon Prime members would now have access to discounts of up to 80% on generic medications and up to 40% on brand-name prescriptions through its relationship with the Inside Rx savings program. This competitive pricing posed a severe threat to GoodRx's business model.

38.     In response to this news, the price of GoodRx common stock declined *23%*, from $46.72 per share to $36.21 per share by market close on November 17, 2020, erasing more than *$4 billion* of the Company's market capitalization on extremely heavy trading volume of over 23 million shares traded.  Prior to the disclosure of the adverse facts detailed above, Andrew Slutsky, the Company's Consumer President, and Idea Men, LLC, an entity whose managing members

1  included defendants Hirsch and Bezdek, collectively sold **$132 million** worth of
2  GoodRx common stock in the IPO.

3      39.    After Amazon's Prime Rx plan and discount card program were made
4  public, securities analysts downgraded and slashed price targets on GoodRx common
5  shares on fears that Amazon's pharmacy offerings would materially impact the
6  Company's business and that GoodRx's price saving tools could be made irrelevant
7  by Amazon's discounts.

8      40.    The market for GoodRx common stock was open, well-developed and
9  efficient at all relevant times.  As a result of the alleged materially false and/or
10 misleading statements, and/or omissions of material fact alleged herein, GoodRx
11 common stock traded at artificially inflated prices during the Class Period.  Plaintiff
12 and other members of the Class purchased GoodRx common stock relying upon the
13 integrity of the market price of GoodRx common stock and market information
14 relating to GoodRx, and have been damaged thereby.

15     41.    During the Class Period, defendants materially misled the investing
16 public, thereby inflating the price of GoodRx common stock, by publicly issuing false
17 and misleading statements and omitting to disclose material facts necessary to make
18 defendants' statements, as set forth herein, not false and misleading.  Said statements
19 and omissions were materially false and misleading in that they failed to disclose
20 material adverse information and misrepresented the truth about the Company, its
21 business and operations, as alleged herein.

22     42.    At all relevant times, the material misrepresentations and omissions
23 particularized in this complaint directly or proximately caused, or were a substantial
24 contributing cause of, the damages sustained by plaintiff and other members of the
25 Class.  As described herein, during the Class Period, defendants made or caused to be
26 made a series of materially false or misleading statements about GoodRx's business,
27 competition, competitive market trends and its operations.  These material
28 misstatements and omissions had the cause and effect of creating in the marketplace

an unrealistically positive assessment of GoodRx, its business, competitive risks, services, and financial prospects, thus causing the Company's common stock to be overvalued and artificially inflated at all relevant times.  Defendants' materially false and misleading statements during the Class Period resulted in plaintiff and other members of the Class purchasing GoodRx common stock at artificially inflated prices, thus causing the damages complained of herein.

### ADDITIONAL SCIENTER ALLEGATIONS

43.     As alleged herein, defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. Defendants, by virtue of their receipt of information reflecting the true facts regarding the GoodRx's competitive landscape, their control over, and/or receipt and/or modification of GoodRx's allegedly materially misleading misstatements and/or their associations with the Company, which made them privy to confidential proprietary information concerning GoodRx, participated in the fraudulent scheme alleged herein.

44.     The fraudulent scheme described herein could not have been perpetrated during the Class Period without the knowledge and complicity of, or at least the reckless disregard by, personnel at the highest levels of the Company, including the Individual Defendants.  Given their executive level positions with GoodRx, the Individual Defendants controlled the contents of GoodRx's public statements during the Class Period.  The Individual Defendants were each provided with or had access to the information alleged herein to be false and/or misleading prior to or shortly after its issuance and had the ability and opportunity to prevent its issuance or cause it to be corrected.  Because of their positions and access to material non-public information, the Individual Defendants knew or recklessly disregarded that the adverse facts

specified herein had not been disclosed to and were being concealed from the public and that the positive representations that were being made were false and misleading. As a result, each of the Individual Defendants was responsible for the accuracy of GoodRx's corporate statements and is, therefore, responsible and liable for the representations contained therein.

45.     Plaintiff also alleges that scienter of the Individual Defendants (who, as executive officers of the Company, knew or recklessly ignored facts related to the core operations of GoodRx) can be imputed to GoodRx.

46.     Further evidencing their scienter, defendants timed the IPO so that it was priced before Amazon announced its online pharmaceutical business to facilitate the IPO and create artificial demand for the common shares sold therein, as well to maximize the amount of money the Company and selling shareholders could raise in the IPO.  The Company received *$887 million* in net proceeds from the sale of GoodRx common stock in the IPO and Andrew Slutsky, the Company's Consumer President, and Idea Men, LLC, an entity whose managing members included defendants Hirsch and Bezdek, collectively sold *$132 million* of GoodRx common stock in the IPO.  In total, GoodRx insiders collectively reaped gross proceeds of more than *$369 million* from the sale of GoodRx common stock in the IPO.

