POMERANTZ LLP
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com

*Attorney for Movants Betty Kalmanson,*
*Lawrence Kalmanson, and Shawn*
*Kalmanson*

[Additional counsel on signature page]

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| R. BRIAN TERENZINI, Individually and on Behalf of All Others Similarly Situated,<br><br>                    Plaintiff,<br><br>    vs.<br><br>GOODRX HOLDINGS, INC., DOUGLAS HIRSCH, TREVOR BEZDEK and KARSTEN VOERMANN,<br><br>                    Defendants. | Case No. 2:20-cv-11444-DOC-PD<br><br>MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF BETTY KALMANSON, LAWRENCE KALMANSON, AND SHAWN KALMANSON FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF COUNSEL<br><br>DATE:  March 22, 2021<br>TIME:  8:30 a.m.<br>JUDGE:  David O. Carter<br>CTRM:  9 D |

MEMORANDUM OF POINTS AND AUTHORITIES - 2:20-cv-11444-DOC-PD; 2:21-cv-00175-DOC-PD

BRYAN KEARNEY, Individually and on Behalf of All Others Similarly Situated,

Plaintiff,

v.

GOODRX HOLDINGS, INC., DOUGLAS HIRSCH, TREVOR BEZDEK, and KARSTEN VOERMANN,

Defendants.

Case No. 2:21-cv-00175-DOC-PD

# TABLE OF CONTENTS

I.      PRELIMINARY STATEMENT ........................................................................1

II.     STATEMENT OF FACTS ..............................................................................3

III.    ARGUMENT...................................................................................................7

      A.    THE RELATED ACTIONS SHOULD BE CONSOLIDATED FOR ALL PURPOSES ..........................................................................................7

      B.    THE KALMANSON FAMILY SHOULD BE APPOINTED LEAD PLAINTIFF .................................................................................................9

            1.    The Kalmanson Family Is Willing to Serve as Class Representative ........................................................................... 10

            2.    The Kalmanson Family Has the "Largest Financial Interest" ......... 10

            3.    The Kalmanson Family Otherwise Satisfies the Requirements of Rule 23 of the Federal Rules of Civil Procedure ............................. 12

            4.    The Kalmanson Family Will Fairly and Adequately Represent the Interests of the Class and Is Not Subject to Unique Defenses ... 17

      C.    LEAD PLAINTIFF'S SELECTION OF COUNSEL SHOULD BE APPROVED .........................................................................................17

IV.    CONCLUSION..............................................................................................18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bao v. SolarCity Corp.*, No. 14-cv-01435-BLF,
    2014 U.S. Dist. LEXIS 111869 (N.D. Cal. Aug. 11, 2014) .......................................12

*Barnet v. Elan Corp., PLC*,
    236 F.R.D. 158 (S.D.N.Y. 2005) ............................................................................15

*Bruce v. Suntech Power Holdings Co., Ltd.*, No. CV 12-04061 RS,
    2012 U.S. Dist. LEXIS 167702 (N.D. Cal. Nov. 13, 2012) ....................................16

*City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*, No. 11-CV-04003-LHK,
    2012 U.S. Dist. LEXIS 2776 (N.D. Cal. Jan. 9, 2012)............................................11

*Hanon v. Dataproducts Corp.*,
    976 F.2d 497 (9th Cir. 1992) ..................................................................................13

*Hessefort v. Super Micro Comput., Inc.*,
    317 F. Supp. 3d 1056 (N.D. Cal. 2018).................................................................12

*In re Blue Apron Holdings, Inc. Sec. Litig.*, No. 17-CV-4846 (WFK) (PK),
    2017 WL 6403513 (E.D.N.Y. Dec. 15, 2017)....................................................15, 16

*In re Cendant Corp. Litig.*,
    264 F.3d 201 (3d. Cir. 2001) ..................................................................................15

*In re SolarCity Corp. Sec. Litig.*, No. 16-CV-04686-LHK,
    2017 U.S. Dist. LEXIS 11553 (N.D. Cal. Jan. 25, 2017)........................................13

*Knox v. Yingli Green Energy Holding Co.*,
    136 F. Supp. 3d 1159 (C.D. Cal. 2015) ..................................................................11

