PETER B. MORRISON (SBN 230148)
peter.morrison@skadden.com
VIRGINIA F. MILSTEAD (SBN 234578)
virginia.milstead@skadden.com
CANDACE ROSS PHOENIX (SBN 323585)
candace.phoenix@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
300 South Grand Avenue, Suite 3400
Los Angeles, California 90071
Telephone:   (213) 687-5000
Facsimile:   (213) 687-5600

Attorneys for Defendants
MORGAN STANLEY & CO. LLC, GOLDMAN
SACHS & CO. LLC, J.P. MORGAN
SECURITIES LLC, BARCLAYS CAPITAL
INC., B OF A SECURITIES INC., CITIGROUP
GLOBAL MARKETS INC., CREDIT SUISSE
SECURITIES (USA) LLC, RBC CAPITAL
MARKETS, LLC, UBS SECURITIES LLC,
COWEN AND COMPANY, LLC, DEUTSCHE
BANK SECURITIES INC., EVERCORE
GROUP L.L.C., CITIZENS CAPITAL
MARKETS, INC., KKR CAPITAL MARKETS
LLC, LIONTREE ADVISORS LLC,
RAYMOND JAMES & ASSOCIATES, INC.,
SVB LEERINK LLC, ACADEMY
SECURITIES, INC., LOOP CAPITAL
MARKETS LLC, R. SEELAUS & CO., LLC and
SAMUEL A. RAMIREZ & COMPANY, INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| In re GOODRX HOLDINGS, INC. SECURITIES LITIGATION | Master File No. 2:20-cv-11444-DOC-MARx |
| | CLASS ACTION |
| This Document Relates To: | DEFENDANTS' NOTICE OF JOINDER AND JOINDER IN MOTION TO DISMISS AND MOTION TO DISMISS CORRECTED CONSOLIDATED COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS |
| ALL ACTIONS. | |
| | Judge:       Hon. David O. Carter |
| | Courtroom: 9D |
| | Date:        December 6, 2021 |
| | Time:        8:30 a.m. |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on December 6, 2021 at 8:30 a.m. or at the nearest available date at which counsel may be heard, in Courtroom 9D of the above-referenced Court located at 411 West Fourth Street, Santa Ana, CA 92701-4516, Defendants Morgan Stanley & Co. LLC, Goldman Sachs & Co. LLC, J.P. Morgan Securities LLC, Barclays Capital Inc., BofA Securities Inc., Citigroup Global Markets Inc., Credit Suisse Securities (USA) LLC, RBC Capital Markets, LLC, UBS Securities LLC, Cowen and Company, LLC, Deutsche Bank Securities Inc., Evercore Group L.L.C., Citizens Capital Markets, Inc., KKR Capital Markets LLC, LionTree Advisors LLC, Raymond James & Associates, Inc., SVB Leerink LLC, Academy Securities, Inc., Loop Capital Markets LLC, R. Seelaus & Co., LLC and Samuel A. Ramirez & Company, Inc. (collectively the "Underwriters") will, and hereby do, present for hearing by the Court this Motion To Dismiss The Corrected Consolidated Complaint For Violations Of The Federal Securities Laws ("Motion").

This Motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place on July 30, 2021. The Motion seeks dismissal with prejudice of The Corrected Consolidated Complaint For Violations Of The Federal Securities Laws (the "Complaint") brought by Lead Plaintiffs Betty Kalmanson, Lawrence Kalmanson, and Shawn Kalmanson ("Plaintiffs") for failure to state a claim upon which relief may be granted. The Motion is filed pursuant to Federal Rules of Civil Procedure 8(a), 9(b), and 12(b)(6) and is based on the accompanying memorandum of points and authorities, the request for judicial notice and incorporation by reference filed by GoodRx Holdings, Inc., all pleading and papers filed in this action, and such additional papers and arguments as may be presented at or in connection with the hearing.

The Underwriters further hereby join in Defendants' Motion to Dismiss the Consolidated Complaint and Defendants' Request for Judicial Notice and Incorporation by Reference filed by GoodRx Holdings, Inc. and the Individual Defendants in this action and all arguments stated therein.

i

DATED:  August 6, 2021

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

By: _____ */s/ Peter B. Morrison*_____
PETER B. MORRISON
*Attorneys for Defendants*
MORGAN STANLEY & CO. LLC, et al.

