LATHAM & WATKINS LLP
  Michele D. Johnson (Bar No. 198298)
  *michele.johnson@lw.com*
  Jordan D. Cook (Bar No. 293394)
  *Jordan.cook@lw.com*
650 Town Center Drive, 20th Floor
Costa Mesa, CA 92626-1925
Tel:  (714) 540-1235
Fax:  (714) 755-8290

LATHAM & WATKINS LLP
  Colleen C. Smith (Bar No. 231216)
  *colleen.smith@lw.com*
12670 High Bluff Drive
San Diego, CA 92130-3086
Tel:  (858) 523-5400
Fax:  (858) 523-5450

*Attorneys for Defendants GoodRx Holdings, Inc., Douglas Hirsch, Trevor Bezdek, Karsten Voermann, Christopher Adams, Julie Bradley, Dipanjan Deb, Adam Karol, Jacqueline Kosecoff, Stephen LeSieur, Gregory Mondre and Agnes Rey-Giraud*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| In re GOODRX HOLDINGS, INC. SECURITIES LITIGATION, | Master File No. 2:20-CV-11444-DOC (MARx) |
| This Document Relates To:<br><br>ALL ACTIONS | CLASS ACTION<br><br>**REPLY IN SUPPORT OF GOODRX DEFENDANTS' MOTION TO DISMISS CONSOLIDATED COMPLAINT**<br><br>Date:       December 6, 2021<br>Time:      8:30 a.m.<br>Courtroom: 9D<br>Judge:    Hon. David O. Carter |

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...................................................................................................... 1

II.   ARGUMENT .............................................................................................................. 3

    A.    Plaintiffs Misstate the Applicable Pleading Standards ........................ 3

    B.    The Absence of Section 11 Damages Is Plain From the Complaint and GoodRx's Undisputed Judicially Noticeable Stock Price ............................................................................ 4

    C.    Plaintiffs Fail to Plead That the Challenged Statements in the Registration Statement Were False or Misleading ........................ 7

        1.    Plaintiffs Fail to Plead a Material Omission Because They Have Not Identified Any Facts Known to GoodRx That It Could Have Disclosed .................... 7

            a.    GoodRx's Statements Regarding Competition Were Not False ............................................. 7

            b.    GoodRx's Statements Regarding User Demand Were Not False ................................................. 13

            c.    Good Rx's Statements Regarding Pharmacy Benefit Managers Were Not False ................................ 14

        2.    Plaintiffs Do Not Meet the Omnicare Pleading Standard for Opinion Statements ............................................. 14

        3.    Plaintiffs Have Not Pled a Violation of Item 303 or Item 105 ..................................................................... 15

    D.    Plaintiffs Fail to Plead That Any of the Post-IPO Statements Were False or Misleading ............................................. 16

    E.    Plaintiffs' Exchange Act Claim Fails Because Plaintiffs Have Not Pled Facts Supporting a Strong Inference of Scienter .................................................................................................... 17

        1.    GoodRx's Limited Business Relationships With Other Companies Do Not Create Compelling Inference of Fraud ............................................................. 18

        2.    The Core Operations Inference Is Not Warranted .................. 19

        3.    The Timing of the IPO Does Not Support Scienter ............... 20

        4.    Insider Stock Sales Do Not Support Scienter ........................ 21

III.  CONCLUSION ........................................................................................................ 22

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*In re Alphabet, Inc. Sec. Litig.*,
1 F.4th 687 (9th Cir. 2021).................................................................... 19

*In re Alteryx, Inc. Sec. Litig.*,
2021 WL 4551201 (C.D. Cal. June 17, 2021)...................................... 17

*In re Am. Apparel, Inc. S'holder Litig.*,
855 F. Supp. 2d 1043 (C.D. Cal. 2012)................................................ 8

*In re Apple Inc. Sec. Litig.*,
2020 WL 2857397 (N.D. Cal. June 2, 2020) ........................................ 9

*Basic v. Levinson*,
485 U.S. 224 (1988) ............................................................................ 6

*Berg v. Velocity Fin., Inc.*,
2021 WL 268250 (C.D. Cal. Jan. 25, 2021)......................................... 16

*Bos. Ret. Sys. v. Uber Techs., Inc.*,
2020 WL 4569846 (N.D. Cal. Aug. 7, 2020)........................................ 8

*In re Broderbund/Learning Co. Sec. Litig.*,
294 F.3d 1201 (9th Cir. 2002)........................................................... 4, 6

*Cai v. Switch, Inc.*,
2019 WL 3065591 (D. Nev. July 12, 2019).......................................... 15

*Cai v. Switch, Inc.*,
2020 WL 3893246 (D. Nev. July 10, 2020)........................................ 5, 6

*Campton v. Ignite Rest. Grp. Inc.*,
2014 WL 61199 (S.D. Tex. Jan. 7, 2014) ............................................ 7

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*,
65 F. Supp. 3d 840 (N.D. Cal. 2014)................................................... 18

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech, Inc.*,
856 F.3d 605 (9th Cir. 2017) ................................................... 15, 19, 20

*In re Cornerstone Propane Partners, L.P.*,
   355 F. Supp. 2d 1069 (N.D. Cal. 2005) ................................................................ 10

*In re Countrywide Fin. Corp. Sec. Litig.*,
   588 F. Supp. 2d 1132 (C.D. Cal. 2008) ................................................................. 5

*In re Daou Sys., Inc.*,
   411 F.3d 1006 (9th Cir. 2005) ............................................................................ 21

*Derr v. Ra Med. Sys., Inc.*,
   2021 WL 1117309 (S.D. Cal. Mar. 24, 2021) ........................................................ 9

*Doyun Kim v. Advanced Micro Devices, Inc.*,
   2019 WL 2232545 (N.D. Cal. May 23, 2019) ...................................................... 11

*In re Dropbox Sec. Litig.*,
   2020 WL 6161502 (N.D. Cal. Oct. 21, 2020) ...................................................... 17

*In re Eventbrite, Inc. Sec. Litig.*,
   2020 WL 2042078 (N.D. Cal. Apr. 28, 2020) ...................................................... 13

*In re Facebook, Inc. Sec. Litig.*,
   477 F. Supp. 3d 980 (N.D. Cal. 2020) ................................................................. 11

*Fecht v. Price Co.*,
   70 F.3d 1078 (9th Cir. 1995) .............................................................................. 21

*Flynn v. Sientra, Inc.*,
   2016 WL 3360676 (C.D. Cal. June 9, 2016) ................................................... 12, 20

*In re Fortune Sys. Sec. Litig.*,
   680 F. Supp. 1360 (N.D. Cal. 1987) ..................................................................... 7

*Gammel v. Hewlett-Packard Co.*,
   2013 WL 1947525 (C.D. Cal. May 8, 2013) ......................................................... 12

*In re Gupta Corp. Sec. Litig.*,
   900 F. Supp. 1217 (N.D. Cal. 1994) .................................................................... 10

*In re Imperial Credit Indus., Inc. Sec. Litig.*,
   2000 WL 1049320 (C.D. Cal. Feb. 22, 2000) ...................................................... 20

