PETER B. MORRISON (SBN 230148)
peter.morrison@skadden.com
VIRGINIA F. MILSTEAD (SBN 234578)
virginia.milstead@skadden.com
CANDACE ROSS PHOENIX (SBN 323585)
candace.phoenix@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
300 South Grand Avenue, Suite 3400
Los Angeles, California 90071-3144
Telephone:  (213) 687-5000
Facsimile:   (213) 687-5600

Attorneys for Defendants

MORGAN STANLEY & CO. LLC, GOLDMAN
SACHS & CO. LLC, J.P. MORGAN SECURITIES
LLC, BARCLAYS CAPITAL INC., B OF A
SECURITIES INC., CITIGROUP GLOBAL
MARKETS INC., CREDIT SUISSE SECURITIES
(USA) LLC, RBC CAPITAL MARKETS, LLC, UBS
SECURITIES LLC, COWEN AND COMPANY, LLC,
DEUTSCHE BANK SECURITIES INC., EVERCORE
GROUP L.L.C., CITIZENS CAPITAL MARKETS,
INC., KKR CAPITAL MARKETS LLC, LIONTREE
ADVISORS LLC, RAYMOND JAMES &
ASSOCIATES, INC., SVB LEERINK LLC,
ACADEMY SECURITIES, INC., LOOP CAPITAL
MARKETS LLC, R. SEELAUS & CO., LLC and
SAMUEL A. RAMIREZ & COMPANY, INC.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| In re GOODRX HOLDINGS, INC. SECURITIES LITIGATION, | Master File No. 2:20-cv-11444-DOC-MARx |
| | CLASS ACTION |
| This Document Relates To: | DEFENDANTS' REPLY IN SUPPORT OF JOINDER IN MOTION TO DISMISS AND MOTION TO DISMISS CORRECTED CONSOLIDATED COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS |
| ALL ACTIONS. | |
| | Judge:  Hon. David O. Carter |
| | Courtroom:  9D |
| | Date:  December 6, 2021 |
| | Time:  8:30 a.m. |

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................ii

I.      PRELIMINARY STATEMENT.............................................................1

II.     THE COURT SHOULD DISMISS THE CLAIM AGAINST THE UNDERWRITERS..................................................................................4

    A.      The Complaint Fails To Allege A False Or Misleading Statement.....................................................................................4

        1.      The Complaint Does Not Allege An Omission At The Time The Registration Statement Became Effective ..........4

        2.      The Complaint Does Not Allege That The Omission Rendered Any Statement Misleading.................................9

        3.      The Complaint Fails To Plausibly Allege The Risk Disclosure Was Misleading................................................12

    B.      The Complaint Fails To Allege A Violation Of Item 303 Or 105.......................................................................................17

III.    CONCLUSION ......................................................................................19

# TABLE OF AUTHORITIES

## CASES

*In re Adams Golf, Inc. Securities Litigation*,
381 F.3d 267 (3d Cir. 2004) ...................................................................15

*In re American Apparel, Inc. Shareholder Litigation*,
855 F. Supp. 2d 1043 (C.D. Cal. 2012) ................................................... 7

*In re Apple Inc. Securities Litigation*,
No. 19-cv-02033-YGR,
2020 WL 2857397 (N.D. Cal. June 2, 2020).......................................... 6

*Belodoff v. Netlist, Inc.*,
No. SA CV 07-00677 DOC (MLGx),
2008 WL 2356699 (C.D. Cal. May 30, 2008)........................................ 10

*Belodoff v. Netlist, Inc.*,
No. SACV 07-00677 DOC (MLGx),
2009 WL 1293690 (C.D. Cal. Apr. 17, 2009).........................4, 11, 12, 17

*Berson v. Applied Signal Technology, Inc.*,
527 F.3d 982 (9th Cir. 2008) ................................................................. 10

*Boston Retirement System v. Uber Technologies, Inc.*,
No. 19-cv-06361-RS,
2020 WL 4569846 (N.D. Cal. Aug. 7, 2020) .......................................... 6

*Brody v. Transitional Hospitals Corp.*,
280 F.3d 997 (9th Cir. 2002) .......................................................9, 10, 11, 15

*Cai v. Switch, Inc.*,
No. 2:18-cv-01471-JCM-VCF,
2019 WL 3065591 (D. Nev. July 12, 2019) ....................................... 17, 18

*In re CIT Group, Inc. Securities Litigation*,
349 F. Supp. 2d 685 (S.D.N.Y. 2004) .................................................... 8

*In re Cosi, Inc. Securities Litigation*,
379 F. Supp. 2d 580 (S.D.N.Y. 2005) .................................................... 6

*Derr v. RA Medical Systems, Inc.*,
No. 19cv1079-LAB-AHG,
2021 WL 1117309 (S.D. Cal. Mar. 24, 2021).......................................... 6

*In re Dropbox Securities Litigation*,
No. 19-cv-06348-BLF,
2020 WL 6161502 (N.D. Cal. Oct. 21, 2020) .........................3, 9, 11, 14

*Flynn v. Sientra, Inc.*,
No. CV 15-07548 SJO (RAOx),
2016 WL 3360676 (C.D. Cal. June 9, 2016)........................................... 13

*Gammel v. Hewlett-Packard Co.*,
    No. SACV 11-1404 AG (RNBx),
    2013 WL 1947525 (C.D. Cal. May 8, 2013) ............................................................... 8

*In re Jumei International Holding Ltd. Securities Litigation*,
    No. 14cv9826,
    2017 WL 95176 (S.D.N.Y. Jan. 10, 2017) ...................................................... 2, 5, 6, 7

*Lefter v. Yirendai Ltd.*,
    No. CV 16-06437-MWF (AGRx),
    2017 WL 2857535 (C.D. Cal. June 20, 2017) ......................................................... 14

*Medina v. Tremor Video, Inc.*,
    No. 13-cv-8364 (PAC),
    2015 WL 1000011 (S.D.N.Y. March 5, 2015),
    *aff'd*, 640 F. App'x 45 (2016) ................................................................................. 8

*In re Network Commerce Inc. Securities Litigation*,
    No. C01-0675L,
    2006 WL 1375049 (W.D. Wash. May 16, 2006) ...................................................... 6