47.     Moreover, defendants were aware that Amazon's entry into the online prescription medication ordering and fulfillment business was imminent because Amazon was a close business partner with GoodRx.  Furthermore, Amazon subsequently teamed up with Inside Rx.  GoodRx has been a partner of Inside Rx since May 2017, and its website states that it and Inside Rx have partnered with major drug manufacturers and pharmacies to reduce the cost of more than 209 brand-name prescription drugs.  The Company's close connections to and cooperation with Amazon, both directly and through Inside Rx, further confirm defendants acted with scienter in making the materially false and misleading statements identified herein.

48.     Given defendants' knowledge of Amazon's intention to enter the online pharmaceutical business and their misleading statements about GoodRx's competitive position made contemporaneously with that knowledge, defendants' materially false and/or misleading statements alleged herein were made willfully and caused GoodRx common stock to trade at artificially inflated prices during the Class Period.

**LOSS CAUSATION**

49.     As detailed herein, during the Class Period, defendants engaged in a scheme to deceive the market and a course of conduct that artificially inflated the price of GoodRx common stock.  This scheme operated as a fraud or deceit on Class Period purchasers of GoodRx common stock by failing to disclose and misrepresenting the adverse facts detailed herein.   When defendants' prior misrepresentations and fraudulent conduct were disclosed and became apparent to the market, the price of GoodRx common stock declined significantly as the prior artificial inflation came out of the price of GoodRx common stock.

50.     By concealing from investors the adverse facts detailed herein, defendants presented a misleading picture of GoodRx's business, prospects and operations.  Defendants' false and misleading statements had the intended effect and caused GoodRx common stock to trade at artificially inflated levels throughout the Class Period, reaching as high as $64.22 per share on September 29, 2020.  Following the adverse revelations detailed herein, the price GoodRx common stock fell to a low of just $33.51 per share on November 18, 2020 – ***48% below*** the Class Period high.  As a result of their purchases of GoodRx common stock at artificially inflated prices during the Class Period, plaintiff and the other Class members suffered economic loss, *i.e.,* damages, under the federal securities laws.

51.     When the truth about the Company was revealed to the market, the price of GoodRx common stock fell significantly.  The decline removed the inflation from the price of GoodRx common stock, causing real economic loss to investors who had purchased GoodRx common stock during the Class Period.  The decline in the price of

GoodRx common stock when the corrective disclosure came to light was a direct result of the nature and extent of defendants' fraudulent misrepresentations being revealed to investors and the market.  The timing and magnitude of the price decline in GoodRx common stock negate any inference that the loss suffered by plaintiff and the other Class members was caused by changed market conditions, macroeconomic or industry factors or Company-specific facts unrelated to defendants' fraudulent conduct.

52.     The economic loss, *i.e.,* damages, suffered by plaintiff and the other Class members was a direct result of defendants' fraudulent scheme to artificially inflate the price of GoodRx common stock and the subsequent significant decline in the value of GoodRx common stock when defendants' prior misrepresentations and other fraudulent conduct were revealed.

### APPLICABILITY OF PRESUMPTION OF RELIANCE: FRAUD ON THE MARKET DOCTRINE

53.     At all relevant times, the market for GoodRx common stock was an efficient market for the following reasons, among others:

(a)     GoodRx common stock met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient, national stock market;

(b)     as a regulated issuer, GoodRx filed periodic public reports with the SEC and the NASDAQ;

(c)     GoodRx regularly communicated with public investors via established market communication mechanisms, including the regular dissemination of press releases on national circuits of major newswire services and other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

(d)     GoodRx was followed by securities analysts employed by major brokerage firms who wrote reports which were distributed to the sales force and

1  certain customers of their respective brokerage firms.  Each of these reports was

2  publicly available and entered the public marketplace.

3      54.   As a result of the foregoing, the market for GoodRx common stock

4  promptly digested current information regarding GoodRx from all publicly available

5  sources and reflected such information in the price of GoodRx common stock.  Under

6  these circumstances, all purchasers of GoodRx common stock during the Class Period

7  suffered similar injury through their purchase of GoodRx common stock at artificially

8  inflated prices and a presumption of reliance applies.

9                                            **NO SAFE HARBOR**

10      55.   The statutory safe harbor provided for forward-looking statements under

11  the Private Securities Litigation Reform Act of 1995 does not apply to any of the

12  allegedly false statements plead in this complaint.  The statements alleged to be false

13  and misleading herein all relate to then-existing facts and conditions.  In addition, to

14  the extent certain of the statements alleged to be false may be characterized as forward

15  looking, they were not adequately identified as "forward-looking statements" when

16  made and there were no meaningful cautionary statements identifying important

17  factors that could cause actual results to differ materially from those in the purportedly

18  forward-looking statements.  Furthermore, to the extent that the statutory safe harbor

19  is determined to apply to any forward-looking statements pleaded herein, defendants

20  are liable for those false forward-looking statements because at the time each of those

21  forward-looking statements was made, the speaker had actual knowledge that the

22  forward-looking statement was materially false or misleading, and/or the forward-

23  looking statement was authorized or approved by an executive officer of GoodRx who

24  knew that the statement was false when made.