*La. Mun. Police Emps.' Ret. Sys. v. Green Mountain Coffee Roasters, Inc.*,
    No. 2:11-cv-289, 2012 U.S. Dist. LEXIS 89192 (D. Vt. Apr. 27, 2012)..................16

*Lax v. First Merchants Acceptance Corp.*, Nos. 97 C 2715 *et al.*,
    1997 U.S. Dist. LEXIS 11866 (N.D. Ill. Aug. 6, 1997) .........................................11

*Mulligan v. Impax Labs., Inc.*, No. C-13-1037 EMC,
    2013 U.S. Dist. LEXIS 93119 (N.D. Cal. July 2, 2013) ...........................................8

*Nicolow v. Hewlett Packard Co.*, Nos. 12-05980 CRB *et al.*,
2013 U.S. Dist. LEXIS 29876 (N.D. Cal. Mar. 4, 2013) ............................................. 11

*Osher v. Guess?, Inc.*, No. CV 01-00871 LGB (RNBx),
2001 U.S. Dist. LEXIS 6057 (C.D. Cal. Apr. 26, 2001) ..................................................... 17

*Perrin v. Southwest Water Co.*, No. 2:08-cv-7844-FMC-AGRx,
2009 U.S. Dist. LEXIS 134154 (C.D. Cal. Feb. 12, 2009) .................................... 14, 16

*Richardson v. TVIA, Inc.*, No. C-06-06304 RMW,
2007 U.S. Dist. LEXIS 28406 (N.D. Cal. Apr. 16, 2007)...................................... 8, 13

*Robb v. Fitbit Inc.*, No. 16-cv-00151-SI,
2016 U.S. Dist. LEXIS 62457 (N.D. Cal. May 10, 2016)..................................... 14, 15

*Staton v. Boeing Co.*,
327 F.3d 938 (9th Cir. 2003) ....................................................................... 14

*Weltz v. Lee*,
199 F.R.D. 129 (S.D.N.Y. 2001) ................................................................... 15

*West Palm Beach Police Pension Fund v. DFC Global Corp.*, No. 13-6731,
2014 U.S. Dist. LEXIS 49595 (E.D. Pa. Apr. 9, 2014)................................................. 16

*Woburn Ret. Sys. v. Omnivision Techs., Inc.*, No. 5:11-CV-05235-RMW,
2012 U.S. Dist. LEXIS 21590 (N.D. Cal. Feb. 21, 2012) .............................................. 8

## **Statutes**

15 U.S.C. 78u-4....................................................................................*passim*

Private Securities Litigation Reform Act of 1995 .......................................................*passim*

## **Rules**

Fed. R. Civ. P. 23 ..............................................................................2, 9, 12, 13

Fed. R. Civ. P. 42 ............................................................................................ 1, 8

Movants Betty Kalmanson, Lawrence Kalmanson, and Shawn Kalmanson (collectively, the "Kalmanson Family") respectfully submit this Memorandum of Law in support of their motion, pursuant to Section 21D(a)(3) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), and Federal Rule of Civil Procedure 42 ("Rule 42"), for the entry of an Order: (1) consolidating the above-captioned related actions (the "Related Actions"); (2) appointing the Kalmanson Family as Lead Plaintiff on behalf of all persons or entities other than the above-captioned defendants ("Defendants") who purchased or otherwise acquired GoodRx Holdings, Inc. ("GoodRx" or the "Company") securities between September 23, 2020 and November 16, 2020, inclusive (the "Class Period") (the "Class"); and (3) approving Lead Plaintiff's selection of Pomerantz LLP ("Pomerantz") as Lead Counsel for the Class.

## I.    PRELIMINARY STATEMENT

The Complaints in the Related Actions allege that GoodRx and certain of its officers defrauded investors in violation of the Exchange Act.  GoodRx investors, including the Kalmanson Family, incurred significant losses following the disclosure of the alleged fraud, which caused the prices of GoodRx securities to fall sharply, damaging the Kalmanson Family and other GoodRx investors.