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ....................................................................................iv

I.    PRELIMINARY STATEMENT.............................................................1

II.   THE COURT SHOULD DISMISS THE CLAIM AGAINST THE UNDERWRITERS..............................................................................2

    A.    The Complaint Fails To Allege A False Or Misleading Statement.....................................................................................3

        1.    Plaintiffs Do Not Allege An Omission At the Time the Registration Statement Became Effective ..........................4

        2.    Plaintiffs Fail To Allege The Omission Rendered Any Statement Misleading .......................................................5

        3.    Plaintiffs Fail to Plausibly Allege the Risk Disclosure Was Misleading ...................................................................8

    B.    The Complaint Fails To Allege A Violation of Item 303 or 105 ..9

III.  CONCLUSION ...................................................................................11

# TABLE OF AUTHORITIES

## CASES

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)................................................................................................. 2

*Belodoff v. Netlist, Inc.*,
  No. SA CV 07-00677 DOC (MLGx),
  2008 WL 2356699 (C.D. Cal. May 30, 2008)........................................................... 6

*Belodoff v. Netlist, Inc.*,
  No. SACV 07–00677 DOC (MLGx),
  2009 WL 1293690 (C.D. Cal. Apr. 17, 2009)................................................. 6, 7, 10

*Brody v. Transitional Hospitals Corp.*,
  280 F.3d 997 (9th Cir. 2002) ..................................................................... 6, 9

*In re Century Aluminum Co. Securities Litigation*,
  729 F.3d 1104 (9th Cir. 2013) ................................................................... 2

*In re Cosi, Inc. Securities Litigation*,
  379 F. Supp. 2d 580 (S.D.N.Y. 2005) ....................................................... 5

*In re Dropbox Securities Litigation*,
  Case No. 19-cv-06348-BLF,
  2020 WL 6161502 (N.D. Cal. Oct. 21, 2020) ............................................ 5, 6, 7, 8

*In re Jumei International Holding Ltd. Securities Litigation*,
  No. 14cv9826, 2017 WL 95176 (S.D.N.Y. Jan. 10, 2017) ........................................ 4

*Lefter v. Yirendai Ltd.*,
  2017 WL 2857535 (C.D. Cal. June 20, 2017)......................................................... 8

*Nurlybayev v. ZTO Express (Cayman), Inc.*,
  No. 17 CV 6130-LTS-SN,
  2021 WL 1226865 (S.D.N.Y. Mar. 31, 2021)...................................................... 2, 8

*Omnicare, Inc. v. Laborers District Council Construction Industry Pension Fund*,
  575 U.S. 175 (2015)................................................................................................. 7

*In re Pivotal Securities Litigation*,
  No. 3:19-cv-03589-CRB,
  2020 WL 4193384 (N.D. Cal. July 21, 2020) .............................................. 8, 9, 10

*In re Restoration Robotics, Inc. Securities Litigation*,
    417 F. Supp. 3d 1242 (N.D. Cal. 2019).......................................................................... 2

*Rubke v. Capital Bancorp, Ltd.*,
    551 F.3d 1156 (9th Cir. 2009) .................................................................................2, 4

*In re Stac Electronics Securities Litigation*,
    89 F.3d 1399 (9th Cir. 1996) ....................................................................5, 7, 8, 10

*Steckman v. Hart Brewing, Inc.*,
    143 F.3d 1293 (9th Cir. 1998) .............................................................................9, 10

## STATUTES

15 U.S.C. § 77k............................................................................................................ 1

15 U.S.C. § 77k(a) .....................................................................................................2, 3

15 U.S.C. § 77k(a)(5).................................................................................................... 1

15 U.S.C. § 77k(e) ........................................................................................................ 1

## RULES

Fed. R. Civ. P. 9(b) ...................................................................................................... 1

## REGULATIONS

17 C.F.R. § 229.105 ................................................................................................... 10