*In re Juniper Networks, Inc. Sec. Litig.*,
   2004 WL 540910 (N.D. Cal. Mar. 11, 2004) ....................................................... 20

LATHAM&WATKINS<sub>LLP</sub>
ATTORNEYS AT LAW

iii

REPLY ISO DEFENDANTS' MOTION TO DISMISS
CONSOLIDATED COMPLAINT
Case No. 2:20-CV-11444-DOC (MARx)

*In re KeySpan Corp.*,
2003 WL 21981806 (E.D.N.Y. July 30, 2003) ...................................................... 11

*Knollenberg v. Harmonic, Inc.*,
152 F. App'x 674 (9th Cir. 2005) ........................................................................... 3

*In re LeapFrog Enters., Inc. Sec. Litig.*,
527 F. Supp. 2d 1033 (N.D. Cal. 2007) ................................................................ 16

*In re Lendingclub Sec. Litig.*,
282 F. Supp. 3d 1171 (N.D. Cal. 2017) .................................................................. 6

*Makor Issues & Rights, Ltd. v. Tellabs, Inc.*,
437 F.3d 588 (7th Cir. 2006) ................................................................................. 10

*Marksman Partners, L.P. v. Chantal Pharm. Corp.*,
927 F. Supp. 1297 (C.D. Cal. 1996) ..................................................................... 21

*Mulligan v. Impax Laboratories, Inc.*,
36 F. Supp. 3d 942 (N.D. Cal. 2014) .................................................................... 10

*NECA–IBEW Health & Welfare Fund v. Goldman Sachs & Co.*,
693 F.3d 145 (2d Cir. 2012) ................................................................................... 5

*Nursing Home Pension Fund, Local 44 v. Oracle Corp.*,
380 F.3d 1226 (9th Cir. 2004) ............................................................................... 21

*In re NVIDIA Corp. Sec. Litig.*,
768 F.3d 1046 (9th Cir. 2014) ............................................................................... 15

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
575 U.S. 175 (2015) ............................................................................................... 14

*Pirani v. Slack Techs., Inc.*,
445 F. Supp. 3d 367 (N.D. Cal. 2020) ............................................................... 5, 12

*In re Pivotal Sec. Litig.*,
2020 WL 4193384 (N.D. Cal. July 21, 2020) ....................................................... 16

*In re Progenity, Inc.*,
2021 WL 3929708 (S.D. Cal. Sept. 1, 2021) ........................................................ 16

*In re Quality Systems, Inc. Sec. Litig.*,
865 F.3d 1130 (9th Cir. 2017) ............................................................................... 10

*Reese v. Malone*,
747 F.3d 557 (9th Cir. 2014) ........................................................................... 19

*In re Refco, Inc. Sec. Litig.*,
503 F. Supp. 2d 611 (S.D.N.Y. 2007) ................................................................ 4

*In re Remec Inc. Sec. Litig.*,
415 F. Supp. 2d 1106 (S.D. Cal. 2006) ........................................................... 18

*In re Resonant Inc. Sec. Litig.*,
2016 WL 1737959 (C.D. Cal. Feb. 8, 2016) ...................................................... 3

*S. Ferry LP, No. 2 v. Killinger*,
542 F.3d 776 (9th Cir. 2008) ........................................................................... 18

*Estate of Saunders v. Comm'r*,
745 F.3d 953 (9th Cir. 2014) ........................................................................... 14

*SEB Inv. Mgmt. AB v. Align Tech., Inc.*,
485 F. Supp. 3d 1113 (N.D. Cal. 2020) ........................................................... 20

*SEC v. Todd*,
642 F.3d 1207 (9th Cir. 2011) ................................................................... 15, 16

*Shankar v. Imperva, Inc.*,
2016 WL 2851859 (N.D. Cal. May 16, 2016) ................................................. 20

*In re Snap Inc. Sec. Litig.*,
2018 WL 2972528 (C.D. Cal. June 7, 2018) ...................................................... 6

*In re Splash Tech. Holdings, Inc. Sec. Litig.*,
160 F. Supp. 2d 1059 (N.D. Cal. 2001) ........................................................... 10

*In re Stac Elecs. Sec. Litig.*,
89 F.3d 1399 (9th Cir. 1996) ............................................................................. 9

*Steckman v. Hart Brewing, Inc.*,
143 F.3d 1293 (9th Cir. 1998) ......................................................................... 15

*Steinberg v. PRT Group, Inc.*,
88 F. Supp. 2d 294 (S.D.N.Y. 2000) ............................................................ 9, 10

*In re Stratosphere Corp. Sec. Litig.*,
1 F. Supp. 2d 1096 (D. Nev. 1998) ................................................................. 12

*In re Take-Two Interactive Sec. Litig.*,
    551 F. Supp. 2d 247 (S.D.N.Y. 2008) .................................................................. 21

*In re Vantive Corp. Sec. Litig.*,
    283 F.3d 1079 (9th Cir. 2002) ........................................................................... 19

*In re Washington Mut., Inc. Sec., Deriv. & ERISA Litig.*,
    2010 WL 4272567 (W.D. Wash. Oct. 12, 2010) ................................................. 6

*Washtenaw Cnty. Emps. Ret. Sys. v. Celera Corp.*,
    2012 WL 3835078 (N.D. Cal. Sept. 4, 2012) ...................................................... 9

*Weller v. Scout Analytics, Inc.*,
    230 F. Supp. 3d 1085 (N.D. Cal. 2017) ............................................................ 13

*Wenger v. Lumisys, Inc.*,
    2 F. Supp. 2d 1231 (N.D. Cal. 1998) ........................................................... 10, 16

*Williams v. WMX Techs., Inc.*,
    112 F.3d 175 (5th Cir. 1997) ............................................................................ 16

*Wong v. Arlo Techs., Inc.*,
    2019 WL 7834762 (N.D. Cal. Dec. 19, 2019) .................................................... 8

*In re Worlds of Wonder Sec. Litig.*,
    35 F.3d 1407 (9th Cir. 1994) .............................................................................. 6

*Zucco Partners, LLC v. Digimarc Corp.*,
    552 F.3d 981 (9th Cir. 2009) ............................................................................ 18

**STATUTES**

15 U.S.C. § 77k.................................................................................................... 5

**RULES**

9th Cir. R. 36-3 .................................................................................................... 3

Fed. R. Civ. P. 9 .................................................................................................... 3

## I.    INTRODUCTION

Rather than cure any pleading defects, Plaintiffs' opposition brief makes even more clear that they are unable to state a claim for securities fraud.  All of Plaintiffs' claims hinge on a central, flawed premise:  that GoodRx somehow knew that Amazon was going to launch its own prescription drug discount program and price comparison tool that would compete with GoodRx, and that GoodRx knew about Amazon's new product so far in advance that it was able to plan and execute an initial public offering before that product was launched.  This premise is implausible on its face, and Plaintiffs allege no facts that support it.  Instead, they argue that the Court should infer from arms'-length business relationships between GoodRx and third-party Inside Rx (which partnered with many industry participants including both GoodRx and Amazon) or Amazon subsidiary PillPack that GoodRx must have had inside knowledge about Amazon's purported plans.  Yet Plaintiffs do not identify *what* information GoodRx learned, *when* that information was conveyed to GoodRx, to *whom*, by *whom*, or *how*.  Plaintiffs also fail to offer a cogent explanation as to *why* Amazon would possibly reveal its secret plan to its would-be competitor.  Plaintiffs' theory simply does not hold water, and their claims should be dismissed on multiple grounds.