*Panther Partners, Inc. v. Ikanos Communications, Inc.*,
    538 F. Supp. 2d 662 (S.D.N.Y. 2008) ...................................................................... 7

*Peifa Xu v. Gridsum Holding Inc.*,
    No. 18 Civ. 3655 (ER),
    2021 WL 773002 (S.D.N.Y. Feb. 23, 2021) ......................................................... 5, 8

*Pirani v. Slack Technologies, Inc.*,
    445 F. Supp. 19 3d 367 (N.D. Cal. 2020),
    *aff'd*, 13 F.4th 940 (9th Cir. 2021) ............................................................. 13, 15, 18

*In re Pivotal Securities Litigation*,
    No. 3:19-cv-03589-CRB,
    2020 WL 4193384 (N.D. Cal. July 21, 2020) .............................................. 13, 14, 18

*In re Progenity, Inc.*,
    No. 20-cv-1683-CAB-AHG,
    2021 WL 3929708 (S.D. Cal. Sept. 1, 2021) ......................................................... 14

*In re Qudian Inc. Securities Litigation*,
    No. 17-CV-9741 (JMF),
    2019 WL 4735376 (S.D.N.Y. Sept. 27, 2019),
    *reconsideration denied*, No. 17-CV-9741 (JMF),
    2020 WL 3893294 (S.D.N.Y. July 10, 2020) ....................................................... 7, 8

*In re Rigel Pharmeceuticals, Inc. Securities Litigation*,
    697 F.3d 869 (9th Cir. 2012) ............................................................................ 2, 11

*Rubinstein v. Credit Suisse Group AG*,
    457 F. Supp. 3d 289 (S.D.N.Y. 2020) ..................................................................... 13

*Rubke v. Capital Bancorp, Ltd.*,
    551 F.3d 1156 (9th Cir. 2009) ........................................................................... 4, 11

*S.E.C. v. Todd*,
  642 F.3d 1207 (9th Cir. 2011) ........................................................................ 18, 19

*In re Stac Electronics Securities Litigation*,
  89 F.3d 1399 (9th Cir. 1996) ................................................................*passim*

*Steckman v. Hart Brewing, Inc.*,
  143 F.3d 1293 (9th Cir. 1998) ................................................................... 17

*Steinberg v. PRT Group, Inc.*,
  88 F. Supp. 2d 294 (S.D.N.Y. 2000) ........................................................ 15, 16

*In re Stratosphere Corp. Securities Litigation*,
  1 F. Supp. 2d 1096 (D. Nev. 1998) ............................................................. 8

*In re TVIX Securities Litigation*,
  25 F. Supp. 3d 444 (S.D.N.Y. 2014),
  *aff'd sub nom.*, *Elite Aviation LLC v. Credit Suisse AG*, 588 F. App'x 37 (2d
  Cir. 2014) .............................................................................................. 15

*In re Verifone Securities Litigation*,
  11 F.3d 865 (9th Cir. 1993) ........................................................... 2, 10, 11

*Washtenaw County Employees Retirement System v. Celera Corp.*,
  No. 5:10-cv-02604 EJD,
  2012 WL 3835078 (N.D. Cal. Sept. 4, 2012) ........................................... 6, 7

## STATUTES

15 U.S.C. § 77k(a) .................................................................................... 4

15 U.S.C. § 77k(e) .................................................................................... 1

## REGULATIONS

17 C.F.R. § 229.105 ................................................................................ 18

17 C.F.R. § 229.303(a)(3)(ii) ................................................................... 17

## I.      PRELIMINARY STATEMENT[1]

Plaintiffs' Opposition fails to address the dispositive arguments in GoodRx's motion to dismiss ("GoodRx Motion") and the Underwriters' joinder in the GoodRx Motion and motion to dismiss ("Underwriters' Motion"). Instead, Plaintiffs attempt to rely on conclusory allegations that at the time of the IPO, Defendants should have disclosed the fact that Amazon allegedly *planned* to enter the market for providing consumers pricing information about prescription pharmaceuticals. (Opp. 10.) But no statement in the registration statement was rendered misleading by the omission of Amazon's plans—nor do Plaintiffs adequately plead that GoodRx was aware of these plans—and the securities laws placed no obligation on GoodRx to speculate about what Amazon would do in the future or what effect Amazon's actions would have. Because Plaintiffs' Opposition has not overcome the pleading failures in the Complaint, the Court should dismiss the Complaint.

The Underwriters join in GoodRx's and the Individual Defendants' Reply in Support of GoodRx Defendants' Motion to Dismiss Consolidated Complaint ("GoodRx Reply"). The Underwriters also incorporate by reference herein each of the arguments in the GoodRx Reply as to why (i) Plaintiffs cannot demonstrate statutory damages, as required by Section 11(e), 15 U.S.C. § 77k(e), as a matter of law (GoodRx Reply at 4-7); (ii) the Rule 9(b) pleading standard applies to the Complaint as a whole, including the Section 11 claims (GoodRx Reply at 3-4); and (iii) Plaintiffs fail to allege the registration statement at issue contained any actionable, false or misleading misstatement or omission (GoodRx Reply at 7-16). The Underwriters also reply separately to emphasize that regardless of the pleading standard the Court applies to the Section 11 claims, Plaintiffs fail to plausibly allege a false or misleading statement.

*First*, Plaintiffs' Opposition acknowledges that no statement in the registration statement was literally false, but argues that statements about "GoodRx's advantages" were

---

[1] Capitalized terms not defined herein have the same meaning as in the Underwriters' Motion to Dismiss ("Underwriters' Motion"). All emphases are in the original, and internal citations and quotations are omitted unless otherwise stated.

misleading given the "impending launch" of Amazon's PrimeRx and, later, its price comparison tool. (Opp. 10.) This argument fails because Plaintiffs do not allege any facts to show that the launch was "impending" at the time of GoodRx's IPO, let alone that Amazon was actually competing with GoodRx. On the contrary, Plaintiffs acknowledge that the announcement and launch of PrimeRx was nearly two months away, and its announcement and launch of its alleged price comparison tool was eight months away. (Compl. ¶¶ 42, 55, 56.)