25

26

27

28

**COUNT I**

**For Violation of §10(b) of the Exchange Act and
Rule l0b-5 Promulgated Thereunder Against All Defendants**

56.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

57.    During the Class Period, defendants disseminated or approved the materially false and misleading statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

58.    Defendants: (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements made not misleading; and (c) engaged in acts, practices, and a course of business that operated as a fraud and deceit upon the purchasers of the Company common stock during the Class Period.

59.    Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for GoodRx common stock.  Plaintiff and the Class would not have purchased GoodRx common stock at the prices they paid, or at all, if they had been aware that the market prices had been artificially and falsely inflated by defendants' misleading statements.

60.    As a direct and proximate result of defendants' wrongful conduct, plaintiff and the other members of the Class suffered damages in connection with their purchases of GoodRx common stock during the Class Period.

**COUNT II**

**For Violation of §20(a) of the Exchange Act
Against the Individual Defendants**

61.    Plaintiff repeats and realleges each and every allegation above as if fully set forth herein.

62.     The Individual Defendants acted as controlling persons of GoodRx within the meaning of §20(a) of the Exchange Act.

63.     Defendants Hirsch and Bezdek, via their affiliation with Idea Men, LLC, were among the largest beneficial owners of GoodRx common stock prior to the IPO.

64.     By virtue of their positions as officers and/or directors of GoodRx, and/or their beneficial ownership of GoodRx common stock, the Individual Defendants had the power and authority to, and did, cause GoodRx to engage in the wrongful conduct alleged.

65.     As a direct and proximate result of defendants' wrongful conduct, plaintiff and the other members of the Class suffered damages in connection with their purchases of GoodRx common stock during the Class Period.

66.     By reason of such conduct, defendants are liable pursuant to §20(a) of the Exchange Act.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff prays for judgment as follows:

A.     Designating plaintiff as Lead Plaintiff and declaring this action to be a class action properly maintained pursuant to Rule 23 of the Federal Rules of Civil Procedure and plaintiff's counsel as Lead Counsel;

B.     Awarding plaintiff and other members of the Class damages together with interest thereon;

C.     Awarding plaintiff and other members of the Class their costs and expenses of this litigation, including reasonable attorneys' fees, expert fees and other costs and disbursements; and

D.     Awarding plaintiff and other members of the Class such other and further relief as the Court deems just and proper under the circumstances.

| | |
|---|---|
| 1 | <center>**JURY DEMAND**</center> |
| 2 | Plaintiff hereby demands a trial by jury. |
| 3 | DATED:  December 18, 2020 |

ROBBINS GELLER RUDMAN
   & DOWD LLP
DAVID C. WALTON
BRIAN E. COCHRAN


*s/ Brian E. Cochran*
BRIAN E. COCHRAN

655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
davew@rgrdlaw.com
bcochran@rgrdlaw.com

ROBBINS GELLER RUDMAN
   & DOWD LLP
SAMUEL H. RUDMAN
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com

JOHNSON FISTEL, LLP
FRANK J. JOHNSON
655 West Broadway, Suite 1400
San Diego, CA  92101
Telephone:  619/230-0063
619/255-1856 (fax)
frankj@johnsonfistel.com

Attorneys for Plaintiff

## CERTIFICATION OF NAMED PLAINTIFF
## <u>PURSUANT TO FEDERAL SECURITIES LAWS</u>

R. BRIAN TERENZINI ("Plaintiff") declares:

1.      Plaintiff has reviewed a complaint and authorized its filing.

2.      Plaintiff did not acquire the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in this private action or any other litigation under the federal securities laws.

3.      Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4.      Plaintiff has made the following transaction(s) during the Class Period in the securities that are the subject of this action:

| <u>Security</u> | <u>Transaction</u> | <u>Date</u> | <u>Price Per Share</u> |
|---|---|---|---|

<p align="center"><i>See</i> attached Schedule A.</p>

5.      Plaintiff has not sought to serve or served as a representative party in a class action that was filed under the federal securities laws within the three-year period prior to the date of this Certification except as detailed below:

<p align="center">None.</p>

6.      Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

I declare under penalty of perjury that the foregoing is true and correct. Executed this <u>17</u> day of December, 2020.

<br>

DocuSigned by:

_____
R. BRIAN TERENZINI

GOODRX

**SCHEDULE A**

**SECURITIES TRANSACTIONS**

**Stock**

| Date<br>Acquired | Amount of<br>Shares Acquired | Price |
|---|---|---|
| 09/29/2020 | 50 | $61.68 |
| 09/30/2020 | 20 | $54.98 |
| 10/01/2020 | 20 | $51.00 |
| 10/09/2020 | 10 | $54.00 |

Prices listed are rounded to two decimal places.