Consolidation is appropriate under Rule 42(a) where actions involve common questions of law or fact.  Here, the Related Actions are putative class actions alleging

violations of the federal securities laws by the same group of defendants arising from the same alleged wrongful misconduct.  As such, the Related Actions involve common questions of both law ***and*** fact, and consolidation is plainly warranted.

Pursuant to the PSLRA, the Court is to appoint as Lead Plaintiff the movant or group of movants that possesses the largest financial interest in the outcome of the Related Actions and that satisfies the requirements of Federal Rule of Civil Procedure 23 ("Rule 23").  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  In connection with its transactions in GoodRx securities during the Class Period, the Kalmanson Family incurred losses of approximately $279,364.  *See* Declaration of Jennifer Pafiti in Support of Motion ("Pafiti Decl."), Exhibit ("Ex.") A.  Accordingly, the Kalmanson Family believes that it has the largest financial interest in the relief sought in the Related Actions.

Beyond its considerable financial interest, the Kalmanson Family also meets the applicable requirements of Rule 23 because its claims are typical of absent Class members and because it will fairly and adequately represent the interests of the Class.

To fulfill its obligations as Lead Plaintiff and vigorously prosecute the Related Actions on behalf of the Class, the Kalmanson Family has selected Pomerantz as Lead Counsel for the Class.  Pomerantz is highly experienced in the area of securities litigation and class actions and has successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors, as detailed in the firm's resume.

Accordingly, the Kalmanson Family respectfully requests that the Court enter an order consolidating the Related Actions, appointing it as Lead Plaintiff for the Class, and approving its selection of Pomerantz as Lead Counsel for the Class.

## II.    STATEMENT OF FACTS

As alleged in the Complaints in the Related Actions, nearly a decade ago, defendant Douglas Hirsch ("Hirsch"), a former Facebook Inc. executive, and defendant Trevor Bezdek ("Bezdek") created what has now become a popular and fast-growing digital prescription drug shopping platform in the United States ("U.S.") designed to aid people in finding the lowest prescription drug prices in their local areas.  In October 2015, GoodRx acquired 100% of the outstanding shares of GoodRx, Inc., the entity that owns and operates the digital shopping platform created by defendants Hirsch and Bezdek.

GoodRx represents that it provides consumers with free information and tools that allow them to compare prices and save on their prescription drug purchases.  The Company provides its users with these services via apps and websites that display prices and discounts at local and mail-order pharmacies for both insured and uninsured Americans.

GoodRx primarily earns its revenue from prescription transaction fees paid by Pharmacy Benefit Managers ("PBMs") that manage formularies and prescription

transactions.  The Company also generates revenue from subscription, advertising, and telehealth services.

Generally, PBMs are obligated to pay the Company prescription transaction fees when a prescription is filled with a GoodRx code provided through its platform that allows the consumer to purchase the prescribed drug at a price that is less than a pharmacy's list price.  The agreements between GoodRx and PBMs generally provide that when a consumer uses a GoodRx code presented on its platform, the Company is entitled to either a percentage of fees the PBM charges the pharmacy or a fixed amount per type of medication prescription.  GoodRx recognizes revenue for the estimated fee due from the PBM when the pharmacy fills the prescribed medication.

On August 28, 2020, GoodRx filed with the U.S. Securities and Exchange Commission ("SEC") a Form S-1 Registration Statement (the "Registration Statement") for its initial public offering ("IPO") signed by the Individual Defendants.  The Registration Statement, as amended, was declared effective by the SEC on September 22, 2020.

On September 24, 2020, GoodRx filed with the SEC a prospectus, which forms part of the Registration Statement, for the IPO to sell to the public over 23.4 million common shares by the Company (excluding the underwriters' option to purchase an additional 5.2 million common shares) and 11.2 million common shares by certain selling stockholders.

On September 25, 2020, GoodRx closed its IPO.  In the offering, the Company and certain existing stockholders sold over 39.8 million common shares for $33 per share, including the full exercise of the underwriters' option, generating over $1.3 billion in gross offering proceeds.