17 C.F.R. § 229.303(a)(3)(ii) ....................................................................................... 9

## I.     **PRELIMINARY STATEMENT**

The Corrected Consolidated Amended Complaint for Violations of the Securities Laws (ECF No. 84-1) ("Complaint") asserts one claim arising from Section 11 of the Securities Act of 1933, 15 U.S.C. § 77k, against each member of the syndicate of financial institutions (the "Underwriters") who served as underwriters for the September 23, 2020 initial public offering of Class A common stock of GoodRx Holdings, Inc. ("GoodRx"). Section 11 permits suit against underwriters, among others, for allegedly false or misleading statements in a registration statement. *See* 15 U.S.C. § 77k(a)(5). The Complaint does not assert any claim under Section 10(b) of the Securities Exchange Act of 1934 against the Underwriters, and it does not attempt to allege that the Underwriters engaged in any intentional wrongdoing. (*See* Compl. ¶¶ 35, 36; *see also* ECF No. 84 (clarifying that Plaintiffs do not assert any Section 10(b) claim against the Underwriters).)

The Underwriters join in the motion to dismiss ("GoodRx Motion") and Request for Judicial Notice and Incorporation by Reference ("GoodRx RJN") brought by GoodRx and Douglas Hirsch, Trevor Bezdek, Karsten Voermann, Christopher Adams, Julie Bradley, Dipanjan Deb, Adam Karol, Jacqueline Kosecoff, Stephen LeSieur, Gregory Mondre and Agnes Rey-Giraud ("Individual Defendants"). The Underwriters also incorporate by reference herein each of the arguments in the GoodRx Motion as to why (i) Plaintiffs cannot demonstrate statutory damages, as required by Section 11(e), 15 U.S.C. § 77k(e), as a matter of law (GoodRx Motion at 8-10); (ii) the Rule 9(b) pleading standard applies to the Complaint as a whole, including the Section 11 claims (GoodRx Motion at 8); and (iii) Plaintiffs fail to allege the registration statement at issue contained any actionable, false or misleading misstatement or omission (GoodRx Motion at 10-18).

The Underwriter Defendants also move separately to emphasize Plaintiffs' failure sufficiently to allege any Section 11 claim because Plaintiffs fail to allege plausibly that GoodRx's registration statement issued in connection with the IPO contained any false or misleading statement at the time it became effective. Plaintiffs do not attempt to allege that any statement in the registration statement was literally false. They instead allege that the

registration statement omitted information about Amazon's plans to compete with GoodRx. (Compl. ¶ 66.) However, Plaintiffs do not allege (i) that Amazon had any concrete plans to compete at the time the registration statement became effective; (ii) that the omission of information about Amazon's plans rendered any statement misleading, especially in light of GoodRx's extensive disclosures about the competitive risks it faced; or (iii) that either Item 303 or 105 of Regulation S-K required disclosure of information about Amazon's plans. Thus, Plaintiffs fail to state a claim against the Underwriters, and the Court should dismiss the Complaint.

## II.     THE COURT SHOULD DISMISS THE CLAIM AGAINST THE UNDERWRITERS

Section 11 "provides a cause of action to any person who buys a security issued under a materially false or misleading registration statement." *In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104, 1106 (9th Cir. 2013). A registration statement is false or misleading if, at the time it "became effective," it "contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading." 15 U.S.C. § 77k(a). To state a claim, a plaintiff must allege that a "registration statement contained an omission or misrepresentation" and that the "omission or misrepresentation was material." *Rubke v. Capital Bancorp, Ltd.*, 551 F.3d 1156, 1161 (9th Cir. 2009).

The "complaint must allege 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Century Aluminum*, 729 F.3d at 1107 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). This means the plaintiff must plead "sufficient facts from which this Court can infer 'a statement was either false or misleading (in light of omitted information).'" *In re Restoration Robotics, Inc. Sec. Litig.*, 417 F. Supp. 3d 1242, 1258 (N.D. Cal. 2019) (citation omitted); *see also Nurlybayev v. ZTO Express (Cayman), Inc.*, 2021 WL 1226865, at *6, *7 (S.D.N.Y. Mar. 31, 2021) (requiring enough facts to support a "plausible inference" that the statements at issue were misleading).