*There Are No Section 11 Damages.*  Section 11 damages are capped by the difference between the IPO price (or the price at which the investor bought the stock, whichever is lower) and the price on the date the first complaint was filed.  Because GoodRx's closing stock price never dropped below the IPO price during this period, *Section 11 damages are not available*.  Plaintiffs attempt to avoid this fatal fact by arguing (1) that they need not plead damages to survive a motion to dismiss, and (2) that it is the "value" of the stock on the date the complaint was filed, not the market price, that provides the proper measure of damages.  Both arguments fail.  While it is not necessary to affirmatively plead damages, when, as here, it is clear from the complaint and judicially noticeable facts that damages are

not available, dismissal is appropriate.  Nor is there any daylight between GoodRx's stock "value" and its price.  Plaintiffs concede that GoodRx's stock traded in an efficient market, and Ninth Circuit precedent addressing this exact issue instructs that market price is the best measure of value.  The Section 11 claims should be dismissed on this basis alone.

*There Are No Known Omitted Facts.*  Plaintiffs do not plead facts supporting the falsity of the statements they challenge under Section 10(b) or Section 11.  Plaintiffs now admit that these statements were technically correct (meaning they were not false), and instead argue that they were misleading by omission because GoodRx did not also say that Amazon was about to announce Amazon Pharmacy and PrimeRx.  But there are no alleged facts showing that Amazon had these plans at the time of GoodRx's IPO and that GoodRx knew about them.  While the Complaint is replete with conclusory assertions that GoodRx knew of Amazon's plans, nowhere does it actually allege facts regarding who at GoodRx knew of Amazon's plans, what they knew, or when they knew them.  In fact, the Complaint contains no allegations at all about Amazon's plans before Amazon's November 2020 announcement.  Plaintiffs' speculation that someone at Amazon must have informed someone at GoodRx by virtue of two business partnerships is not plausible, and it is certainly not enough to plead falsity under Section 11 of the Securities Act, Section 10(b) of the Securities Exchange Act, or Items 303 or 105 of Regulation S-K.  The same is true of the handful of challenged statements GoodRx and its executives made after the initial Amazon announcement.  Plaintiffs plead no facts at all demonstrating that anyone at GoodRx knew Amazon's future plans for its pharmacy business.

*There Is No Compelling Inference of Scienter.*  Plaintiffs' Section 10(b) claims fail for the additional reason that the alleged facts do not support a strong inference of fraud or deliberate recklessness.  Plaintiffs urge the Court to conclude that GoodRx must have known of Amazon's plans (without any facts to support

that conclusion), or should have known of Amazon's plans (how exactly, Plaintiffs do not say), because Amazon was also purportedly operating in the prescription drug market. This kind of hindsight speculation is insufficient to establish knowledge of another business's plans, absent specific alleged facts establishing what was known, when, by whom, and how. Plaintiffs argue that the timing of GoodRx's IPO and insider sales in the IPO were suspicious, but there no factual allegations establishing that anyone rushed the IPO to get ahead of Amazon's announcement. Moreover, this theory does not make sense—GoodRx's stock *traded above the IPO price* after the Amazon Pharmacy announcement, and dipped below the IPO price for two weeks only after news that Amazon Pharmacy would add new features. Even today, GoodRx's stock remains above the IPO price. The only compelling inference to be drawn from these facts is that GoodRx did not know of Amazon's plan to announce PrimeRx, plans which did not harm GoodRx's business and did not incentivize securities fraud.

## II.    ARGUMENT

### A.    Plaintiffs Misstate the Applicable Pleading Standards

Plaintiffs misstate the relevant pleading standards by contending that their Section 11 claim must be judged leniently at the pleading stage because it does not sound in fraud. Opp. (ECF No. 91) at 7. But because their Section 10(b) and Section 11 claims are premised on the same alleged misstatements or omissions and the same purportedly "unified course of fraudulent conduct," the entire complaint must meet the exacting pleading standards of Rule 9(b). *See In re Resonant Inc. Sec. Litig.*, 2016 WL 1737959, at *5 (C.D. Cal. Feb. 8, 2016) (cited Mot. (ECF No. 86) at 8). Plaintiffs do not address *Resonant* at all. The only Ninth Circuit case they cite, *Knollenberg v. Harmonic, Inc.*, 152 F. App'x 674, 683-84 (9th Cir. 2005), contains no analysis and may not be cited under applicable rules. 9th Cir. R. 36-3(c) ("Unpublished dispositions and orders of this Court issued before January 1, 2007 may not be cited to the courts of this circuit . . . ."). At

best, Plaintiffs argue that they have not alleged a unified course of conduct because there is a "careful division" of the Section 11 and Section 10(b) claims (Opp. at 7, citing *In re Refco, Inc. Sec. Litig.*, 503 F. Supp. 2d 611, 632 (S.D.N.Y. 2007)), but Plaintiffs' opposition brief reveals there is no such careful division, as they rely on allegedly fraudulent statements made long after the IPO to support the purported falsity of statements made in the IPO Registration Statement. *See* Opp. at 9-10 (citing CC (ECF No. 84) ¶¶ 103, 107, 109, 110, 111).

**B.    The Absence of Section 11 Damages Is Plain From the Complaint and GoodRx's Undisputed Judicially Noticeable Stock Price**

GoodRx's shares sold in the IPO at $33 per share. CC ¶ 3. At market close on the day Amazon announced Amazon Pharmacy, GoodRx shares traded at $36.21 per share. Ex. 6 (ECF No. 87-6). And by the time Plaintiffs decided to file this lawsuit on December 18, 2020, GoodRx's stock price was up to $44.61 per share. *Id.* (As of the date of this filing, GoodRx's stock price is still well above the IPO price, closing at $39.99.) *At no point between the IPO and the filing of this lawsuit did GoodRx's shares close below the IPO price.* Plaintiffs nonetheless ask the Court to disregard the fact that any investor who bought shares in or traceable to GoodRx's IPO could not possibly have suffered any losses caused by the challenged IPO statements, arguing (1) that dismissal is not appropriate because damages are not an element of the claim, and (2) that it is the value of the stock, not its price, that controls. Opp. at 8-9. Both arguments are incorrect.