The Opposition ignores the argument from the Underwriters' Motion that Plaintiffs fail to allege sufficient facts to show that Amazon was even in the advanced stages of developing PrimeRx at the time of the IPO. (Mot. 5:3-9.) Plaintiffs argue that the "short time" between the IPO and Amazon's announcement and entry into the market supports their argument that the launch was imminent. (Opp. 15.) This argument fails because the gap in time was almost two months—not mere days—and courts have rejected similar arguments as "simply inadequate pleading." *In re Jumei Int'l Holding Ltd. Sec. Litig.*, 2017 WL 95176, at *4 (S.D.N.Y. Jan. 10, 2017).

Although Plaintiffs argue that the fact that Amazon "*was about to* throw GoodRx off its perch existed at the time of the IPO," Plaintiffs do not explain how an alleged event weeks or even months into the future can "exist[]" in the present. (Opp. 10 (emphasis added).) On the contrary, this is essentially a claim that GoodRx failed to forecast Amazon's actions and the effect they would have on GoodRx. However, GoodRx has no obligation to make such a forecast. *See In re Verifone Sec. Litig.*, 11 F.3d 865, 869 (9th Cir. 1993) (affirming dismissal of claim that a defendant "omitted to state the 'fact' that future prospects may not be as bright as past performance").

*Second*, Plaintiffs argue that the challenged statements are actionable because GoodRx had the "duty to disclose the known material competitive risks the Company was facing at the time of the IPO, which included the imminent launch of Amazon's PrimeRx." (Opp. 12 n.7.) GoodRx had no such duty, unless such a disclosure was necessary to keep statements in the registration statement from being misleading. *See In re Rigel Pharms.*,

2

*Inc. Sec. Litig.*, 697 F.3d 869, 880 n.8 & 886 n.15 (9th Cir. 2012) (explaining that even material omissions are not actionable unless they make a statement that was actually made misleading). The statements at issue were not misleading. They do not give any misimpression that GoodRx had ***no*** competition or that GoodRx would not face competition in the future. Further, the registration statement does not imply that Amazon or another competitor did ***not*** plan to enter the market. Indeed, the registration statement contained risk disclosures to the contrary. Reasonable investors would read each of GoodRx's allegedly misleading statements in the context of GoodRx's risk disclosures, and would not interpret the challenged statements as a guarantee against existing or future competition from Amazon or any other competitor.

*Third*, Plaintiffs allege that GoodRx's risk disclosures were misleading, generic, and boilerplate warnings because the risk of Amazon's PrimeRx and price comparison tool had already come to fruition. (Opp. 13-14.) In fact, because neither PrimeRx nor the price comparison tool had yet been announced, let alone become operational, no risk had come to fruition. Instead, Plaintiffs' argument relies on a rule of completeness—the idea that GoodRx could not just disclose the existence of risks, it had to disclose every fact showing how or when a risk could occur. However, there is no such rule in securities disclosures because "[n]o matter how detailed and accurate disclosure statements are, there are likely to be additional details that could have been disclosed but were not." *In re Dropbox Sec. Litig.*, 2020 WL 6161502, at *6 (N.D. Cal. Oct. 21, 2020). Plaintiffs must show that the failure to disclose Amazon's plans rendered the risk disclosure misleading. They do not. Amazon's plans were entirely consistent with the disclosed risks, among others, that competitors would "develop and market similar offerings" or "new market entrants with greater resources and better offerings" would offer similar products. (GoodRx RJN, Ex. 1 (S-1/A) at 27.) Therefore, the failure to disclose Amazon's plans did not render the risk disclosures misleading.

*Fourth*, Plaintiffs' Opposition fails to demonstrate a violation of Item 303 or 105 of Regulation S-K. Plaintiffs ignore that Item 303 of Regulation S-K "governs the disclosure

3

of known historic trends, but does not provide a basis of liability where a corporation fails to 'disclose' the future." *Belodoff v. Netlist, Inc.*, 2009 WL 1293690, at *12 (C.D. Cal. Apr. 17, 2009) (Carter, J.) ("*Belodoff II*") (citations omitted). Here, any risk from competition that GoodRx would face from Amazon was in the future; Item 303 did not require GoodRx to speculate about it. As for Item 105, which requires a discussion of "the most significant factors" that make the investment risky, GoodRx's registration statement included just such a discussion, for instance that it "*may* face increased competition from those that attempt to replicate our business model or marketing tactics," which "*could* impact our ability to attract and retain consumers." (Compl. ¶ 65.) Plaintiffs have failed to allege facts showing that Item 105 required disclosure of Amazon's plans.

For these reasons, as well as those below and in the Underwriters' and GoodRx's Motion, the Court should dismiss the Complaint with prejudice.

## II.     THE COURT SHOULD DISMISS THE CLAIM AGAINST THE UNDERWRITERS

### A.     The Complaint Fails To Allege A False Or Misleading Statement

Plaintiffs have failed to allege plausibly that any statement in GoodRx's registration statement was false or misleading. As pointed out in the Underwriters' Motion (Mot. 3-4), Plaintiffs acknowledge that GoodRx's statements were "technically correct." (Opp. 10:3-16.) Therefore, Plaintiffs do not allege that any GoodRx statement "contained an untrue statement of a material fact." 15 U.S.C. § 77k(a). Instead, Plaintiffs attempt to rely solely on a theory of omission: they allege that GoodRx's statements created a misimpression by failing to disclose that "Amazon was about to throw GoodRx off its perch." (Opp. 10:17-18.) As shown in the Underwriters' Motion, this allegation fails.

#### 1.     The Complaint Does Not Allege An Omission At The Time The Registration Statement Became Effective

Plaintiffs do not and cannot dispute that "[a] claim under section 11 based on the omission of information must demonstrate that the omitted information existed at the time the registration statement became effective." *Rubke v. Capital Bancorp, Ltd.*, 551 F.3d

1156, 1164 (9th Cir. 2009). Here, as shown in the Underwriters' Motion, Plaintiffs fail to sufficiently allege any omitted fact that existed as of September 22, 2020, the time that the registration statement became effective. (Mot. 4:17-5:21.)