At the time of the IPO, unbeknownst to investors, Amazon.com, Inc. ("Amazon") was developing and would soon introduce its own online and mobile prescription medication ordering and fulfillment service that would directly compete with GoodRx. Defendants timed the IPO so that it was priced before Amazon announced its online pharmaceutical business to facilitate the IPO and create artificial demand for the common shares sold therein, as well to maximize the amount of money the Company and the selling stockholders could raise in the IPO.  Given Defendants' knowledge of Amazon's intention to enter the online pharmaceutical business, and their misleading statements about GoodRx's competitive position made contemporaneously with that knowledge, Defendants' materially false and/or misleading statements during the Class Period were made willfully and caused GoodRx securities to trade at artificially inflated prices during the Class Period.

On November 17, 2020, just weeks after GoodRx completed its IPO, Amazon announced two new pharmacy offerings, a Prime Rx plan and a discount card program, which, among other things, would compete directly with GoodRx's platform by making

it "simple for customers to compare prices and purchase medications for home delivery, all in one place." The Amazon press release stated, in pertinent part:

> Amazon.com, Inc. (NASDAQ: AMZN) today announced two new pharmacy offerings to help customers conveniently purchase their prescription medications. Amazon Pharmacy, a new store on Amazon, allows customers to complete an entire pharmacy transaction on their desktop or mobile device through the Amazon App. Using a secure pharmacy profile, customers can add their insurance information, manage prescriptions, and choose payment options before checking out. Prime members receive unlimited, free two-day delivery on orders from Amazon Pharmacy included with their membership . . . .
>
> Also new today, Prime members can access savings on medications at Amazon Pharmacy when paying without insurance, as well as at over 50,000 other participating pharmacies nationwide. The Amazon Prime prescription savings benefit saves members up to 80% off generic and 40% off brand name medications when paying without insurance. Prime members will have access to their prescription savings at checkout on Amazon Pharmacy, or can learn more at amazon.com/primerx.
>
> ***Together the Amazon Prime prescription savings benefit and Amazon Pharmacy make it simple for customers to compare prices and purchase medications for home delivery, all in one place.***

(Emphasis added.)

That same day, CNBC.com reported that Amazon Prime members would now have access to discounts of up to 80% on generic medications and up to 40% on brand-name prescriptions through its relationship with the Inside Rx savings program. This competitive pricing posed a severe threat to GoodRx's business model.

In response to this news, the price of GoodRx common stock declined 23%, from $46.72 per share to $36.21 per share by market close on November 17, 2020, erasing

more than $4 billion of the Company's market capitalization on extremely heavy trading volume of over 23 million shares traded.  Prior to the disclosure of the adverse facts detailed above, Andrew Slutsky, the Company's Consumer President, and Idea Men, LLC, an entity whose managing members included defendants Hirsch and Bezdek, collectively sold $132 million worth of GoodRx common stock in the IPO.

After Amazon's Prime Rx plan and discount card program were made public, securities analysts downgraded and slashed price targets on GoodRx common shares on fears that Amazon's pharmacy offerings would materially impact the Company's business and that GoodRx's price saving tools could be made irrelevant by Amazon's discounts.

As a result of the alleged materially false and/or misleading statements, and/or omissions of material fact alleged in the Complaints in the Related Actions, GoodRx securities traded at artificially inflated prices during the Class Period.  The plaintiffs in the Related Actions and other Class members purchased GoodRx securities relying upon the integrity of the market price of GoodRx securities and market information relating to GoodRx, and have been damaged thereby.

## III.    ARGUMENT

### A.    THE RELATED ACTIONS SHOULD BE CONSOLIDATED FOR ALL PURPOSES

Consolidation of cases is proper where, as here, the actions involve common questions of law and fact such that consolidation would prevent unnecessary cost or

MEMORANDUM OF POINTS AND AUTHORITIES - 2:20-cv-11444-DOC-PD; 2:21-cv-00175-DOC-PD

delay in adjudication. When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all of the matters at issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay. Fed. R. Civ. P. 42(a); *see also Richardson v. TVIA, Inc.*, No. C-06-06304 RMW, 2007 U.S. Dist. LEXIS 28406, at \*6 (N.D. Cal. Apr. 16, 2007); *Mulligan v. Impax Labs., Inc.*, No. C-13-1037 EMC, 2013 U.S. Dist. LEXIS 93119, at \*10 (N.D. Cal. July 2, 2013); *Woburn Ret. Sys. v. Omnivision Techs., Inc.*, No. 5:11-CV-05235-RMW, 2012 U.S. Dist. LEXIS 21590, at \*9 (N.D. Cal. Feb. 21, 2012).