2

## A. The Complaint Fails To Allege A False Or Misleading Statement

The Complaint identifies seven statements in the registration statement for GoodRx's IPO, which Plaintiffs allege were misleading. These include (i) that GoodRx's "partnerships across the healthcare ecosystem, scale and strong customer brand create a deep competitive moat that is reinforced by our proprietary technology platform" (Compl. ¶ 57); (ii) "We are a market leader with a significant scale and brand advantage over our competitors. Our growth accelerates self-reinforcing network effects that further strengthen our competitive position" (*id.* ¶¶ 58, 59); (iii) that GoodRx had 4.4 million monthly active consumers in the second quarter of 2020 and had been "the most downloaded medical app" for three years (*id.* ¶ 60); (iv) that the size of GoodRx's database, "combined with our proprietary platform, allows us to present highly competitive prices to consumers" (*id.* ¶ 61); (v) that GoodRx is the "only significant direct-to-consumer channel" for many of its Pharmacy Benefit Manager ("PBM") partners (*id.* ¶ 62); (vi) that GoodRx "prevent[s] PBMs from circumventing our platform" (*id.* ¶ 63); and (vii) that GoodRx believes its "financial results reflect the significant market demand for [its] offerings" (*id.* ¶ 64).

Plaintiffs also challenge GoodRx's risk warning, which provided:

> We compete with companies that provide savings on prescriptions, as well as companies that offer telehealth services and advertising and market access for pharmaceutical manufacturers. Within the prescriptions market, our competition is fragmented and consists of competitors that are smaller than us in scale. ***There can be no assurance that competitors will not develop and market similar offerings to ours,*** or that industry participants, such as integrated PBMs and pharmacy providers, will not seek to leverage our platform to drive consumer demand and traffic to their networks and eventually away from, or outside of, our platform. ***We may face increased competition from those that attempt to replicate our business model or marketing tactics***, such as discount websites, apps, cash back and loyalty programs and new comparison shopping sites from various industry participants, ***any of which could impact our ability to attract and retain consumers***.

(Compl. ¶ 65 (emphasis altered).)

Notably, Plaintiffs do not allege that any of the statements above was literally false or that it "contained an untrue statement of a material fact." 15 U.S.C. § 77k(a). Plaintiffs

do not allege, for example, that GoodRx did not in fact have a "deep competitive moat" (Compl. ¶ 57); that it did not have "brand advantage over [its] competitors" (*id.* ¶¶ 58, 59); that it did not have 4.4 million monthly active consumers in the second quarter of 2020 or was not the most downloaded medical app (*id.* ¶ 60); that it did not "present highly competitive prices to consumers" (*id.* ¶ 61); that it was not the "only significant direct-to-consumer channel" for many of its PBMs (*id.* ¶ 62); that it did not "prevent PBMs from circumventing [its] platform" (*id.* ¶ 63); or that it did not believe its financial results reflected "significant market demand" (*id.* ¶ 64).

Instead, Plaintiffs allege that the statements were misleading because they "failed to disclose that Amazon had been in the process of developing and would soon begin introducing its own prescription drug saving program, PrimeRx, in partnership with Inside Rx and as such would be able to offer the same prescription drug discounts to its millions of Amazon Prime members that GoodRx was also offering." (Compl. ¶ 66.) This claim fails.

### 1.     Plaintiffs Do Not Allege An Omission At the Time the Registration Statement Became Effective

"A claim under section 11 based on the omission of information must demonstrate that the omitted information existed at the time the registration statement became effective." *Rubke*, 551 F.3d at 1164 (citation omitted); *see also In re Jumei Int'l Holding Ltd. Sec. Litig.*, 2017 WL 95176, at *4 (S.D.N.Y. Jan. 10, 2017) (dismissing Section 11 claim because the complaint contained "no allegations that Defendants knew of [the company's] impending exit [four months later] from the beauty-supplies marketplace at the time of the IPO, much less the probable effect of that exit on Jumei's share price").