First, while Plaintiffs need not allege specific facts establishing that they were damaged to allege a Section 11 claim, dismissal is appropriate where, as here, undisputed judicially noticeable facts establish that investors could not possibly have suffered damages. *See In re Broderbund/Learning Co. Sec. Litig.*, 294 F.3d 1201, 1204 (9th Cir. 2002) (cited Mot. at 8) (affirming dismissal of Section 11 claim where undisputed facts showed that no class members suffered damages within the meaning of the Securities Act); *see also NECA–IBEW Health & Welfare*

*Fund v. Goldman Sachs & Co.*, 693 F.3d 145, 165 (2d Cir. 2012) ("While a plaintiff need not plead damages under § 11, it must satisfy the court that it has suffered a cognizable injury under the statute.").  Plaintiffs do not address this controlling Ninth Circuit precedent, but instead cite two district court cases—both of which acknowledge that dismissal is appropriate where it is apparent at the pleading stage that the plaintiffs have not suffered damages.  *See* Opp. at 8 (citing *Pirani v. Slack Techs., Inc.*, 445 F. Supp. 3d 367, 382 (N.D. Cal. 2020) (acknowledging that "Section 11's damages measure" is "an affirmative defense" that can warrant dismissal if "the defense clearly . . . appear[s] on the face of the pleading"), *aff'd*, 13 F.4th 940 (9th Cir. 2021); *In re Countrywide Fin. Corp. Sec. Litig.*, 588 F. Supp. 2d 1132, 1167 (C.D. Cal. 2008) ("Nevertheless, courts appropriately find a complaint deficient under § 11 when it fails to 'plead facts demonstrating that [the plaintiff] suffered the particular type of injury contemplated by the statute.'")).

Second, Plaintiffs argue that the market price of GoodRx stock at the time the initial complaint was filed does not cap Section 11 damages, but rather that later stock price declines must be taken into account because they reflect the "true value" of GoodRx's shares at the time of the IPO.  Opp. at 8-9.  This argument fails, too.  The "true value" of GoodRx's shares at the time of the IPO is not relevant under the plain language of the statute, which provides that damages are calculated as the difference between "the amount paid for the security (not exceeding the price at which the security was offered to the public)" and the "value thereof as of the time" the complaint is filed.  15 U.S.C. § 77k(e); *see Cai v. Switch, Inc.*, 2020 WL 3893246, at *2-3 (D. Nev. July 10, 2020) (The "first variable" of the Section 11 damages formula is "unambiguous" and "always [the] 'amount paid for the security,' capped by offering price").

Plaintiffs argue that GoodRx's stock price on the date the Complaint was filed did not reflect its true value, but the Ninth Circuit has foreclosed this

argument, instructing that "damages must be 'measured by the difference between the amount paid for the security and *its price* at . . . the date the Section 11 claim was filed.'" *Broderbund*, 294 F.3d at 1204 (emphasis added) (quoting *In re Worlds of Wonder Sec. Litig.*, 35 F.3d 1407, 1421 (9th Cir. 1994)). The overwhelming majority of district courts in the Ninth Circuit have (correctly) adhered to this precedent and held that where market price is available, that is the "primary gauge" of value for Section 11 damages. *Cai v. Switch, Inc.*, 2020 WL 3893246 at *2-3; *see also In re Lendingclub Sec. Litig.*, 282 F. Supp. 3d 1171, 1186-87 (N.D. Cal. 2017) ("Unquestionably, the typical value used to measure Section 11 damages is the stock's price on the day a plaintiff files suit, and in an open market value is ordinarily synonymous with price."); *In re Washington Mut., Inc. Sec., Deriv. & ERISA Litig.*, 2010 WL 4272567, at *12 (W.D. Wash. Oct. 12, 2010) (stating that it is "binding Ninth Circuit authority" that the "value" of a security for purposes of the second variable of the Section 11 damages formula is its price on the date the Section 11 claim was filed). And here, Plaintiffs not only concede but advocate that GoodRx's stock traded in an efficient market (CC ¶¶ 131-132), such that the market price reflects all publicly available information relevant to its value. *See Basic v. Levinson*, 485 U.S. 224, 241-42 (1988).

Plaintiffs cite just one nonbinding case in support of their assertion that the Court should disregard the market price of GoodRx's stock on the relevant date and instead conclude that a temporary stock price decline *six months later* somehow dictates the "value" of the security. Opp. at 8-9 (quoting *In re Snap Inc. Sec. Litig.*, 2018 WL 2972528, at *9 (C.D. Cal. June 7, 2018)). But the *Snap* court reached this conclusion based on an out-of-circuit district court case and a Northern District of California case that predates the Ninth Circuit's decisions in *Broderbund* and *Worlds of Wonder*, and neither of these cases supports Plaintiffs' claim that the "value" of GoodRx's shares at the time of the IPO (rather than the IPO price) is relevant. *See Snap,* 2018 WL 2972528 at *9 & n.24 (citing *Campton*

*v. Ignite Rest. Grp. Inc.*, 2014 WL 61199, at *5, *7 (S.D. Tex. Jan. 7, 2014) and *In re Fortune Sys. Sec. Litig.*, 680 F. Supp. 1360, 1370 (N.D. Cal. 1987)).  The weight of authority interpreting Section 11, including directly applicable Ninth Circuit guidance, mandates dismissal here.

### C.   Plaintiffs Fail to Plead That the Challenged Statements in the Registration Statement Were False or Misleading

#### 1.   Plaintiffs Fail to Plead a Material Omission Because They Have Not Identified Any *Facts* Known to GoodRx That It Could Have Disclosed

Plaintiffs concede that GoodRx's statements were "technically correct" but nevertheless argue that the statements were misleading because GoodRx knew yet failed to disclose that it would soon face competition from Amazon.  Opp. at 9, 10.  Plaintiffs lack any *facts* to support this allegation.  Plaintiffs allege no facts establishing that Amazon had plans to launch a potentially competing service at the time of GoodRx's IPO, or that Amazon or any of its partners told GoodRx of those plans, or that anyone at GoodRx knew what Amazon was supposedly planning or when these unspecified plans would be revealed.  Lacking any facts, Plaintiffs resort to conclusions, asserting that "Amazon was knocking" on GoodRx's door (Opp. at 9), "Amazon was about to throw GoodRx off its perch" (*id.* at 10), and "Amazon was preparing to launch its own discount prescription drug program" (*id.* at 1).  Bare hindsight assertions do not plead securities fraud, under settled law.

#### a.   GoodRx's Statements Regarding Competition Were Not False

Plaintiffs argue that GoodRx's general statements about its competitive position (CC ¶¶ 57-59), and its risk warning regarding existing and potential future competition (CC ¶ 65), were false because (1) Amazon was about to launch a competing business (Opp. at 9-10), (2) these statements were not puffery (*id.* at 12), (3) GoodRx's risk disclosures were insufficient (*id.* at 14), and (4) GoodRx's IPO was close in time to the Amazon Pharmacy announcement.  Each fails.

*First*, Plaintiffs contend that GoodRx omitted to disclose the "impending launch" of Amazon's purportedly competing business. Opp. at 10. This argument is based on the assumption that GoodRx knew what Amazon's plans were. But Plaintiffs point to no specific facts that, if true, would support that conclusion. Plaintiffs allege that GoodRx had a business relationship with PillPack, which in turn was acquired by Amazon in 2018 (*id.* at 4), but they do not point to facts demonstrating that GoodRx learned of Amazon's plans through that partnership, or when, or through whom. Plaintiffs repeat the allegation that GoodRx was one of many industry participants who partnered with Inside Rx, and that somehow because Amazon was also able to partner with Inside Rx, GoodRx was tipped off in advance. *Id.* This is mere speculation—no alleged facts explain how that supposedly happened, or what GoodRx supposedly learned or when.