Plaintiffs argue that "[t]he fact that Amazon was about to throw GoodRx off its perch existed at the time of the IPO." (Opp. 10:17-18.) Plaintiffs ignore that Amazon did not announce the launch of PrimeRx until November 17, 2020, nearly two months after the IPO, and it did not announce its price comparison tool until May 11, 2021, eight months after the IPO. (Compl. ¶¶ 55, 56.) An event that has yet to occur—and will not occur for multiple months—by definition is not a fact that "exist[s]" in the present. Rather, at the time of the IPO, PrimeRx was at most something Amazon was *planning* to implement, not something it had done or was presently doing. Plaintiffs do not and cannot allege that Amazon was actually competing against GoodRx, let alone competing successfully, at the time of the IPO.

As shown in the Underwriters' Motion—and ignored in the Opposition—the Complaint alleges nothing to the contrary. The Complaint asserts in conclusory terms that Amazon was in the development stage for PrimeRx (Compl. ¶¶ 47, 66), but it pleads no facts regarding the status of Amazon's development as of September 22, 2020, let alone facts showing that Amazon's development was advanced or concrete enough to warrant disclosure or pose a "competitive risk." (Opp. 12 n.7.) Plaintiffs allege no facts to support their assertion that Amazon's launch was "imminent" (Opp. 1:17), when it would not occur for months. Courts consistently reject Section 11 claims when plaintiffs fail to allege facts regarding allegedly omitted *plans*. *See Peifa Xu v. Gridsum Holding Inc*., 2021 WL 773002, at *10 (S.D.N.Y. Feb. 23, 2021) (dismissing Section 11 claim regarding *defendants' own* anticipated product launch because "an inference that a statement or omission was materially misleading *at the time it was made* . . . would logically require allegations regarding what facts existed, or were reasonably anticipated, about this product launch at the time of the IPO, such as the substance or impact of future revenue recognition policies associated with the new product"); *Jumei*, 2017 WL 95176, at *4 (dismissing

Section 11 claim because the complaint contained "no allegations that Defendants knew of [the *defendant's own*] impending exit [four months later] from the beauty-supplies marketplace at the time of the IPO, much less the probable effect of that exit on Jumei's share price"); *In re Network Com. Inc. Sec. Litig.*, 2006 WL 1375049, at *4 (W.D. Wash. May 16, 2006) (dismissing Section 11 claim when "complaint provides no information regarding when, where, or by whom the [*defendant's own*] alleged plan [to pay additional compensation to senior executives] was developed, who the proposed beneficiaries were, or whether undisclosed compensation was ever actually paid to senior executives other than [CEO]"); *In re Cosi, Inc. Sec. Litig.*, 379 F. Supp. 2d 580, 587 (S.D.N.Y. 2005) (dismissing Section 11 claim for failure to disclose *defendant's own* franchising plans when plaintiffs did "not allege that a franchising plan had been submitted to or approved by the board, or that any affirmative steps had been taken to implement a franchising plan"). In these cases, courts rejected Section 11 claims when defendants omitted their *own* plans; the reasoning is even more forceful here, where Plaintiffs would have GoodRx disclose *another company's plans* before that company announced those plans itself.

The cases Plaintiffs cite (Opp. 10:10-16), are inapposite because, in those cases, the plaintiffs alleged that the defendants omitted existing facts or facts about risks that had already come to fruition. *See Derr v. RA Med. Sys., Inc.*, 2021 WL 1117309, at *6 (S.D. Cal. Mar. 24, 2021) (finding statements misleading because defendants "[d]isclos[ed] 'unforeseen' manufacturing issues and the risk that a recall 'could occur' . . . when failing to mention that manufacturing issues had arisen and a recall was already underway"); *Boston Ret. Sys. v. Uber Techs., Inc.*, 2020 WL 4569846, at *8 (N.D. Cal. Aug. 7, 2020) (noting that plaintiff alleged "contemporaneous, not post-IPO events" to support claim); *In re Apple Inc. Sec. Litig.*, 2020 WL 2857397, at *16 (N.D. Cal. June 2, 2020) (finding statements misleading because defendant described sources of growth but omitted facts about how "throttling" contributed to growth); *Washtenaw Cnty. Emps. Ret. Sys. v. Celera Corp.*, 2012 WL 3835078, at *3 (N.D. Cal. Sept. 4, 2012) (statements about costs being "reimbursed" by insurance misleading because defendants omitted that insurers were

paying patients directly, not the company); *In re Am. Apparel, Inc. S'holder Litig.*, 855 F. Supp. 2d 1043, 1069 (C.D. Cal. 2012) (concluding that plaintiff sufficiently pleaded that there were "significant compliance problems at the time the statements were made"). Here, in contrast, at the time the registration statement became effective, PrimeRx or Amazon's price comparison tools were not existing facts or competitive threats because they were not operational and Amazon had not even announced them.

It stands to reason that if Amazon's PrimeRx was not developed or definite enough for Amazon to announce, it was not developed or definite enough for GoodRx to disclose as if it were presently existing competition or a competitive threat. (Mot. 5:10-12); *see also In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1407 (9th Cir. 1996) (dismissing claim based on failure to disclose competitors' plans because "another company's plans cannot be known to a certainty"). Plaintiffs have no substantive response to this argument. Instead, they assert *ipse dixit* that it is "ludicrous and miscasts the Complaint's allegations." (Opp. 12 n.7.) But Plaintiffs do not cite a single case in which a court concluded that a company had an obligation to **break news** about its would-be competitor's purported future plans, as Plaintiffs claim GoodRx was required to do here. (Compl. ¶ 66.)

Plaintiffs argue that "the short time between the IPO and Amazon's entry into the market [indicates] that Defendants' statements were false when made." (Opp. 15.) Plaintiffs claim that the seven weeks between the IPO and Amazon's PrimeRx announcement makes clear that "Defendants rushed to complete the IPO because they had knowledge of Amazon's imminent entry into the market." (Opp. 15.) Plaintiffs' argument is an acknowledgment that PrimeRx was not ready to launch at the time of the IPO. Amazon needed almost two months after the IPO to even announce PrimeRx.