The PSLRA contemplates consolidation where "more than one action on behalf of a class asserting substantially the same claim or claims arising under this title is filed." 15 U.S.C. 78u-4(a)(3)(A)(ii). As such, the PSLRA does not displace the traditional legal standards for consolidation under Rule 42(a).

Each of the Related Actions has been filed in this District alleging similar factual and legal grounds to support allegations of violations of Sections 10(b) and 20(a) of the Exchange Act, and Rule 10b-5 promulgated thereunder by the SEC, by the Defendants arising from the public dissemination of false and misleading information to investors. Accordingly, the Related Actions should be consolidated pursuant to Rule 42(a) for all purposes.

## B.    THE KALMANSON FAMILY SHOULD BE APPOINTED LEAD PLAINTIFF

The Kalmanson Family should be appointed Lead Plaintiff because, to its knowledge, it has the largest financial interest in the Related Actions and otherwise meets the requirements of Rule 23.  Section 21D(a)(3)(B) of the PSLRA sets forth procedures for the selection of lead plaintiffs in class actions brought under the Exchange Act.  The PSLRA directs courts to consider any motion to serve as lead plaintiff filed by class members in response to a published notice of the class action by the later of (i) 90 days after the date of publication, or (ii) as soon as practicable after the Court decides any pending motion to consolidate.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(i) & (ii).

Further, under 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I), the Court is directed to consider all motions by plaintiffs or purported class members to appoint lead plaintiff filed in response to any such notice.  Under this section, the Court "shall" appoint "the presumptively most adequate plaintiff" to serve as lead plaintiff and shall presume that plaintiff is the person or group of persons, that:

(aa) has either filed the complaint or made a motion in response to a notice . . .;

(bb) in the determination of the Court, has the largest financial interest in the relief sought by the class; and

(cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

As set forth below, the Kalmanson Family satisfies all three of these criteria and thus is entitled to the presumption that it is the most adequate plaintiff of the Class and, therefore, should be appointed Lead Plaintiff for the Class.

### 1. The Kalmanson Family Is Willing to Serve as Class Representative

On December 18, 2020, counsel for plaintiff in the first-filed of the Related Actions caused a notice to be published over *Business Wire* pursuant to Section 21D(a)(3)(A)(i) of the PSLRA (the "Notice"), which announced that a securities class action had been filed against Defendants, and advised investors of GoodRx securities that they had 60 days from the date of the Notice—*i.e.*, until February 16, 2021—to file a motion to be appointed as Lead Plaintiff. *See* Pafiti Decl., Ex. B.

The Kalmanson Family has filed the instant motion pursuant to the Notice, and its members have attached sworn Certifications attesting that they are willing to serve as representatives for the Class and to provide testimony at deposition and trial, if necessary. *See* Pafiti Decl., Ex. C. Accordingly, the Kalmanson Family satisfies the first requirement to serve as Lead Plaintiff of the Class.

### 2. The Kalmanson Family Has the "Largest Financial Interest"

The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . in the determination of the court, has the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii). To the best of its knowledge, the Kalmanson Family has the

largest financial interest of any GoodRx investor seeking to serve as Lead Plaintiff based on the four factors articulated in the seminal case *Lax v. First Merchants Acceptance Corp.*: (1) the number of shares purchased; (2) the number of net shares purchased (also referred to as "retained shares"); (3) the total net funds expended; and (4) the approximate losses suffered.  Nos. 97 C 2715 *et al.*, 1997 U.S. Dist. LEXIS 11866, at *17-*18 (N.D. Ill. Aug. 6, 1997).  In accord with courts nationwide, these so-called *Lax* factors have been adopted by courts in the Ninth Circuit, including in this District.  *See, e.g.*, *Knox v. Yingli Green Energy Holding Co.*, 136 F. Supp. 3d 1159, 1163 (C.D. Cal. 2015) ("District courts have typically considered the [*Lax*] factors to determine who has the largest financial interest[.]" (internal quotation marks and citations omitted)); *Nicolow v. Hewlett Packard Co.*, Nos. 12-05980 CRB *et al.*, 2013 U.S. Dist. LEXIS 29876, at *18 (N.D. Cal. Mar. 4, 2013) (same); *City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*, No. 11-CV-04003-LHK, 2012 U.S. Dist. LEXIS 2776, at *10-*11 (N.D. Cal. Jan. 9, 2012) (same).  Of the *Lax* factors, courts in this Circuit tend to emphasize approximate loss in assessing a lead plaintiff movant's financial interest within the meaning of the PSLRA.  *See, e.g.*, *Knox*, 135 F. Supp. 3d. at 1163; *Nicolow*, 2013 U.S. Dist. LEXIS 29876, at *18-*19.