Here, the registration statement became effective on September 22, 2020 (Compl. ¶ 42), but Amazon did not announce its launch of PrimeRx until November 17, 2020—nearly two months later. (*Id.* ¶ 55.) It did not announce its alleged price comparison tool until May 11, 2021—eight months after the registration statement became effective. (*Id.* ¶ 56.) Plaintiffs allege in conclusory terms that Amazon "was developing and planning the

4

imminent launch" of PrimeRx (*id.* ¶ 47) and "had been in the process of developing and would soon begin introducing its own prescription drug saving program" as of September 22, 2020. (Compl. ¶ 66.) However, the Complaint lacks any facts plausibly showing the progress or status of those plans as of September 22, 2020; nothing shows that those plans were advanced or concrete enough to warrant disclosure when the registration statement became effective. *See In re Cosi, Inc. Sec. Litig.*, 379 F. Supp. 2d 580, 587 (S.D.N.Y. 2005) (dismissing Section 11 claim for failure to disclose franchising plans when plaintiffs did "not allege that a franchising plan had been submitted to or approved by the board, or that any affirmative steps had been taken to implement a franchising plan").

Indeed, Amazon, itself a publicly-traded company, did not see fit to announce its PrimeRx program before November 17, 2020. It would certainly be odd to conclude that GoodRx had an obligation to disclose Amazon's plans months before Amazon itself did. *See In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1407 (9th Cir. 1996) (dismissing claim based on failure to disclose competitors' plans because "another company's plans cannot be known to a certainty"). The Court need not accept as true Plaintiffs' conclusory assertions to the contrary. *See In re Dropbox Sec. Litig.*, 2020 WL 6161502, at *5 (N.D. Cal. Oct. 21, 2020) (dismissing Section 11 claim based on "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences" (citation omitted)). Because Plaintiffs do not plausibly allege that the information about Amazon's launch of PrimeRx or comparison pricing existed when the registration statement became effective, this alone justifies dismissal of Plaintiffs' claim.

### 2. Plaintiffs Fail To Allege The Omission Rendered Any Statement Misleading

Plaintiffs' claim also fails because Plaintiffs do not allege plausibly that any omission regarding Amazon's plans rendered any statement in the registration statement misleading. "For Plaintiffs to state an omission-based Section 11 claim, it is not enough that the Registration Statement omitted relevant or material facts." *Id.* at *6. "Instead an omission 'must affirmatively create an impression of a state of affairs that differs in a material way

from the one that actually exists' to be actionable." *Id.* (quoting *Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002)).

Here, "Plaintiffs fail to explain why [GoodRx's] omission of [Amazon's plans] created an 'impression of a state of affairs that differs in a material way from the one that actually exists.'" *Dropbox*, 2020 WL 6161502, at *7 (quoting *Brody*, 280 F.3d at 1006). For one thing, courts have "repeatedly refused to find disclosure of accurate historical data misleading." *Dropbox*, 2020 WL 6161502, at *7 (citation omitted); *see also Belodoff v. Netlist, Inc.*, 2009 WL 1293690, at *8-10 (C.D. Cal. Apr. 17, 2009) (Carter, J.) ("*Belodoff II*") (dismissing Section 11 claim based on "historical statement" that did "not make any predictions" about future performance). Certain of the statements here are simply accurate reports of historical facts, including that GoodRx (i) had 4.4 million monthly active consumers in the second quarter of 2020 (Compl. ¶ 60); (ii) had been "the most downloaded medical app . . . for the last three years" (*id.*); and (iii) "[t]o date, [had] retained all of [its] PBM partners" (*id.* ¶ 62). These statements do not suggest anything about GoodRx's future monthly active consumers, downloads, or partners, and the omission of information about Amazon's future plans does not make these historical statements any less true.

Moreover, all the challenged statements are general statements about GoodRx's competitive positioning, historical performance, and relationships with PBMs, which do not make any representation, express or implied, about any particular competitor. (Compl. ¶¶ 57-64.)[1] None of the statements says anything at all about Amazon, and the alleged facts about Amazon's plans do not make the statements any less true. *See Brody*, 280 F.3d at 1006 (affirming dismissal when statements at issue "neither stated nor implied anything" regarding the omitted information); *Belodoff v. Netlist, Inc.*, 2008 WL 2356699, at *11 (C.D. Cal. May 30, 2008) (Carter, J.) ("*Belodoff I*") (dismissing Section 11 claim when "the challenged statements are disconnected from the alleged omissions"). As the statements create no impression about Amazon at all, the statements certainly do not

---

[1] Indeed, as set forth in the GoodRx Motion (GoodRx Motion at 12-13, 16), many of the statements are inactionable puffery or opinion statements that Plaintiffs have failed to allege were false or misleading.

suggest that Amazon has **no** plans of entering into a competing business. *See Dropbox*, 2020 WL 6161502, at *7 (dismissing claim that company failed to disclose that its "user conversion rate" was decreasing when existing disclosures could not "plausibly infer" that user conversion rate "was, in fact, increasing").