Plaintiffs have no persuasive response to this key pleading defect. *See Wong v. Arlo Techs., Inc.*, 2019 WL 7834762, at *6-7 (N.D. Cal. Dec. 19, 2019) (cited Mot. at 12) (dismissing Section 11 and Section 10(b) claims regarding Arlo's prediction that it would release new products in the next quarter where plaintiff offered "no facts" showing "that *at the time* of the Registration Statement the Defendants knew that Arlo was having problems" with the products). Instead, Plaintiffs cite inapplicable cases in which specific factual allegations established that a contemporaneous fact existed and that the company defendants knew about it at the time of the registration statement, such as through confidential witness statements and contemporaneous internal emails or reports. *See Bos. Ret. Sys. v. Uber Techs., Inc.*, 2020 WL 4569846, at *8 (N.D. Cal. Aug. 7, 2020) (cited Opp. at 10) (plaintiff alleged that internal emails established that Uber knew it was evading local regulations by launching in markets without necessary approvals); *see also In re Am. Apparel, Inc. S'holder Litig.*, 855 F. Supp. 2d 1043, 1048, 1069 (C.D. Cal. 2012) (U.S. Immigration & Customs Enforcement investigative memorandum showed company was aware that its hiring practices were not in compliance with

immigration laws); *Washtenaw Cnty. Emps. Ret. Sys. v. Celera Corp.*, 2012 WL 3835078, at *3 (N.D. Cal. Sept. 4, 2012) (confidential witnesses statements detailed company's problems obtaining payments from patients); *In re Apple Inc. Sec. Litig.*, 2020 WL 2857397, at *3, *16 (N.D. Cal. June 2, 2020) (confidential witness statements described slowing sales in China); *Derr v. Ra Med. Sys., Inc.*, 2021 WL 1117309, at *2, *6 (S.D. Cal. Mar. 24, 2021) (internal audit report established knowledge of laser system manufacturing issue).  No such facts are alleged here.

Plaintiffs' attempt to distinguish GoodRx's cases is likewise unavailing. They claim that the Ninth Circuit's opinion in *In re Stac Electronics Securities Litigation*, 89 F.3d 1399, 1406-07 (9th Cir. 1996), is inapplicable because in that case, the company's risk disclosures identified Microsoft as a potential competitor by name, whereas GoodRx did not identify Amazon by name.  *See* Opp. at 11.  But the *Stac* decision makes clear that Stac knew Microsoft had licensed a competitive technology, but did not know if Microsoft would incorporate that technology into its products, or how, or when.  89 F.3d at 1405-06.  Rejecting the plaintiffs' claim that Stac should have disclosed more than a hypothetical risk warning, the court relied on the maxim that "another company's plans cannot be known to a certainty."  *Id.* at 1407.  Applying that basic (and logical) premise, the court held that, "[e]ven assuming . . . that Microsoft had informed Stac that it planned to introduce [its competing offering], Stac could not have known whether or not Microsoft would truly do so."  *Id.*  This logic applies even more starkly here:  not one allegation establishes that GoodRx knew Amazon planned to launch a drug discount program, much less any details of what that program entailed, whether it would directly compete with GoodRx, or when the launch would come.

Plaintiffs similarly argue that *Steinberg v. PRT Group, Inc.*, 88 F. Supp. 2d 294, 304 (S.D.N.Y. 2000), is inapplicable because the company's risk disclosures regarding potential competition in that case were more complete than GoodRx's

risk disclosures. *See* Opp. at 11 n.6. In fact, the company in *Steinber*g warned that it faced "intense competition" with "a large number of . . . companies, many of which are significantly larger." 88 F. Supp. 2d at 304. GoodRx similarly disclosed that it operates in a "very competitive industry," and "may face competition" from "various industry participants," including "existing or new companies." Ex. 1 (ECF No. 87-1) at 43-44; *see also id.* at 47 (disclosing the ways that competitors could better address customer needs).

*Second*, GoodRx's generic statements about its competitive position are nonactionable corporate puffery. Courts routinely find that statements similar to GoodRx's regarding its "deep competitive moat" (CC ¶ 57), its "brand advantage over our competitors" (¶ 58), and "network effects that further strengthen our competitive position" (¶ 59) are not actionable. *See, e.g., Wenger v. Lumisys, Inc.*, 2 F. Supp. 2d 1231, 1245 (N.D. Cal. 1998) ("We're the leader in a rapidly growing market."); *In re Gupta Corp. Sec. Litig.*, 900 F. Supp. 1217, 1236 (N.D. Cal. 1994) ("[W]e already have a sizable lead over our competition, and we hope to maintain that."); *see also In re Cornerstone Propane Partners, L.P.*, 355 F. Supp. 2d 1069, 1087 (N.D. Cal. 2005) ("industry leading" growth that "positions us beautifully"); *In re Splash Tech. Holdings, Inc. Sec. Litig.*, 160 F. Supp. 2d 1059, 1077 (N.D. Cal. 2001) (statement that company was "well positioned"). Plaintiffs' cited cases do not establish otherwise. In *Makor Issues & Rights, Ltd. v. Tellabs, Inc.*, 437 F.3d 588, 593 (7th Cir. 2006) (cited Opp. at 12), the challenged statement concerned a specific fact, namely that the company's product continued to "maintain its growth rate." *Id.* The same was true in *In re Quality Systems, Inc. Securities Litigation*, 865 F.3d 1130, 1144 (9th Cir. 2017) (cited Opp. at 12), which concerned alleged statements that the "number and type of prospective sales" were "unchanged, or even growing," and *Mulligan v. Impax Laboratories, Inc.*, 36 F. Supp. 3d 942, 967 (N.D. Cal. 2014) (cited Opp. at 12), in which the defendants stated that the company "had undertaken significant manufacturing and quality

control changes . . . to rectify the issues" identified in a FDA warning letter. *Id.* at 968. And notably in *In re KeySpan Corp.*, 2003 WL 21981806, at *17 (E.D.N.Y. July 30, 2003) (cited Opp. at 12), the court concluded that a statement that the company had "greater growth potential" than its competitors was "the sort of puffery that courts have rejected."

*Third*, Plaintiffs' challenge to one of GoodRx's risk disclosures (CC ¶ 65) should be rejected because GoodRx specifically warned investors of existing competition and the risk that future competition may emerge (Ex. 1 at 43-44), and Plaintiffs offer no specific facts establishing that undisclosed risks had already come to fruition. *See In re Facebook, Inc. Sec. Litig.*, 477 F. Supp. 3d 980, 1017-18 (N.D. Cal. 2020) (holding that plaintiffs must plead facts establishing that "when the risk factor was made, the risk warned of was already affecting the defendant"). Plaintiffs' theory that GoodRx knew about Amazon's impending announcement is not plausible, as Plaintiffs do not even plead that Amazon itself had solidified the nature or timing of its new business venture at the time of GoodRx's IPO, much less that anyone at GoodRx knew of Amazon's plans. *See, e.g.*, CC ¶ 100 (alleging, without further specifics, that at the time of the IPO, "Amazon was developing and would *soon begin* introducing Amazon Pharmacy and PrimeRx") (emphasis added).