Further, "Courts have previously rejected similar efforts to 'ask the Court to assume that Defendants *must* have known because something did in fact occur later' as 'simply inadequate pleading.'" *Jumei*, 2017 WL 95176, at \*4 (quoting *Panther Partners, Inc. v. Ikanos Commc'ns, Inc.*, 538 F. Supp. 2d 662, 673 (S.D.N.Y. 2008)); *see also In re Qudian Inc. Sec. Litig.*, 2019 WL 4735376, at \*9 n.6 (S.D.N.Y. Sept. 27, 2019) ("[W]hile

'knowledge [of plans] on day-120 does not mean Defendants "knew" or "must have known" on day-1,' knowledge on 'day-2' arguably would support an inference of knowledge on 'day-1.'") (citations omitted), *reconsideration denied*, 2020 WL 3893294 (S.D.N.Y. July 10, 2020); *Medina v. Tremor Video, Inc.*, 2015 WL 1000011, at *3 (S.D.N.Y. March 5, 2015) (dismissing Section 11 claim when plaintiffs argued that defendants' knowledge could be inferred when an alleged trend explained company's later loss because "[t]here were no such facts alleged here which could support an inference that Defendants were aware of the trend or uncertainty"), *aff'd*, 640 F. App'x 45 (2016).

Plaintiffs' authorities for this proposition are distinguishable. In *Gammel v. Hewlett-Packard Co.*, 2013 WL 1947525, at *15 (C.D. Cal. May 8, 2013), plaintiffs' allegations about defendants' knowledge due to the temporal proximity of a disclosure were bolstered by plaintiffs' "numerous confidential witness statements" which corroborated their allegations. Here, Plaintiffs have failed to allege any facts about the status of Amazon's plans. In *In re Stratosphere Corp. Securities Litigation*, 1 F. Supp. 2d 1096, 1111 (D. Nev. 1998), the court noted that "several of the documents [offered to show that statements were false at the time] are mere days or weeks after the statement at issue" and the "length of time between the statement and the document must be addressed in light of the particular statement at issue." Here, Amazon's announcement occurred nearly two months after the IPO, rather than "mere days or weeks." And, in *Stratosphere* the documents used to infer knowledge were internal communications and budgets from a company-hired construction firm. Plaintiffs allege no such documents showing the status of Amazon's plans.

Finally, courts have rejected similar arguments when the time between the IPO and another event was less than the seven weeks at issue here. *See Peifa*, 2021 WL 773002, at *10 (dismissing Section 11 claim when plaintiffs did not allege "what facts existed, or were reasonably anticipated, about this product launch at the time of the IPO, such as the substance or impact of future revenue recognition policies associated with the new product," "other than emphasizing that the product was introduced in the month following the IPO"); *In re CIT Grp., Inc. Sec. Litig.*, 349 F. Supp. 2d 685, 690 (S.D.N.Y. 2004)

(dismissing Section 11 claim when plaintiffs argued that defendants could not have believed that loan loss reserves were adequate "because defendants decided to increase loan loss reserves just three weeks after the IPO" when "Plaintiffs provide no additional facts from which to infer that defendants did not believe that reserves were adequate or had no reasonable basis for such a belief").

**2.    The Complaint Does Not Allege That The Omission Rendered Any Statement Misleading**

Plaintiffs claim that "[w]hen Defendants assured investors that GoodRx had a competitive advantage and portrayed the Company as a 'market leader' with a 'deep competitive moat,'" Defendants "also had the duty to disclose the known material competitive risks the Company was facing at the time of the IPO, which included the imminent launch of Amazon's PrimeRx." (Opp. 12 n.7.) Plaintiffs argue that these statements and the "statements that there was a 'significant market demand for [its] offerings' and it was the 'most downloaded medical app' omitted the fact that Amazon's entry into the market risked all of that." (*Id.* 12-13.) Plaintiffs are wrong.[2]

*First*, Plaintiffs' Opposition does not dispute that "[f]or Plaintiffs to state an omission-based Section 11 claim, it is not enough that the Registration Statement omitted relevant or material facts." *Dropbox*, 2020 WL 6161502, at *6. Instead, as Plaintiffs acknowledge (Opp. 10:4-7), an omission must cause a statement to "'affirmatively create an impression of a state of affairs that differs in a material way from the one that actually exists' to be actionable." *Id.* (quoting *Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002)). In their Opposition, Plaintiffs never explain how they meet this standard. For instance, GoodRx's statements that it had a "deep competitive moat," a "brand advantage over our competitors," a "market demand," or that it was the "most downloaded medical app"—statements that Plaintiffs admit were "technically correct" at the time

---

[2] As argued in GoodRx's Motion, many of the statements at issue are puffery or opinions and therefore unactionable. The Underwriters incorporate by reference the arguments in GoodRx's Reply responding to Plaintiffs' Opposition (Opp. 12:1-18) on this point.

GoodRx made them (Opp. 10:8)—do not give an impression that GoodRx had *no* competition or that GoodRx would not face any new or more intense competition in the future. They do not predict anything about the future at all. *See, e.g.*, *VeriFone*, 11 F.3d at 869 (rejecting claim that defendant "omitted to state the 'fact' that future performance may not be as bright as past performance" and concluding, "failure to make the omitted forecasts did not render other statements that were made misleading"). Plaintiffs argue nothing to the contrary.

Moreover, because none of the statements even mentions Amazon, the registration statement does not create an impression about Amazon as a potential threat, and it certainly does not suggest that Amazon did *not* plan to enter the market. *See Brody*, 280 F.3d at 1006 (affirming dismissal when statements at issue "neither stated nor implied anything" regarding the omitted information); *see also Belodoff v. Netlist, Inc.*, 2008 WL 2356699, at *11 (C.D. Cal. May 30, 2008) (Carter, J.) ("*Belodoff I*") (dismissing Section 11 claim when "the challenged statements are disconnected from the alleged omissions"). Given GoodRx's extensive risk disclosures (Mot. 7:5-8:6), including the disclosure that competitors could include "new market entrants with greater resources" (GoodRx RJN, Ex. 1 at 27), Plaintiffs have not explained how GoodRx's statement created a misimpression.

Because the challenged statements did not state or give any impression that GoodRx had no competition, or suggest that Amazon was not a potential competitor, Plaintiffs' reliance on *Brody* is misplaced. (Opp. 10.) In *Brody*, the court affirmed dismissal of plaintiffs' section 10(b) claim, noting that "[i]f the press release had affirmatively intimated that no merger was imminent, it may well have been misleading." *Brody*, 280 F.3d at 1006. Similarly, Plaintiffs' reliance on *Berson v. Applied Signal Tech., Inc.*, 527 F.3d 982 (9th Cir. 2008) is misplaced. (Opp. 10.) In *Berson*, the court found that plaintiffs sufficiently alleged that statements were misleading in its section 10(b) claim, but noted that "[h]ad defendants released no backlog reports, their failure to mention the stop-work orders might not have misled anyone." *Berson*, 527 F.3d at 986-87.