During the Class Period, the Kalmanson Family (1) purchased 29,713 shares of GoodRx securities; (2) expended $1,597,951 on its purchases of GoodRx securities; (3) retained 28,463 of its shares of GoodRx securities; and (4) as a result of the disclosures

of the fraud, suffered a loss of $279,364 in connection with its purchases of GoodRx securities. *See* Pafiti Decl., Ex. A. Because the Kalmanson Family possesses the largest financial interest in the outcome of this litigation, it may be presumed to be the "most adequate" plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).

### 3. The Kalmanson Family Otherwise Satisfies the Requirements of Rule 23 of the Federal Rules of Civil Procedure

Section 21D(a)(3)(B)(iii)(I)(cc) of the PSLRA further provides that, in addition to possessing the largest financial interest in the outcome of the litigation, the Lead Plaintiff must "otherwise satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure." Rule 23(a) generally provides that a class action may proceed if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

In making its determination that the Lead Plaintiff satisfies the requirements of Rule 23, the Court need not raise its inquiry to the level required in ruling on a motion for class certification; instead a *prima facie* showing that the movant satisfies the requirements of Rule 23 is sufficient. *See Hessefort v. Super Micro Comput., Inc.*, 317 F. Supp. 3d 1056, 1060-01 (N.D. Cal. 2018); *Bao v. SolarCity Corp.*, No. 14-cv-01435-BLF, 2014 U.S. Dist. LEXIS 111869, at *9 (N.D. Cal. Aug. 11, 2014). "This showing need not be as thorough as what would be required on a class certification motion and

only needs to satisfy typicality and adequacy." *In re SolarCity Corp. Sec. Litig.*, No. 16-CV-04686-LHK, 2017 U.S. Dist. LEXIS 11553, at *13 (N.D. Cal. Jan. 25, 2017).

"The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Richardson*, 2007 U.S. Dist. LEXIS 28406, at *16 (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)).

The claims of the Kalmanson Family are typical of those of the Class. The Kalmanson Family alleges, as do all Class members, that Defendants violated the Exchange Act by making what they knew or should have known were false or misleading statements of material facts concerning GoodRx, or by omitting to state material facts necessary to make the statements they did make not misleading. The Kalmanson Family, as did all Class members, purchased GoodRx securities during the Class Period at prices artificially inflated by Defendants' misrepresentations or omissions and was damaged upon the disclosure of those misrepresentations and/or omissions. These shared claims, which are based on the same legal theory and arise from the same events and course of conduct as the Class's claims, satisfy the typicality requirement of Rule 23(a)(3).

In determining whether the adequacy of representation requirement of Rule 23(a)(4) is met, courts in the Ninth Circuit consider whether "the representative plaintiffs

and their counsel have any conflicts of interest with other class members" and ask "will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003) (citations omitted).

The Kalmanson Family is an adequate representative for the Class. Here, the Kalmanson Family's members have submitted signed Certifications declaring their commitment to protecting the interests of the Class. *See* Pafiti Decl., Ex. C. There is no antagonism between the interests of the Kalmanson Family and those of the Class, and the Kalmanson Family's significant financial interest demonstrates that it has a sufficient interest in the outcome of this litigation that gives it an incentive to vigorously prosecute fraud claims on behalf of the Class. Moreover, the Kalmanson Family has retained counsel highly experienced in vigorously and efficiently prosecuting securities class actions such as these Related Actions, and submits its choice to the Court for approval pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v).