Moreover, in assessing whether the plaintiff has alleged a misleading statement, courts take into account all the "surrounding text, including hedges, disclaimers, and apparently conflicting information." *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 190 (2015). Here, given GoodRx's extensive disclosures concerning competitive risks, as detailed in the examples below and set forth fully in the GoodRx motion (GoodRx Motion at 4-5), no reasonable investor would interpret GoodRx's statements as a guarantee against existing or future competition, from Amazon or any other competitor. *See Belodoff II*, 2009 WL 1293690, at *8-9 (concluding that warnings concerning "risky" business model, along with existing disclosures, prevented statements from being misleading); *see also Stac*, 89 F.3d at 1406 (affirming dismissal of Section 11 claim when the prospectus made "detailed disclosures concerning the risk of competition").

On the contrary, reasonable investors would not read each of GoodRx's challenged statements in isolation, but in the context of, and in conjunction with, GoodRx's robust risk disclosures. These included, among others, that (i) GoodRx could give "no assurance that competitors will not develop and market similar offerings" to GoodRx, and "increased competition" "could impact [GoodRx's] ability to attract and retain consumers" (Compl. ¶ 65); (ii) that GoodRx operates in "a very competitive industry," and potential competitors could include "existing or new market entrants with greater resources and better offerings, reputations and market strategies," "such as discount websites, apps, cash back and loyalty programs and new comparison shopping sites," that could "form a strategic alliance with one of our competitors or other industry participants" and "have a negative impact on [GoodRx's] business." (GoodRx RJN, Ex. 1 (S-1/A) at 25; *see also id.* at 29 (similar).) Similarly, GoodRx disclosed that its contracts with Pharmacy Benefit Managers "are not

exclusive and PBMs work with others in the industry to drive volume to their networks." (*Id.* at 25.) It also warned that "there can be no assurance that PBMs will enter into future contracts or renew existing contracts . . . [or that they] will be on equally favorable terms." (*Id.* at 24.) Considering these risk disclosures, no reasonable investor would understand GoodRx's general statements as stating that it did not or could not face competitive threats, or that its relationships with PBMs faced no threats, even imminent threats.

### 3. Plaintiffs Fail to Plausibly Allege the Risk Disclosure Was Misleading

Plaintiffs attempt to challenge GoodRx's statement that it "***may*** face increased competition from those that attempt to replicate our business model or marketing tactics," which "***could*** impact our ability to attract and retain consumers." (Compl. ¶ 65.) Plaintiffs allege this statement was misleading because it "failed to disclose the imminent and known direct competitor that was being developed by Amazon at the time of the IPO," and "did not even identify Amazon as a potential competitor." (*Id.*) This claim fails.

Again, there is no "rule of completeness" for securities disclosures because "[n]o matter how detailed and accurate disclosure statements are, there are likely to be additional details that could have been disclosed but were not." *Dropbox*, 2020 WL 6161502, at *6; *cf. Lefter v. Yirendai Ltd.*, 2017 WL 2857535, at *7 (C.D. Cal. June 20, 2017) (dismissing Section 10(b) claim when risks disclosures "never created the impression that the Draft Measures did ***not*** put its business model at risk; they simply did not explain the risk in the manner or level of detail that Plaintiff would have preferred"). Accordingly, for a risk disclosure to be misleading, the plaintiff must identify undisclosed information *inconsistent with* that disclosure, such as "factual allegations indicating that the risks had already 'come to fruition.'" *In re Pivotal Sec. Litig.*, 2020 WL 4193384, at *6-7 (N.D. Cal. July 21, 2020) (citations omitted); *see also Stac*, 89 F.3d at 1406 (rejecting claim that risk disclosure was misleading when the plaintiff did not "allege[] any . . . contradictory statements"). To allege that a risk came to fruition, the plaintiff must allege that the company had already felt its adverse effects. *See Nurlybayev*, 2021 WL 1226865, at *7

(dismissing Section 11 claim when plaintiff alleged risk had materialized, but "profitability and cash flow improved").