Plaintiffs' only critique of GoodRx's risk warnings is that they disclose that new or existing competitors "may" attempt to replicate GoodRx's business model or to develop similar products. Opp. at 14. But they have pled no specific, contemporaneous facts establishing that the risks warned of had actually come to fruition, rendering their effort to distinguish directly analogous cases (*id.*) ineffective. *See Facebook,* 477 F. Supp. 3d at 1017-18 (cited Mot. at 13) (risk warning statements regarding competitive position not misleading because no alleged facts established that this harm had already occurred); *Doyun Kim v. Advanced Micro Devices, Inc.*, 2019 WL 2232545, at *7 (N.D. Cal. May 23, 2019)

(cited Mot. at 13) (dismissing challenge to risk warnings regarding the possibility of cyberattacks and data breaches absent factual allegations establishing that such attacks had happened).  The absence of specific allegations demonstrating that the risk of Amazon or any other competitor's entry into the market had already materialized at the time of the IPO renders Plaintiffs' authority inapplicable here. *See Pirani,* 445 F. Supp. 3d 367, 386-87 (risk warnings misleading when allegations established a service outage and payment of service credits that had already happened); *Flynn v. Sientra, Inc.*, 2016 WL 3360676, at *11 (C.D. Cal. June 9, 2016) (holding risk warnings were inadequate given detailed allegations that "serious regulatory issues had already transpired").

*Fourth*, Plaintiffs' argument that the short time between the IPO and Amazon's entry into the market supports falsity (Opp. at 15) suffers from the same defect as their other falsity arguments:  they do not plead any facts indicating that Amazon had any particular plans as of the time of GoodRx's IPO, much less that anyone at GoodRx knew what those plans were or when they would be announced. Plaintiffs' cited authorities confirm that a short time period between a false statement and corrective disclosure is supportive of falsity only if specific factual allegations establish that the information that was later revealed was actually known to the company at the time.  *See* Opp. at 15 (citing *Gammel v. Hewlett-Packard Co.*, 2013 WL 1947525, at *15 (C.D. Cal. May 8, 2013) (pointing to "numerous confidential witness statements" establishing that defendants knew they would not be able to timely implement software platform); *In re Stratosphere Corp. Sec. Litig.*, 1 F. Supp. 2d 1096, 1111-12 (D. Nev. 1998) (holding that internal documents created shortly after the statements showing knowledge at the time may support falsity)).  Plaintiffs allege no such facts here.

### b.    GoodRx's Statements Regarding User Demand Were Not False

Plaintiffs challenge two statements about GoodRx's user demand, namely that GoodRx was the "most downloaded medical app" with 4.4 million monthly active consumers, and that its financial results reflected "the significant market demand" for GoodRx's offerings (CC ¶¶ 60, 64) based on the same basic premise—that these statements were misleading because Amazon's entry into the market put demand for GoodRx's services at risk.  Opp. at 13.  But no alleged fact establishes that GoodRx did not actually have the stated number of active consumers, or that this number was somehow insignificant.  This pleading deficiency is dispositive.  *See* Mot. at 14 (citing cases).  While Plaintiffs attempt to distinguish two of Defendants' cited cases by asserting (without specific basis) that the "connection between the omissions and the statements" is stronger here (Opp. at 13), that argument is wrong.  In *Eventbrite*, the court held that a concert ticket purveyor's statement touting its "enhanced marketing capabilities and streamlined checkout experiences" were not rendered false by the allegation that the company faced competition from a superior platform.  *In re Eventbrite, Inc. Sec. Litig.*, 2020 WL 2042078, at *12-13 (N.D. Cal. Apr. 28, 2020).  And in *Weller v. Scout Analytics, Inc.*, the court rejected the plaintiffs' claim that a statement about a particular revenue metric misled investors with respect to a different revenue metric.  230 F. Supp. 3d 1085, 1093–94 (N.D. Cal. 2017).  Similarly, Plaintiffs' argument that GoodRx's statements were misleading as to Amazon's impending entry into the market, bears no connection to the substance of the statements themselves, which detail GoodRx's medical app download success and market demand for its services, and do not mention Amazon.  CC ¶¶ 60, 64.

### c.     Good Rx's Statements Regarding Pharmacy Benefit Managers Were Not False

Plaintiffs have essentially abandoned their challenge to the three statements regarding GoodRx's relationship with its pharmacy benefit manager ("PBM") partners (CC ¶¶ 61-63), relegating their arguments to a footnote.  Opp. at 13 n.8. *See Estate of Saunders v. Comm'r*, 745 F.3d 953, 962 n.83 (9th Cir. 2014) ("Arguments raised only in footnotes, or only on reply, are generally deemed waived.").  Even if this claim were not waived, it would fail.  Plaintiffs argue that Amazon was able to partner with Inside Rx, notwithstanding GoodRx's assurances that it had contracts in place to prevent PBMs from circumventing its platform. Opp. at 13 n.8 (citing CC ¶ 63).  But GoodRx did not say that its partnerships with all PBMs were exclusive, or that others would not partner with them.  Quite the opposite, GoodRx disclosed that many of its PBM relationships were "*not exclusive* and PBMs work with others in the industry," and that GoodRx's number of "PBM partners may even decline."  Ex. 1 at 42-43 (emphasis added).

### 2.     Plaintiffs Do Not Meet the *Omnicare* Pleading Standard for Opinion Statements

Plaintiffs concede that two of the challenged statements are opinions.  Opp. at 15); CC ¶ 61 ("We believe that we currently have the largest database of PBM prices in the United States."); *id.* ¶ 64 ("We believe our financial results reflect the significant market demand for our offerings and the value that we provide to the broader healthcare ecosystem.").  But they make no serious effort to meet the standards for pleading falsity of an opinion, which requires identification of "particular (and material) facts going to the basis for the issuer's opinion . . . whose omission makes the opinion statement at issue misleading to a reasonable person reading the statement fairly and in context," which is "no small task for an investor."  *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 194 (2015).  Plaintiffs allege no particular facts that would call into

question GoodRx's belief that it actually had the largest database of PBM prices or that its financial results reflected significant market demand for its services. *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech, Inc.*, 856 F.3d 605, 615-16 (9th Cir. 2017) (affirming dismissal on that basis).

### 3.    Plaintiffs Have Not Pled a Violation of Item 303 or Item 105

Plaintiffs' argument that GoodRx's Registration Statement did not comply with Items 303 or 105 of Regulation S-K (Opp. at 17-18) is equally unsuccessful. With respect to Item 303, Plaintiffs argue that Amazon's "impending entry into the market" should have been disclosed because that information constituted a known trend or uncertainty at the time of GoodRx's IPO. *Id.* But Item 303 requires disclosure only of known trends that are "presently known" to management, and as discussed, no such facts are alleged. *See Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1296-97 (9th Cir. 1998). This shortcoming makes this case entirely unlike the court's initial ruling in *Switch* (cited Opp. at 17)—which was later dismissed for failure to allege facts supporting Section 11 damages (*see supra* II.B)—in which plaintiffs alleged that company management had already changed to a new sales strategy. *Cai v. Switch, Inc.*, 2019 WL 3065591, at *2 (D. Nev. July 12, 2019). And in the only other case Plaintiffs cite—*In re NVIDIA Corp. Securities Litigation*, 768 F.3d 1046, 1055-56 (9th Cir. 2014) (Opp. at 17 n.10)—the Ninth Circuit affirmed dismissal of the claims.