*Second*, in their Opposition, Plaintiffs do not dispute that courts have "repeatedly refused to find disclosure of accurate historical data misleading." *Dropbox,* 2020 WL 6161502, at \*7; *see also Belodoff II*, 2009 WL 1293690, at \*8-10 (dismissing Section 11 claim based on "historical statement" that did "not make any predictions" about future performance). Here, most of GoodRx's statements were historical facts, not statements regarding the future; including that GoodRx (i) had 4.4 million monthly active consumers in the second quarter of 2020 (Compl. ¶ 60); (ii) had been "the most downloaded medical app . . . for the last three years" (*id.*); and (iii) "[t]o date, [had] retained all of [its] PBM partners" (*id.* ¶ 62). Again, these historical facts do not give any impression about the future, let alone that these statistics would never change. *See VeriFone*, 11 F.3d at 869 (rejecting that statements were misleading for omitting "to state the 'fact' that future prospects may not be as bright as past performance"). In fact, uncertainty regarding the future is the very reason that GoodRx made risk disclosures, as discussed fully below.

*Third*, Plaintiffs argue that a reasonable investor would have considered information about Amazon's plans to be important when deciding whether to purchase or sell GoodRx stock. (Opp. 10:27-11:3.) This is not the standard. Even if investors would have considered Amazon's future plans "important," Plaintiffs cannot state a claim simply by identifying "important" information that was omitted. *See In re Rigel Pharm., Inc. Sec. Litig.*, 697 F.3d 869, 880 n.8, 886 & n.15 (9th Cir. 2012) (affirming dismissal of Section 11 claim when plaintiffs failed to allege that omission of material information rendered statements misleading "even if investors would consider the omitted information significant"); *Rubke*, 551 F.3d at 1162-63 (explaining that the complaint must allege why the statements at issue "were misleading or untrue, not simply why the statements were incomplete" and that "Section 11 does not require the disclosure of all information a potential investor might take into account when making his decision"); *Brody*, 280 F.3d at 1006 (concluding that the securities laws contain no "freestanding completeness requirement"). Plaintiffs must instead allege that the statements GoodRx made *affirmatively created a misimpression* by omitting disclosure of Amazon's future plans. *See Dropbox*, 2020 WL 6161502, at \*7.

11

Here, given GoodRx's extensive risk disclosures, no reasonable investor would interpret the challenged statements as a guarantee against existing or future competition, from Amazon or any other competitor. Reasonable investors understand that *all* companies face competition; Plaintiffs give no reason why GoodRx investors would imagine GoodRx was any different. In fact, GoodRx affirmatively disclosed the risk of future competition in its disclosures, among others, that (i) GoodRx could give "no assurance that competitors will not develop and market similar offerings" to GoodRx, and "increased competition" "*could* impact [GoodRx's] ability to attract and retain consumers" (Compl. ¶ 65); (ii) that GoodRx operates in "a very competitive industry," and potential competitors could include "existing or new market entrants with greater resources and better offerings, reputations and market strategies," "such as discount websites, apps, cash back and loyalty programs and new comparison shopping sites," that could "form a strategic alliance with one of our competitors or other industry participants" and "have a negative impact on [GoodRx's] business." (GoodRx RJN, Ex. 1 (S-1/A) at 27-28.) *See Belodoff II*, 2009 WL 1293690, at *8-9 (concluding that warnings concerning "risky" business model, along with existing disclosures, prevented statements from being misleading); *see also Stac*, 89 F.3d at 1406 (affirming dismissal of Section 11 claim when the prospectus made "detailed disclosures concerning the risk of competition"). Therefore, GoodRx's registration statement was not misleading.

### 3. The Complaint Fails To Plausibly Allege The Risk Disclosure Was Misleading

Plaintiffs' argument that GoodRx's risk disclosures were misleading also fails. (Opp. 13-14.) *First*, Plaintiffs claim that Defendants are attempting to "hide behind their generic risk disclosure" that GoodRx "*may* face increased competition from those that attempt to replicate our business model or marketing tactics, such as discount websites, apps, cash back and loyalty programs and new comparison shopping sites from various industry participants, any of which *could* impact our ability to attract and retain consumers." (*Id.*) Plaintiffs cite no authority for the proposition that a warning is misleading for saying a risk

12

"could" or "may" occur instead of it "will" occur (Opp. 14), and the law does not support their argument. *See Stac*, 89 F.3d at 1406 (rejecting claim that risk disclosures were inadequate because company "*knew* that Microsoft was going to come out with a competitive product"); *Rubinstein v. Credit Suisse Grp. AG*, 457 F. Supp. 3d 289, 297 (S.D.N.Y. 2020) (dismissing claim that risk warnings were misleading because they said risks "could" or "may" affect the value of the securities instead of that they "would").

Rather, any case law finding risk warnings misleading found them so because the risk—and its fallout—had *already* occurred. In *Pirani v. Slack Technologies, Inc.*, 445 F. Supp. 19 3d 367, 385-86 (N.D. Cal. 2020), *aff'd*, 13 F.4th 940 (9th Cir. 2021), and *Flynn v. Sientra, Inc.*, 2016 WL 3360676, at *10 (C.D. Cal. June 9, 2016), the plaintiffs pleaded facts showing that the disclosures identified risks as hypotheticals when they had already come to fruition. Here, GoodRx's disclosure did not identify increased competition as a hypothetical risk when Amazon was in fact already competing. Because Amazon had not announced PrimeRx or its price comparison tool, let alone operated them effectively against GoodRx, no risk had come to fruition. Because any risk from PrimeRx or the price comparison tool had not already affected GoodRx's business, Plaintiffs' authorities are inapposite.