In addition, the Kalmanson Family constitutes an appropriate group of the type routinely appointed to serve as Lead Plaintiffs. *See, e.g.*, *Perrin v. Southwest Water Co.*, No. 2:08-cv-7844-FMC-AGRx, 2009 U.S. Dist. LEXIS 134154, at *13 (C.D. Cal. Feb. 12, 2009) ("[C]ourts have generally held that small and manageable groups serving as lead plaintiffs do not frustrate Congress' desire to ensure that investors, rather than lawyers, control securities litigation."); *Robb v. Fitbit Inc.*, No. 16-cv-00151-SI, 2016

U.S. Dist. LEXIS 62457, at *13-*14 (N.D. Cal. May 10, 2016) (appointing five-person investor group as lead plaintiff); *In re Cendant Corp. Litig.*, 264 F.3d 201, 266 (3d. Cir. 2001) ("The PSLRA explicitly permits a 'group of persons' to serve as lead plaintiff") (citation omitted); *In re Blue Apron Holdings, Inc. Sec. Litig.,*, No. 17-CV-4846 (WFK) (PK), 2017 WL 6403513, at *4 (E.D.N.Y. Dec. 15, 2017); *Weltz v. Lee*, 199 F.R.D. 129, 133 (S.D.N.Y. 2001) ("recogniz[ing] that appointing a group of people as co-lead plaintiffs is allowable under the PSLRA" and finding that a group of seven shareholders with the greatest loss was "presumptively the most adequate plaintiff"); *Barnet v. Elan Corp., PLC*, 236 F.R.D. 158, 162 (S.D.N.Y. 2005) (holding that "there can be no doubt" that the PSLRA permits appointment of groups and appointing group consisting of six members with the largest financial interest as lead plaintiff).

The Kalmanson Family likewise has demonstrated its adequacy because it is a small and cohesive group of three investors with a pre-existing relationship—indeed, the Kalmanson Family's members consist of a married couple and their son—who have submitted a Joint Declaration attesting to, *inter alia*, their backgrounds, their investing experience, their understanding of the responsibilities of a lead plaintiff pursuant to the PSLRA, their decision to seek appointment jointly as co-lead plaintiffs, and the steps that each of them are prepared to take to cooperatively prosecute this litigation on behalf of the Class. *See* Pafiti Decl., Ex. D. Courts routinely appoint investor groups as lead plaintiff under such circumstances. *See, e.g.*, *Fitbit*, 2016 U.S. Dist. LEXIS 62457, at

*13-*14 (appointing as lead plaintiff a group of five unrelated investors that submitted a joint declaration "stat[ing] that the individual members have discussed the responsibilities of acting as lead plaintiff, will stay in regular communication with counsel and with each other, and will make decisions by consensus, using a majority vote as a back-stop"); *Bruce v. Suntech Power Holdings Co., Ltd.*, No. CV 12-04061 RS, 2012 U.S. Dist. LEXIS 167702, at *9 (N.D. Cal. Nov. 13, 2012) (appointing as lead plaintiff a group of three unrelated investors that "submitted a joint declaration attesting that each is knowledgeable about the litigation, that they are working together, and that they are committed to protecting the interests of the Class"); *Perrin*, 2009 U.S. Dist. LEXIS 134154, at *13 (appointing as lead plaintiff a group of four investors that "submitted a Joint Declaration agreeing to 'work together to ensure the maximum recovery on behalf of the proposed class'").[1]

---

[1] *See also Blue Apron*, 2017 WL 6403513, at *4 (appointing group of four unrelated investors that submitted declaration attesting "it is prepared to work cooperatively to serve the best interests of the class," and finding that the group is not "so large as to be unwieldy and impracticable"); *West Palm Beach Police Pension Fund v. DFC Global Corp.*, No. 13-6731, 2014 U.S. Dist. LEXIS 49595, at *7 (E.D. Pa. Apr. 9, 2014) (appointing group and noting "declaration lay[ing] out the duties and obligations of" the group's members); *La. Mun. Police Emps.' Ret. Sys. v. Green Mountain Coffee Roasters, Inc.*, No. 2:11-cv-289, 2012 U.S. Dist. LEXIS 89192, at *11 (D. Vt. Apr. 27, 2012) (finding a joint declaration "sufficient to assure the Court that the [lead] plaintiffs will effectively manage the litigation").