Here, Plaintiffs do not allege that the risk from Amazon's competition had already "come to fruition." *Pivotal*, 2020 WL 4193384, at \*6. The Complaint admits that Amazon had not yet launched a competing product when the registration statement became effective. (Compl. ¶ 67.) As such, Plaintiffs do not allege Amazon was already "impact[ing] [GoodRx's] ability to attract and retain customers" at that time. (Compl. ¶ 65.)

Furthermore, GoodRx's risk disclosure does not plausibly create the impression that Amazon, or any other competitor, was *not* planning to enter the market. On the contrary, it expressly discloses the opposite, that "[t]here can be no assurance that competitors will not develop and market similar offerings to ours." (Compl. ¶ 65.) Thus, Amazon's alleged undisclosed plans are merely additional details *consistent* with the risk disclosure; they are not facts that cause the disclosure to create a misimpression if not disclosed. As such, their omission may render the risk disclosure "incomplete," but they do not render it misleading. *See Brody*, 280 F.3d at 1006.

### B.    The Complaint Fails To Allege A Violation of Item 303 or 105

Plaintiffs also fail to allege plausibly that GoodRx had any duty to disclose Amazon's plans under Items 303 or 105 of Regulation S-K. Under Item 303, issuers must "[d]escribe any known trends or uncertainties that have had or that the registrant reasonably expects will have a material favorable or unfavorable impact on net sales or revenues or income from continuing operations." *Pivotal*, 2020 WL 4193384, at \*6-7 (quoting 17 C.F.R. § 229.303(a)(3)(ii)).

As shown in GoodRx's Motion (GoodRx Motion at 16-17, 20-22), Plaintiffs fail to allege plausibly that, when the registration statement became effective, GoodRx management knew of Amazon's plans or reasonably expected those plans to have an unfavorable impact on net sales or revenues or income from continuing operations. *See also Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1296 (9th Cir. 1998) (requiring plaintiffs to plead both a trend presently known to management and reasonably likely

effects on the company's financial condition).

Furthermore, Regulation S-K "governs the disclosure of known historic trends, but does not provide a basis of liability where a corporation fails to 'disclose' the future." *Belodoff II*, 2009 WL 1293690, at \*12 (citations omitted); *see also Steckman*, 143 F.3d at 1297 (distinguishing between existing trends reasonably likely to affect the future and "anticipating a future trend or event"). Here, GoodRx's failure to disclose the future is exactly what the Complaint improperly attempts to allege. In particular, the Complaint asserts that GoodRx should have disclosed "the risk of competition GoodRx was facing with Amazon's imminent entry in the online pharmacy industry and prescription drug discount market." (Compl. ¶ 76.) In other words, Amazon was not in that market when the registration statement became effective; it only allegedly *planned* to enter that market in the future. (*Id.*) Item 303 does not require GoodRx to speculate on the effect the future actions of Amazon could have on its results. *See Stac*, 89 F.3d at 1407 (concluding that even if Microsoft had informed defendant of its plans, defendant "could not have known whether or not Microsoft would truly do so").

Plaintiffs also fail to allege plausibly a violation of Item 105. Item 105 requires "a discussion of the most significant factors that make an investment in the registrant or offering speculative or risky." *Pivotal*, 2020 WL 4193384, at \*8 (citing 17 C.F.R. § 229.105). As shown in Good Rx's Motion, the registration statement amply discussed the risks GoodRx faced, including those from competitors. As such, Plaintiffs "have not plausibly alleged that [GoodRx] violated Item 105" by omitting disclosure of risks from Amazon's plans. *See Pivotal*, 2020 WL 4193384, at \*8 (rejecting claim based on Item 105 when the "risk disclosures discuss exactly [the] possibilities" that plaintiffs alleged the company omitted).

//

//

//

//

## III.   **CONCLUSION**

For the reasons stated herein, and in GoodRx's Motion, which the Underwriters fully incorporate by reference here and, for the convenience of the Court, do not repeat, the Court should dismiss the Complaint.

DATED: August 6, 2021

By: _____*/s/ Peter B. Morrison*_____
PETER B. MORRISON
*Attorneys for Defendants*
MORGAN STANLEY & CO. LLC, et al.

11