Plaintiffs' Item 105 argument fails to engage with any of the risk disclosures GoodRx cited in its motion, which demonstrate that the risk of competition *was disclosed*. Mot. at 17. Plaintiffs resort to arguing that the sufficiency of risk disclosures under Item 105 is a mixed question of law and fact that is never appropriate for resolution at the motion to dismiss stage (Opp. at 18, citing *SEC v. Todd*, 642 F.3d 1207, 1220 (9th Cir. 2011)), but this is wrong. As an initial matter, *Todd* does not pertain to Item 105 and was not a motion to dismiss decision; instead, the court's analysis focused on the materiality of purportedly concealed

information concerning the company's source of revenue. *Id.* at 1221. *Todd* does not undermine the province of district courts to dismiss improperly pled Item 105 claims, which they routinely do. *See, e.g., In re Pivotal Sec. Litig.*, 2020 WL 4193384, at *8 (N.D. Cal. July 21, 2020) (dismissing Item 105 claim); *see also In re Progenity, Inc.*, 2021 WL 3929708, at *14 (S.D. Cal. Sept. 1, 2021) (same); *Berg v. Velocity Fin., Inc.*, 2021 WL 268250, at *10 (C.D. Cal. Jan. 25, 2021) (same).

### D. Plaintiffs Fail to Plead That Any of the Post-IPO Statements Were False or Misleading

Plaintiffs' challenges to the post-IPO statements (CC ¶¶ 103, 107-112) fail. Plaintiffs argue that Mr. Bezdek's November 12, 2020, statement that "we have not seen . . . any . . . any competitors that have really impacted our business . . . historically or currently" (CC ¶ 103) was misleading because "GoodRx knew that competition was coming." Opp. at 16. But that statement was made *before* Amazon's announcement, so this challenge fails for the same reasons Plaintiffs cannot identify false or misleading statements in the Registration Statement.

Plaintiffs argue that their allegation about a speech at a CNBC summit meets the PSLRA pleading requirements despite not identifying any specific statement. *See* Opp. at 16 (discussing CC ¶ 107). But the PSLRA requires each statement alleged to be misleading to be specifically identified. *See, e.g., Williams v. WMX Techs., Inc.*, 112 F.3d 175, 179 (5th Cir. 1997) (dismissing claims containing "no quotes" as insufficiently pled); *In re LeapFrog Enters., Inc. Sec. Litig.*, 527 F. Supp. 2d 1033, 1051 (N.D. Cal. 2007) (dismissing claims as deficient when none of the statements reproduced "what management actually said"); *Wenger,* 2 F. Supp. 2d at 1246 (the PSLRA's "state with particularity" requirement not met where the complaint "does not provide any direct quotations").

For the remainder of the post-IPO challenged statements (CC ¶¶ 108-112), Plaintiffs revert to their conclusory allegation that GoodRx "knew" that "Amazon

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

was continuing to develop" its business to compete with GoodRx. Opp. at 17. But Plaintiffs do not articulate what GoodRx should have disclosed, nor do they allege a single fact establishing that anyone at GoodRx knew anything about Amazon's future plans as of November or December 2020 (when the challenged statements were made). Indeed, there is not a single fact alleged in the Complaint establishing that Amazon itself had even conceived of the new features added to its PrimeRx product six months later, as announced on May 11, 2021. *See* CC ¶ 115. At best, Plaintiffs argue that GoodRx must have known of Amazon's supposedly contemporaneous development of these new features because "PillPack was GoodRx's 'friend.'" Opp. at 17. But allegations that merely offer the conclusion that defendants knew of some undisclosed fact (which itself is not properly alleged) are not sufficient to plead Section 11 liability. *See In re Dropbox Sec. Litig.*, 2020 WL 6161502, at \*5-7 (N.D. Cal. Oct. 21, 2020) (dismissing Section 11 allegations as conclusory where plaintiffs simply asserted that the company's user conversion rate was dropping, without allegations actually establishing that fact).

### E. Plaintiffs' Exchange Act Claim Fails Because Plaintiffs Have Not Pled Facts Supporting a Strong Inference of Scienter

Plaintiffs' Exchange Act claims should be dismissed for the additional reason that they have not pled particularized facts giving rise to a strong inference of scienter. Plaintiffs must allege, "in great detail," facts that "constitute strong circumstantial evidence of deliberately reckless or conscious misconduct." *In re Alteryx, Inc. Sec. Litig.*, 2021 WL 4551201, at \*3 (C.D. Cal. June 17, 2021) (Carter, J.). In addition, the alleged inference of scienter must be "cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Id.* Plaintiffs fail to meet either requirement. There are no particularized facts that create a strong inference of scienter, and the competing non-fraudulent inference—that Amazon did not tell GoodRx its plans to launch a new, and potentially competing service—is far more compelling.

Plaintiffs offer four speculative arguments in an effort to support scienter: (1) GoodRx must have known about Amazon's purported plans based on business relationships with Inside Rx, third-party PBM Express Scripts, and Amazon subsidiary PillPack (Opp. at 21-22); (2) Amazon's discount coupon service related to GoodRx's "core operations" (*id.* at 19-21); (3) the timing of GoodRx's IPO was suspicious (*id.* at 23-24); and (4) insider sales of GoodRx shares in the IPO were suspicious (*id.* at 24-25). Taken individually or holistically, these arguments do not support a strong inference of scienter.

### 1.    GoodRx's Limited Business Relationships With Other Companies Do Not Create Compelling Inference of Fraud

To support scienter, Plaintiffs argue that "Defendants were aware of Amazon's imminent launch of PrimeRx through the Company's material relationships with Inside Rx, Express Scripts and Amazon." Opp. at 21. But the Complaint alleges no facts detailing whether, when, or how any Defendant learned any information before the IPO about PrimeRx from any of these relationships. Alleging that Defendants could have learned some indeterminate information is not enough to plead scienter. *See S. Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 785–86 (9th Cir. 2008) (holding that Plaintiffs must allege "detailed and specific allegations about management's exposure" to "the disputed information"); *In re Remec Inc. Sec. Litig.*, 415 F. Supp. 2d 1106, 1116 (S.D. Cal. 2006) (allegations that defendants "knew," "recklessly disregarded," "were aware," and "had access to information they needed" were too general to allege scienter with the required specificity); *see also* Mot. at 21 (collecting cases). Nor do Plaintiffs overcome the more compelling inference: that Amazon would *not* tell (or allow its business partners to tell) a future competitor about its purported plan to launch a competing service. *E.g.*, *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 991 (9th Cir. 2009); *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 65 F. Supp. 3d 840, 859-60 (N.D. Cal. 2014) (holding pleadings insufficient

to overcome non-fraudulent inference where plaintiffs allegations "largely depend[ed] on supposition rather than facts to place . . . [the] information in the individual defendants' hands"), *aff'd*, 856 F.3d 605 (9th Cir. 2017).