Plaintiffs attempt to distinguish *In re Pivotal Securities Litigation*, 2020 WL 4193384 (N.D. Cal. July 21, 2020), arguing that while "Amazon had not yet hit the market, the risk had already come to fruition because Amazon's new prescription drug (relying on GoodRx's platform) service existed, even though it had not been announced publicly." (Opp. 14 n.9.) Plaintiffs do not explain how PrimeRx "existed" if it was still in the development stage and not operational (Compl. ¶¶ 47, 66), let alone how PrimeRx adversely affected GoodRx's business before it was announced publicly. As in *Pivotal*, Plaintiffs' challenge to the risk disclosure fails because "the [Complaint] does not provide anything beyond conclusory assertions that the risks 'had already materialized.'" *Pivotal*, 2020 WL 4193384, at *7.

*Second*, Plaintiffs argue that, even though GoodRx disclosed risks from competition—including the risk of "new market entrants with greater resources" (GoodRx RJN Ex. 1 (S-1/A) at 27)—it did not specifically describe risks that Amazon would pose in the future (in the event Amazon eventually got PrimeRx up and running). (Opp. 14.) However, again, there is no "rule of completeness" in securities disclosures because "[n]o matter how detailed and accurate disclosure statements are, there are likely to be additional details that could have been disclosed but were not." *Dropbox*, 2020 WL 6161502, at *6; *see also In re Progenity, Inc.*, 2021 WL 3929708, at *11 (S.D. Cal. Sept. 1, 2021) (dismissing Section 11 claim when defendants' "failure to disclose a potential decrease in ASP and revenue, 'even if investors would consider the omitted information significant,' is not actionable insofar as it did not make the actual statements made about test volume fluctuation misleading"); *cf. Lefter v. Yirendai Ltd.*, 2017 WL 2857535, at *7 (C.D. Cal. June 20, 2017) (dismissing Section 10(b) claim when risk disclosures "never created the impression that the Draft Measures did ***not*** put its business model at risk; they simply did not explain the risk in the manner or level of detail that Plaintiff would have preferred"). GoodRx could always add more details about its competitors to its risk disclosures, but the question here is not whether GoodRx could have included such information, but whether the omission created a misimpression. It did not.

Instead, to sufficiently plead that a risk disclosure was misleading, a plaintiff must show that the undisclosed information *contradicts* that disclosure. *See Pivotal*, 2020 WL 4193384, at *6-7 (citations omitted); *see also Stac*, 89 F.3d at 1406 (rejecting claim that risk disclosure was misleading when the plaintiff did not "allege[] any . . . contradictory statements"). Plaintiffs ignore the fact that the eventual Amazon launch of PrimeRx was entirely consistent with GoodRx's risk disclosure. GoodRx's statements that it "may face increased competition from those that attempt to replicate our business model or marketing tactics" or competition from "new market entrants with greater resources" are entirely consistent with the fact that Amazon would enter the market almost two months later. As such, Amazon's alleged undisclosed plan was merely an additional detail ***consistent*** with

the risk disclosure; it is not a fact that caused the disclosure to create a misimpression if omitted. In fact, if anything, Amazon's eventual launch of PrimeRx is just an example of the "increased competition" that GoodRx warned about. As such, the omission of Amazon's undisclosed plans does not render the risk disclosures misleading. *See Brody*, 280 F.3d at 1006; *see also In re TVIX Sec. Litig.*, 25 F. Supp. 3d 444, 457 (S.D.N.Y. 2014) ("Defendants are not required to 'predict the precise manner in which risks will manifest themselves.'"), *aff'd sub nom.*, *Elite Aviation LLC v. Credit Suisse AG*, 588 F. App'x 37 (2d Cir. 2014).

In fact, courts have routinely rejected arguments that disclosures are misleading for omitting specific facts about competitors. In *Stac*, for example, the Ninth Circuit determined that defendants need not disclose additional information about Microsoft's plans since "Stac could not have known whether or not Microsoft would truly [introduce a competitive product]" because "another company's plans cannot be known to a certainty." *Stac*, 89 F.3d at 1407; *see also Pirani*, 445 F. Supp. 3d, at 388 (dismissing plaintiffs' Section 11 claim regarding disclosure of competition with Microsoft when "Slack was under no duty to report the data and relative capacity of its competitors"). Rather, courts have held that an "[i]ssuer[] o[f] securities must reveal *firm-specific* information" about itself. *In re Adams Golf, Inc. Sec. Litig.*, 381 F.3d 267, 278 (3d Cir. 2004). It need not "compare itself in myriad ways to its competitors, whether favorably or unfavorably." *Id.* (concluding that company's statement about the limited supply of its own product to retailers was not rendered misleading by omission of competitors' oversupply of product); *Steinberg v. PRT Grp., Inc.*, 88 F. Supp. 2d 294, 304 (S.D.N.Y. 2000) (dismissing section 11 claim when "defendants had no duty to disclose the activities of [Company's] competitors or to state publicly that the Company was losing ground to competitors in bidding for IT contracts").

Plaintiffs attempt to distinguish *Stac*, claiming that there, the company not only disclosed risks from competition, but mentioned competitive risks from Microsoft by name. (Opp. 11.) Plaintiffs claim that here, GoodRx "essentially said it had no significant

competition" and made no warnings about Amazon specifically. (Opp. 11.) This distinction fails. Far from saying "it had no significant competition," GoodRx acknowledged, like the company in *Stac*, competition "from those that attempt to replicate our business model or marketing tactics." *See Stac*, 89 F.3d at 1406; (GoodRx RJN, Ex. 1 at 27; Compl. ¶ 65). GoodRx further disclosed that it "*may* face *increased competition* . . . which *could* impact our ability to attract and retain consumers." (Compl. ¶ 65 (second emphasis added).)

As for mentioning Amazon by name, in *Stac*, the company had a reason to identify Microsoft by name (although the court's ruling did not hinge on the fact Microsoft was specifically identified). The company's main product was used in computers with Microsoft's operating system, and it had already obtained a patent infringement judgment against Microsoft. *See Stac*, 89 F.3d at 1401, 1405. Yet even then, the company was not obligated to disclose Microsoft's future plans to make its disclosures not misleading. *Id.* at 1407. Here, in contrast, Plaintiffs allege no similar facts to support that Amazon posed an existing competitive threat at the time of the IPO. There is even less reason GoodRx should have disclosed Amazon's future plans.