**4.      The Kalmanson Family Will Fairly and Adequately Represent the Interests of the Class and Is Not Subject to Unique Defenses**

The presumption in favor of appointing the Kalmanson Family as Lead Plaintiff may be rebutted only upon proof "by a member of the purported plaintiff class" that the presumptively most adequate plaintiff:

> (aa)   will not fairly and adequately protect the interest of the class; or
>
> (bb)  is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

The ability and desire of the Kalmanson Family to fairly and adequately represent the Class has been discussed above.  The Kalmanson Family is not aware of any unique defenses Defendants could raise that would render it inadequate to represent the Class.

**C.      LEAD PLAINTIFF'S SELECTION OF COUNSEL SHOULD BE APPROVED**

The PSLRA vests authority in the Lead Plaintiff to select and retain lead counsel, subject to the approval of the Court.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(v); *Osher v. Guess?, Inc.*, No. CV 01-00871 LGB (RNBx), 2001 U.S. Dist. LEXIS 6057, at *15 (C.D. Cal. Apr. 26, 2001).  The Court should interfere with Lead Plaintiff's selection only when necessary to "protect the interests of the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).

The Kalmanson Family has selected Pomerantz as Lead Counsel for the Class. Pomerantz is a premier firm, highly experienced in the areas of securities litigation and

MEMORANDUM OF POINTS AND AUTHORITIES - 2:20-cv-11444-DOC-PD; 2:21-cv-00175-DOC-PD

17

class action lawsuits, which has successfully prosecuted numerous such actions on behalf of investors over its 80+ year history, as detailed in its firm resume. *See* Pafiti Decl., Ex. E. Pomerantz recently secured a recovery of $3 billion on behalf of investors in the securities of Petróleo Brasileiro S.A. — Petrobras, the largest class action settlement in a decade and the largest settlement ever in a class action involving a foreign issuer. *See id.* Petrobras is part of a long line of record-setting recoveries led by Pomerantz, including the $225 million settlement in *In re Comverse Technology, Inc. Securities Litigation*, No. 06-CV-1825 (E.D.N.Y.), in June 2010. *Id.* Most recently, Pomerantz announced as Lead Counsel on behalf of a class of Fiat Chrysler Automobiles N.V. investors that it has reached a $110 million settlement with the company. *See id.*

As a result of their extensive experience in similar litigation, the Kalmanson Family's choice of counsel, Pomerantz, have the skill, knowledge, expertise, resources, and experience that will enable them to prosecute the Class's claims in this litigation effectively and expeditiously. The Court may be assured that by approving the Kalmanson Family's selection of Pomerantz as Lead Counsel, the Class members will receive the best legal representation available. Thus, the Kalmanson Family respectfully urges the Court to appoint Pomerantz to serve as Lead Counsel.

## IV. CONCLUSION

For the foregoing reasons, the Kalmanson Family respectfully requests that the Court issue an Order: (1) consolidating the Related Actions; (2) appointing the

Kalmanson Family as Lead Plaintiff for the Class; and (3) approving Pomerantz as Lead Counsel for the Class.

Dated:  February 16, 2021

POMERANTZ LLP

*/s/ Jennifer Pafiti*
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com

*Counsel for Movants Betty Kalmanson, Lawrence Kalmanson, and Shawn Kalmanson and Proposed Lead Counsel for the Class*

BRONSTEIN, GEWIRTZ & GROSSMAN, LLC
Peretz Bronstein
60 East 42nd Street, Suite 4600
New York, New York 10165
Telephone: (212) 697-6484
Facsimile: (212) 697-7296
peretz@bgandg.com

*Additional Counsel for Movants Betty Kalmanson, Lawrence Kalmanson, and Shawn Kalmanson*

CERTIFICATE OF SERVICE

I hereby certify that on February 16, 2021, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

*/s/ Jennifer Pafiti*
Jennifer Pafiti