The two cases Plaintiffs cite serve only to demonstrate the absurdity of Plaintiffs' argument. In *In re Alphabet, Inc. Securities Litigation*, the court held that Alphabet's executives knew about problems at Google because Google is a **wholly owned subsidiary** of Alphabet. 1 F.4th 687, 706 (9th Cir. 2021) ("[T]he complaint alleges that Alphabet is essentially a holding company for Google (i.e., Google was the 'lifeblood' of Alphabet)."). And in *Reese v. Malone*, the court unremarkably concluded that the person who was the "gatekeeper" of later ruptured pipelines had actual knowledge about their condition. 747 F.3d 557, 576-77 (9th Cir. 2014).

In contrast here, Plaintiffs have not articulated what access GoodRx had to Amazon's supposed plans for PrimeRx, nor have they offered any logical (much less compelling) reason why Amazon would share that information. Plaintiffs' conclusory allegation that GoodRx must have been aware of Amazon's business plans is the sort of speculation that the PSLRA was designed to prevent. *See In re Vantive Corp. Sec. Litig.*, 283 F.3d 1079, 1084-85 (9th Cir. 2002) (noting that the PSLRA's heightened falsity and scienter pleading requirements were intended "to put an end to the practice of pleading 'fraud by hindsight'").

## 2.    The Core Operations Inference Is Not Warranted

Plaintiffs speculate that Defendants would have known about Amazon's plans because of the importance of GoodRx's prescription drug discount program to its revenues and business strategy. Opp. at 19-21. The fatal flaw in this "core operations" argument is that it depends on GoodRx having access to information about *Amazon's* operations, rather than GoodRx's. *See* Opp. at 20 (speculating without supporting facts that "Defendants would have had access to Amazon's imminent launch of PrimeRx"). The cases Plaintiffs cite (Opp. at 19-20) make

clear that the core operations inference can only be based on the defendant company's operations. *See SEB Inv. Mgmt. AB v. Align Tech., Inc.*, 485 F. Supp. 3d 1113, 1133 (N.D. Cal. 2020) (finding core operations inference based on allegations that the defendant company had implemented "a substantial discount" on its own primary product); *Flynn*, 2016 WL 3360676, at *15 (drawing a core operations inference based on regulatory agency reports flagging quality control issues infecting the defendant company's own operations); *Shankar v. Imperva, Inc.*, 2016 WL 2851859, at *1, 8 (N.D. Cal. May 16, 2016) (finding core operations inference based on allegations that the defendant company was aware it "was actually losing deals to IBM"). Plaintiffs cite no authority extending the core operations doctrine to knowledge of a third party's business.

### 3.    The Timing of the IPO Does Not Support Scienter

Next, Plaintiffs suggest that the timing of GoodRx's IPO—many months in the works—is somehow related to Amazon's announcement. Opp. at 23-25. But again, Plaintiffs' Complaint is devoid of any specific allegations of what GoodRx supposedly learned about Amazon's plans and when, much less any alleged facts actually connecting the timing of GoodRx's IPO to any supposed upcoming Amazon announcement. *See, e.g.*, *City of Dearborn Heights Act 345 Police & Fire Ret. Sys.*, 856 F.3d at 622 (temporal proximity of statements to corrective disclosure not sufficient to plead scienter). Plaintiffs' own authority confirms that scienter is not pled without—*at a minimum*—alleging the facts missing here: what defendants knew, and when and how. *See, e.g.*, *In re Imperial Credit Indus., Inc. Sec. Litig.*, 2000 WL 1049320, at *2 (C.D. Cal. Feb. 22, 2000) (cited Opp. at 23) (scienter pled based on "numerous e-mails and internal reports" reflecting that the company was on the verge of bankruptcy); *see also In re Juniper Networks, Inc. Sec. Litig.*, 2004 WL 540910, at *3 (N.D. Cal. Mar. 11, 2004) (dismissing complaint on falsity and scienter grounds where the "allegations are impermissibly imprecise and fail to provide the 'who, what, when, where and how' required by

the PSLRA"), *aff'd,* 158 F. App'x 899 (9th Cir. 2005).  And even then, Plaintiffs must also plead particular facts "constituting strong circumstantial evidence of conscious misbehavior or recklessness," allegations that are also missing here.  *See In re Take-Two Interactive Sec. Litig.*, 551 F. Supp. 2d 247, 269, 275 (S.D.N.Y. 2008) (cited Opp. at 24) (finding allegations insufficient to establish scienter).  The only other case Plaintiff cites on this point, *Fecht v. Price Co.*, 70 F.3d 1078 (9th Cir. 1995) (Opp. at 23), is entirely irrelevant as it applied a more lenient scienter standard that has since been superseded by the PSLRA.  *E.g., Marksman Partners, L.P. v. Chantal Pharm. Corp.*, 927 F. Supp. 1297, 1309 (C.D. Cal. 1996) (noting that *Fecht* was decided under a pre-PSLRA standard that permitted "conclusory allegations").

### 4.     Insider Stock Sales Do Not Support Scienter

Plaintiffs concede that the Individual Defendants sold only a small fraction of their holdings in connection with GoodRx's IPO.  Opp. at 24.  So they pivot to arguing that insider sales of even a small percentage can be suspicious, based on *Nursing Home Pension Fund, Local 44 v. Oracle Corp.*, 380 F.3d 1226, 1232 (9th Cir. 2004)—which involved sales totaling $900 million by a single executive who had not sold any shares in the prior five years.  *Id.*  Here, Plaintiffs improperly seek to lump together stock sales by individuals and entities that are not defendants in this case.  *See* CC ¶ 120 (identifying sales by Andrew Slutsky, Idea Men, LLC, and Spectrum Equity VII, L.P.).  And even if the Individual Defendants' indirect equity is taken into account, their proportionally small sales at the IPO price is far from suspicious when GoodRx's stock price traded *above the IPO price every single day* during the class period, and only dipped below the IPO price briefly for two weeks in May 2021.  *See* Ex. 6.  While stock sales need not be at an "apex" when other facts make them suspicious, as was the case in *Daou* (Opp. at 24 n.12, citing *In re Daou Sys., Inc.*, 411 F.3d 1006, 1024 (9th Cir. 2005)), stock sales at prices below

the price upon the revelation of the supposedly concealed bad news cannot meet this test.

## III.    CONCLUSION

Defendants accordingly ask the Court to dismiss Plaintiffs' Complaint.

Dated:  November 19, 2021          Respectfully submitted,

LATHAM & WATKINS LLP

By   */s/ Michele D. Johnson*
Michele D. Johnson
Colleen C. Smith
Jordan D. Cook

*Attorneys for Defendants GoodRx Holdings, Inc., Douglas Hirsch, Trevor Bezdek, Karsten Voermann, Christopher Adams, Julie Bradley, Dipanjan Deb, Adam Karol, Jacqueline Kosecoff, Stephen LeSieur, Gregory Mondre and Agnes Rey-Giraud*