Plaintiffs also attempt to distinguish *Steinberg*, claiming that there, the court found that the prospectus disclosed the allegedly omitted risks, and that "while a company is not required to say 'X company is doing Y,' they are required to properly disclose the nature of the threats before it;" otherwise, the statements are misleading. (Opp. 11-12 n.6.) Plaintiffs ignore the fact that GoodRx did disclose the nature of the competition threats before it by stating that it "*may* face increased competition from those that attempt to replicate our business model or marketing tactics," which "*could* impact our ability to attract and retain consumers." (Compl. ¶ 65.) Here, Plaintiffs have failed to allege that PrimeRx or Amazon's price comparison tool even posed any competition at the time of the registration statement. Even if it did, GoodRx disclosed risks from competition, and it did not need to supply details about Amazon to keep those risk disclosures from being misleading.

**B.**     **<u>The Complaint Fails To Allege A Violation Of Item 303 Or 105</u>**

Plaintiffs claim that GoodRx violated Item 303 of Regulation S-K because GoodRx "knew, but did not disclose, the imminent entry of Amazon" in the market fails. (Opp. 17.) Plaintiffs argue that Amazon's entry "is the classic fact the disclosure of which Item 303 requires" because it is a "fact 'that the registrant expect[ed] will have a material. . . unfavorable impact on net sales or revenues or income from continuing operations.'" (Opp. 17-18 *citing* 17 C.F.R. § 229.303(a)(3)(ii).)

Plaintiffs ignore that, under Item 303, issuers must disclose known historic trends, but they need not "disclose the future." *Belodoff II*, 2009 WL 1293690, at *12; *see also Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1297 (9th Cir. 1998) (distinguishing between existing trends reasonably likely to affect the future and "anticipating a future trend or event"). Because Amazon had not launched PrimeRx, and, could have chosen not to launch it at all, it would have been speculative for GoodRx to disclose that if and when Amazon launched PrimeRx, it would have a negative effect on GoodRx. *See Stac*, 89 F.3d at 1407 (concluding that even if Microsoft had informed defendant of its plans, defendant "could not have known whether or not Microsoft would truly do so"). Nor have Plaintiffs alleged any facts on which to base their conclusion that GoodRx management "expected" Amazon's unlaunched, untested program to have a "material" or "unfavorable impact on net sales or revenues" at the time of the IPO. *See* 17 C.F.R. § 229.303(a)(3)(ii). (In fact, Plaintiffs fail to allege that Amazon's programs have had any such effect since they were launched.)

Because Plaintiffs have failed to allege that GoodRx management reasonably expected Amazon's alleged plans to have an unfavorable impact on net sales or revenues or income from continuing operations, Plaintiffs' reliance on *Steckman* is unhelpful. In *Steckman*, the court affirmed dismissal when plaintiffs failed to sufficiently allege that defendants "reasonably expected" a slowdown would have "a material impact on net sales, revenues or income." *Id.* at 1297-98. Plaintiffs' reliance on *Cai v. Switch, Inc.*, 2019 WL 3065591 (D. Nev. July 12, 2019), is also misplaced. In that case, defendants had already

17

changed the company's sales strategy when the registration statement became effective. *Id.* at \*5. Here, Amazon, ***another company***, allegedly had ***plans*** to enter the market, but the program was not fully developed or operational when the registration statement became effective.

Plaintiffs' Item 105 allegations similarly fail. Item 105 requires "a discussion of the most significant factors that make an investment in the registrant or offering speculative or risky." *Pivotal*, 2020 WL 4193384, at \*8 (citing 17 C.F.R. § 229.105). Plaintiffs assert that they sufficiently allege that the risk factors in the registration statement were general and failed to disclose "the imminent risk that was already occurring," Amazon's plans to enter the market. (Opp. 18.) Again, Plaintiffs have failed to allege where Amazon was in its planning process or explain how the risk was "already occurring" when Amazon would not launch PrimeRx for almost two months after the IPO.

Additionally, GoodRx did disclose the risks it faced from competitors, including that it "***may*** face increased competition from those that attempt to replicate our business model or marketing tactics," which "***could*** impact our ability to attract and retain consumers." (Compl. ¶ 65.) Plaintiffs have yet to show how omitting Amazon's plans rendered these disclosures insufficient. At the time the registration statement became effective, Amazon's launch of PrimeRx was, at best, an event that would occur in the future. Accordingly, GoodRx's risk disclosure precisely warned about the competition presented by Amazon— "increased competition from those that attempt to replicate our business model or marketing tactics." (Compl. ¶ 65); *see also Pivotal*, 2020 WL 4193384, at \*8. Plaintiffs reliance on *Pirani*, 445 F. Supp. 3d, at 387 to bolster its Item 105 claim is misplaced. There, plaintiffs plausibly alleged that the outage risks defendants identified as hypotheticals had come true because of frequent outages before the IPO. *Id.* at 386. Here, Plaintiffs have failed to plausibly allege that Amazon's program was operational, much less actively competing, at the time of the IPO.

Finally, Plaintiffs rely on *S.E.C. v. Todd*, 642 F.3d 1207, 1220 (9th Cir. 2011), to argue that "whether adverse facts were adequately disclosed is a mixed question to be

18

decided by the trier of fact." However, *Todd* also acknowledged that resolving an issue as a matter of law is "appropriate when the adequacy of the disclosure is 'so obvious that reasonable minds [could] not differ.'" *Id.* (alteration in original). Here, "reasonable minds" could not disagree that the registration statement amply discussed the risks GoodRx faced, including those from competitors. *See Stac*, 89 F.3d at 1409 (affirming dismissal of Section 11 claim when the prospectus "adequately disclosed the information [plaintiff] alleges Stac to have concealed and that it contained '*enough* cautionary language or risk disclosure that reasonable minds could not disagree that the challenged statements were not misleading'") (citation omitted).

## III.    <u>CONCLUSION</u>

For the reasons stated herein, and in GoodRx's Reply, which the Underwriters fully incorporate by reference here and, for the convenience of the Court, do not repeat, the Court should dismiss the Complaint.

DATED:  November 19, 2021

SKADDEN, ARPS, SLATE, MEAGHER
& FLOM LLP

By: _____*/s/ Peter B. Morrison*_____
PETER B. MORRISON
*Attorneys for Defendants*
MORGAN STANLEY & CO. LLC, et al.