UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. LA CV 20-11444-DOC-MAR                                    Date: January 6, 2022

Title: R. BRIAN TERENZINI ET AL. v. GOODRX HOLDINGS, INC. ET AL.

PRESENT:

THE HONORABLE DAVID O. CARTER, JUDGE

| Karlen Dubon | Not Present |
|---|---|
| Courtroom Clerk | Court Reporter |

| ATTORNEYS PRESENT FOR PLAINTIFF: | ATTORNEYS PRESENT FOR DEFENDANT: |
|---|---|
| None Present | None Present |

**PROCEEDINGS (IN CHAMBERS):   ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS [86, 89]**

Before the Court is Defendants GoodRx Holdings, Inc. ("GoodRx"), Douglas Hirsch, Trevor Bezdek, Karsten Voermann, Christopher Adams, Julie Bradley, Dipanjan Deb, Adam Karol, Jacqueline Kosecoff, Stephen LeSieur, Gregory Mondre, and Agnes Rey-Giraud's (collectively the "Individual Defendants," and with GoodRx "GoodRx Defendants") Motion to Dismiss ("GoodRx Motion" or "GoodRx Mot.") (Dkt. 86). The Court finds this matter appropriate for resolution without oral argument. *See* Fed. R. Civ. P. 78; C.D. Cal. R. 7-15. Having reviewed the moving papers submitted by the parties, the Court **GRANTS** the Motions and **VACATES** the hearing scheduled for January 10, 2022.

I.   **Background**

   A.   **Facts**

This case is a federal securities class action brought on behalf of purchasers of GoodRx Class A common stock between September 23, 2020 and May 10, 2021. *See generally* Consolidated Complaint ("CC") (Dkt. 76). GoodRx is a healthcare technology

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. LA CV 20-11444-DOC-MAR  Date: January 6, 2022

Page 2

platform that provides consumers with price information and discounts on prescription drugs. *Id.* ¶ 2. The company generates money primarily from fees it receives from Pharmacy Benefit Managers who negotiate drug discounts. *Id.* GoodRx launched an initial public offering ("IPO") on August 28, 2020. *Id.* ¶ 3. The IPO launched well above its per share offering price and opened at almost $47 per share. *Id.*

In connection with the IPO, GoodRx filed a Registration Statement and Prospectus with the Securities and Exchange Commission ("SEC"), which included representations that the company was a "market leader," was the only "significant direct-to-consumer channel" for many Pharmacy Benefit Managers, and had contract provisions in place to prevent Pharmacy Benefit Managers from "circumventing our platform [or] redirecting volumes outside of our platform." *Id.* ¶ 4.

However, soon after the IPO, Amazon.com, Inc. ("Amazon") launched a competitor prescription drug discount program, PrimeRx. *Id.* ¶¶ 5, 8. Amazon's program involved partnering with a company named Inside Rx, of which GoodRx was a founding partner. *Id.* ¶ 6. Plaintiffs allege that as a result, Defendants knew about the upcoming launch of Amazon's competitor service at the time of the IPO, but did not disclose that information to investors. *Id.* ¶ 6. GoodRx's stock price dropped dramatically after PrimeRx's launch. *Id.* ¶ 8.

Defendants subsequently made representations in investor conference calls that Plaintiffs allege were materially misleading, particularly in that they failed to disclose that Amazon was planning to introduce a drug price comparison tool identical to GoodRx's. *Id.* ¶ 9. When that tool launched in May 2021, GoodRx's stock dropped to below its initial IPO price. *Id.* ¶ 10.

Plaintiffs bring suit against GoodRx, its directors, and the underwriters of GoodRx's IPO for failing to disclose the material risk of competition from Amazon at the time of the IPO and for making materially false statements in the Registration Statement and in subsequent investor communications, therefore artificially inflating the price of GoodRx stock. *See generally* CC.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. LA CV 20-11444-DOC-MAR                              Date: January 6, 2022

Page 3

### B.  Procedural History

On May 6, 2021, Plaintiff Terenzini filed his complaint on behalf of a class in this Court (Dkt. 1). After consolidating cases, the Court appointed the Lead Plaintiffs to lead the class (Dkt. 65). Plaintiffs filed their Consolidated Complaint on June 7, 2021.

The GoodRx Defendants filed their Motion to Dismiss on August 6, 2021. Defendants Morgan Stanley & Co. LLC, Goldman Sachs & Co. LLC, J.P. Morgan Securities LLC, Barclays Capital Inc., BofA Securities Inc., Citigroup Global Markets Inc., Credit Suisse Securities (USA) LLC, RBC Capital Markets, LLC, UBS Securities LLC, Cowen and Company, LLC, Deutsche Bank Securities Inc., Evercore Group L.L.C., Citizens Capital Markets, Inc., KKR Capital Markets LLC, LionTree Advisors LLC, Raymond James & Associates, Inc., SVB Leerink LLC, Academy Securities, Inc., Loop Capital Markets LLC, R. Seelaus & Co., LLC and Samuel A. Ramirez & Company, Inc. (collectively the "Underwriters") joined the GoodRx Defendants' Motion ("Underwriters Mot.") on August 6, 2021 (Dkt. 89). Plaintiffs opposed Defendants' Motions ("Opp'n") (Dkt. 91) on October 5, 2021. The GoodRx Defendants replied ("GoodRx Reply") (Dkt. 92) and the Underwriters replied ("Underwriters Reply") (Dkt. 94) on November 19, 2021.

## II.  Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a complaint must be dismissed when a plaintiff's allegations fail to set forth a set of facts that, if true, would entitle the complainant to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (holding that a claim must be facially plausible in order to survive a motion to dismiss). The pleadings must raise the right to relief beyond the speculative level; a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). On a motion to dismiss, a court accepts as true a plaintiff's well-pleaded factual allegations and construes all factual inferences in the light most favorable to the plaintiff. *See Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). A court is not required to accept as true legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678.

In evaluating a Rule 12(b)(6) motion, review is ordinarily limited to the contents of the complaint and material properly submitted with the complaint. *Van Buskirk v.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. LA CV 20-11444-DOC-MAR                                    Date: January 6, 2022

Page 4

*Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002); *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990). Under the incorporation by reference doctrine, the court may also consider documents "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading." *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds by Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119, 1121 (9th Cir. 2002). The court may treat such a document as "part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

When a motion to dismiss is granted, the court must decide whether to grant leave to amend. The Ninth Circuit has a liberal policy favoring amendments, and thus leave to amend should be freely granted. *See, e.g.*, *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992). However, a court need not grant leave to amend when permitting a plaintiff to amend would be an exercise in futility. *See, e.g.*, *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987) ("Denial of leave to amend is not an abuse of discretion where the pleadings before the court demonstrate that further amendment would be futile.").

### III.   Discussion

The GoodRx Defendants argue that Plaintiffs' Securities Act claim should be dismissed because there are no damages; that the complaint does not sufficiently plead falsity of the challenged statements; and that Plaintiffs have not sufficiently pleaded scienter. The Underwriter Defendants join and argue that Plaintiffs do not sufficiently allege any false or misleading statements. The Court considers each argument in turn.

#### A.   Securities Act damages

Section 11 of the Securities Act creates a private remedy for any purchaser of a security if any part of the registration statement, "when such part became effective, contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading." 15 U.S.C. § 77k(a). Under 15 U.S.C. § 77k(e), such a purchaser may recover damages for losses "measured by the difference between the amount paid for the security and its price at either the time it was sold or the date the Section 11 claim was filed." *Miller v. Pezzani (In re Worlds of Wonder Sec. Litig.)*, 35 F.3d 1407, 1421 (9th Cir.1994). While damages

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. LA CV 20-11444-DOC-MAR                  Date: January 6, 2022

Page 5

are not an element of a Section 11 claim, lack of damages is an affirmative defense. *Id.* at 1421-22; *In re Countrywide Fin. Corp. Sec. Litig.*, 588 F. Supp. 2d 1132, 1168-69 (C.D. Cal. 2008).

       The GoodRx Defendants argue that Plaintiffs have suffered no loss and as such have no damages available, meaning their Section 11 claim must be dismissed. GoodRx Mot. at 8-9. The IPO stock price was $33/share. CC ¶ 3. Plaintiffs also note that the stock price on November 16, 2020, after Amazon announced the PrimeRx launch, dropped to $36.21. *Id.* ¶ 55. The stock price on December 18, 2020, the date the initial complaint was filed, closed at $44.61/share. Mot. at 9. The stock price never dropped below the IPO price between IPO and the filing of this suit. *Id.*

       Plaintiffs do not dispute that there was an increase in share price between the IPO and the filing of this suit, but argue a different theory of damages, namely that the IPO price did not accurately represent GoodRx's value. Opp'n at 8. Plaintiffs note that the statute defines the second number used to calculate damages as "the *value* thereof as of the time such suit was brought," and does not specify using the market price. 15 U.S.C. § 77k(e) (emphasis added). The GoodRx Defendants respond that the language of the statute referring to the IPO specifies "the amount paid for the security (not exceeding the price at which the security was offered to the public)," not the 'value' at the IPO. *Id.*

       The Court agrees with the Defendants that the statute's language is clear that the starting point for damages is the price that Plaintiffs actually paid for the stocks, capped at the IPO price, meaning $33/share. Plaintiffs cite an unpublished district court case as their only support for importing the "value" language to overwrite the "amount paid" language at IPO. Opp'n at 8-9 (quoting *In re Snap Inc. Sec. Litig.*, 2018 WL 2972528, at *9 (C.D. Cal. June 7, 2018)). Even that case cited only two district court cases, neither of which support using IPO 'value' instead of IPO price. *See Snap*, 2018 WL 2972528 at *9 n.24 (citing *Campton v. Ignite Rest. Grp. Inc.*, 2014 WL 61199, at *5, *7 (S.D. Tex. Jan. 7, 2014) and *In re Fortune Sys. Sec. Litig.*, 680 F. Supp. 1360, 1370 (N.D. Cal. 1987)).

       The Court sees no reason to go beyond the plain language of the statute. With an undisputed IPO price of $33 and no drop below that in the entire period until the filing of this suit, there is no evidence of any loss to Plaintiffs. As such, the Court GRANTS the GoodRx Defendants' Motion and DISMISSES WITHOUT PREJUDICE Plaintiffs' Section 11 claims.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. LA CV 20-11444-DOC-MAR                          Date: January 6, 2022

Page 6

       **B.**        **False or misleading statements**

       Defendants argue that Plaintiffs' Securities Act and Exchange Act claims fail because none of the challenged statements were false or materially misleading. GoodRx Mot. at 2. Since the Section 11 claim is not viable as discussed above, the Court considers only Section 10(b) of the Exchange Act here.

       To state a claim under Section 10(b) of the Exchange Act, a plaintiff must allege facts showing (1) a material misrepresentation, (2) scienter, (3) a connection with the purchase or sale of security, (4) reliance, (5) economic loss, and (6) loss causation. *Dura Pharms, Ins. v. Broudo*, 544 U.S. 336, 341 (2005). Under the heightened pleading standards of the Private Securities Litigation Reform Act ("PSLRA"), a securities fraud complaint must identify each alleged misrepresentation, specify the reasons it is misleading, and state with particularity facts giving rise to a strong inference that the defendant who made the misrepresentation acted with fraudulent intent. *Tellabs Inc. v. Makor Issues & Rights Ltd.*, 551 U.S. 308, 321 (2007).

       **i. The Registration Statement**

       Plaintiffs challenge nine statements from the Registration Statement filed with the SEC. CC ¶¶ 57-65. Plaintiffs allege that the all the statements "were materially false and misleading when made because they misrepresented and failed to disclose the adverse facts about Amazon's imminent entry into the prescription drug saving market with PrimeRx," and specifically that "Amazon had been in the process of developing and would soon begin introducing its own prescription drug saving program" and "as such would be able to offer the same prescription drug discounts to its millions of Amazon Prime members that GoodRx was also offering." *Id.* ¶ 66.

       Plaintiffs first challenge three sets of statements about GoodRx's competitive positioning: (1) "Our partnerships across the healthcare ecosystem, scale and strong consumer brand create a deep competitive moat that is reinforced by our proprietary technology platform;" (2) "We are a market leader with a significant scale and brand advantage over our competitors. Our growth accelerates self-reinforcing network effects that further strengthen our competitive position;" and (3) "We believe that we are the largest platform that aggregates pricing for prescriptions. . . . We believe our business

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. LA CV 20-11444-DOC-MAR            Date: January 6, 2022

Page 7

model has facilitated the rapid growth and expansion of our platform." CC ¶¶ 57-59. The GoodRx Defendants argue that the Complaint contains no facts establishing that those statements were false, and that Amazon's post-IPO entry into the same market did not retroactively render the statements misleading. GoodRx Mot. at 11. While these statements were later revealed to be overly optimistic given Amazon's launch, "a company is not required to forecast future events" in its public statements. *In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1406 (9th Cir. 1996). In addition, the GoodRx Defendants argue that these statements are puffery and not actionable. GoodRx Mot. at 12. "[V]ague, generalized assertions of corporate optimism or statements of 'mere puffing' are not actionable material misrepresentations under federal securities laws." *In re Impac Mortgage Holdings, Inc. Sec. Litig.*, 554 F. Supp. 2d 1083, 1096 (C.D. Cal. 2008) (citing *Glen Holly Ent., Inc. v. Tektronix, Inc.*, 352 F.3d 367, 379 (9th Cir. 2003)). The Court finds that these statements are puffery or otherwise true based on GoodRx's market position at the time of the IPO.

     Plaintiffs next challenge three statements about consumer demand for GoodRx's services: (1) that GoodRx had 4.4 million monthly active consumers ("MACs") for the second quarter of 2020; (2) that GoodRx had been "the most downloaded medical app on the Apple App Store and Google Play App Store for the last three years;" and (3) "We believe our financial results reflect the significant market demand for our offerings." CC ¶¶ 60, 64. But Plaintiffs do not allege any facts suggesting these statements about historical usage and current market demand were not true, or that Amazon's impending competition rendered them false or misleading.

     Plaintiffs next challenge three statements about GoodRx's relationships with its PBM partners: (1) "We believe that we currently have the largest database of PBM prices in the United States;" (2) "For many of our PBM partners, we are their only significant direct-to-consumer channel;" and (3) that GoodRx had contract provisions in place with its PBMs that "prevent PBMs from circumventing our platform, redirecting volumes outside of our platform and other protective measures." CC ¶¶ 61-63. Again, Plaintiffs make no allegations that these statements about existing demand and contracts were false. And as the GoodRx Defendants note, the Registration Statement explicitly warned that with a "limited number of major PBMs" GoodRx "may not expand beyond our existing PBM partners and the number of our PBM partners may even decline," and that while "we negotiate protective terms . . . with PBMs, our cont[r]acts with these parties are not exclusive and PBMs work with others in the industry to drive volume to their networks."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. LA CV 20-11444-DOC-MAR                                Date: January 6, 2022

Page 8

GoodRx Mot. at 15. The challenged statements did not guarantee the continuation of GoodRx's PBM contracts or numbers and warned they might decrease, so any omitted information about Amazon did not render them misleading.

Finally, Plaintiffs challenge statements about GoodRx's potential competition that "failed to disclose the imminent and known direct competitor that was being developed by Amazon at the time of the IPO," and "did not even identify Amazon as a potential competitor":

> We compete with companies that provide savings on prescriptions . . . . Within the prescriptions market, our competition is fragmented and consists of competitors that are smaller than us in scale. There can be no assurance that competitors will not develop and market similar offerings to ours . . . . We may face increased competition from those that attempt to replicate our business model or marketing tactics, such as discount websites, apps, cash back and loyalty programs and new comparison shopping sites from various industry participants, any of which could impact our ability to attract and retain consumers.

CC ¶ 65. The GoodRx Defendants argue that there are no alleged facts demonstrating that the risk of Amazon as a competitor had materialized at the time of the IPO. GoodRx Mot. at 13. And as the Underwriters argue, there are no factual allegations about the status of Amazon's plans as of the IPO in September 2020, two months before launch. Underwriters Mot. at 4-5. Moreover, given the warnings about potential competitors "replicat[ing] our business model," any missing information about Amazon's plans would make the statements simply incomplete. But under the PSLRA "a complaint must specify the reason or reasons why the statements . . . were misleading or untrue, not simply why the statements were incomplete." *Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002).

Even true statements are misleading where they "give a reasonable investor the impression of a state of affairs that differs in a material way from the one that actually exists." *Brody*, 280 F.3d at 1006. However, here Plaintiffs allege no facts indicating that Defendants were aware of Amazon's plans. This is the critical missing piece of the Complaint: Amazon's existing plans are irrelevant if the Defendants did not know of them. While Plaintiffs allege that GoodRx "had access to inside information" and communicated with Amazon regularly due to its partnerships with Inside Rx and Amazon's subsidiary PillPack, they do not allege how or when Defendants learned any insider information from those partnerships or what specific information they learned.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. LA CV 20-11444-DOC-MAR                      Date: January 6, 2022

Page 9

*See* CC ¶¶ 6, 50-51. These missing allegations go against "Congress's basic purpose in raising the bar [in the PSLRA] in the first place; namely, . . . to put an end to the practice of pleading fraud by hindsight." *Gompper v. VISX, Inc.*, 298 F.3d 893, 897 (9th Cir. 2002).

Since there are insufficient allegations to demonstrate that any of the challenged statements were material misrepresentations, the Court GRANTS Defendants' Motions and DISMISSES WITHOUT PREJUDICE Plaintiffs' 10(b) claims regarding the Registration Statement.

### ii. Statements after IPO

Plaintiffs also challenge seven post-IPO statements made by Defendants Hirsch and Bezdek (GoodRx's CEOs) under Section 10(b) of the Exchange Act.

Plaintiffs challenge Bezdek's statement on a November 12, 2020 investor conference call that "we have not seen sort of any competitors that have really impacted our business in any way sort of historically or currently." CC ¶ 103. That statement was true regardless of Amazon's plans since Amazon had not yet launched its competitor service.

Plaintiffs next challenge Hirsch's November 18, 2020 statement at the CNBC Disruptor 50 summit that Amazon's PrimeRx services complemented GoodRx instead of competing with it. CC ¶ 107. Defendants argue that this unquoted paraphrasing does not comply with the PSLRA's requirement that "the complaint shall specify each statement alleged to have been misleading." GoodRx Mot. at 18 (quoting 15 U.S.C. § 78u-4(b)(1)(B)). The Court finds that this statement is specified with sufficient particularity as to date, location, speaker, and substance. *See Nursing Home Pension Fund, Loc. 144 v. Oracle Corp.*, 380 F.3d 1226, 1235 (9th Cir. 2004) ("when statements . . . clearly originated from the defendants, and do not represent a third party's projection, interpretation, or impression, the statements may be held to be actionable even if they are not exact quotations."). Defendants do not otherwise challenge this statement. However, the Complaint does not specify why the statement was misleading based on information known at the time of Amazon's announcement of its initial pharmacy service.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. LA CV 20-11444-DOC-MAR            Date: January 6, 2022

Page 10

Plaintiffs next challenge five statements made by Hirsch and Bezdek because Defendants "knew, but failed to disclose, that Amazon was continuing to develop its PrimeRx product to directly compete with GoodRx." CC ¶ 113. First, Plaintiffs challenge Bezdek's November 18, 2020 statements at the RBC Global Technology, Internet, Media and Telecommunications Conference about Amazon's announcement. Bezdek said on a conference call:

> If you actually look at what Amazon was talking about yesterday, they're focused on being a mail order provider. That is what Amazon does, and it's what they do best. And a lot of folks sort of conflated this retail pharmacy discount card that they've put up there as being an actual product or service. But really, it's mostly there to comply with contractual obligations around insurance co-pays which they need to do for mail.

CC ¶ 108. Second, Bezdek said on the same call, "I'm a little surprised at how people have been somehow translated [Amazon] into this sort of massive new player in the discount card space. Let's be honest, other folks in, I'll call it, the health care space have tried to launch discount card programs like this and they generally failed" and "[w]hen I think of competition, I don't think of Amazon." *Id.* ¶ 109. Third, Plaintiffs challenge Hirsch's statement at a December 3, 2020 Credit Suisse Technology Conference:

> Amazon, what they really did, if we go back to kind of what the announcement was, is that in order to comply with insurance contracts, they added a rudimentary pharmacy discount card powered by Inside Rx, which is actually, GoodRx was the launch partner of Inside Rx. Hundreds of companies have done this for years. It wasn't a priority for them. It was basically that in order to show a price, because remember, this is the wacky world of health care, they couldn't do it themselves because they'd be buying those insurance and government contracts we talked about. We don't expect them to promote this card. Again, Amazon wants to send you things by mail, that's common sense. This card can be used at retail, but it has not ever been in their plans. They did not form any partnership with any retailers.
> * * *
> To some extent, we dominate this market. Amazon has a tiny fraction in the mail order market, and they really don't have that much scale for us. In terms of what – with the PrimeRx card, I don't – remember that this is a very complicated thing. If Amazon was to stand up tomorrow and say, we're going to publish our own prices or we're going to somehow customize the Inside Rx prices for us, [t]hey get ever closer to that point where lawsuits begin. And this is not a nominal thing.

CC ¶ 110. Fourth, Plaintiffs challenge Hirsch's December 8, 2020 UBS Global TMT Conference statement: "[S]uffice to say that we like the fact it's Amazon. We think it's

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. LA CV 20-11444-DOC-MAR                 Date: January 6, 2022

Page 11

complementary and helpful to our service that they can drop this, but I think we remain a partner of Amazon. However, I want to emphasize that we don't think it's detrimental to our business. We think it's actually – it's positive because it builds more awareness." CC ¶ 111. And fifth, Plaintiffs challenge Hirsch's statement at a December 10, 2020 Barclays Global Technology, Media and Telecommunications Conference:

> I don't personally see that as Amazon taking over the retail pharmacy business. And as I just said, I think mail is really, really hard. We are partners with Amazon. I don't want – it's not a David, Goliath. It's not a GoodRx versus Amazon thing. They are our partners. We talk to the PillPack guys all the time. GoodRx is actually accepted at the Amazon Pharmacy . . . .

CC ¶ 112.

Defendants argue that "the complaint contains no specific facts suggesting that any Defendant had insight into new efforts by Amazon, much less how that insight was developed." GoodRx Mot. at 19. Plaintiffs respond that GoodRx must have known about Amazon's plans because GoodRx was in communication with PillPack, an Amazon subsidiary: "Defendants can surely not be alleging GoodRx had no idea what its 'partner[]' – its 'friend' – was doing to directly impact the GoodRx business." Opp'n at 17. As with the pre-IPO statements, the Complaint does not allege any specific facts about how Defendants knew about Amazon's not-yet-public plans, what exactly they knew, or when they knew it. Without such knowledge, Defendants had no duty to speculate about Amazon's future plans to compete with GoodRx because "another company's plans cannot be known to a certainty." *In re Stac Elecs. Sec. Litig.*, 89 F.3d at 1407.

Accordingly, the Court GRANTS Defendants' Motion and DISMISSES WITHOUT PREJUDICE Plaintiffs' 10(b) claims involving post-IPO statements.

Since the Court is dismissing all of Plaintiffs' 10(b) claims, it is not necessary to reach Defendants' arguments about insufficient proof of scienter under the Exchange Act. *See* GoodRx Mot. at 20. However, the Court notes that there appear to be insufficient allegations of scienter for the same reasons the Complaint insufficiently alleges material misrepresentations. *See Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1062 (9th Cir. 2014) (holding that facts supporting a "mere inference of [the defendants'] knowledge" did not support scienter).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. LA CV 20-11444-DOC-MAR            Date: January 6, 2022

Page 12

### iii. Items 303 and 105 of Regulation S-K

Under Item 303 of Regulation S-K, the registrant is under a duty to "[d]escribe any known trends or uncertainties that the registrant reasonably expects will have a material favorable or unfavorable impact on net sales or revenues or income from continuing operations." 17 C.F.R. § 229.303(a)(3)(ii). As such, plaintiff must allege facts showing defendants knew of an adverse trend, the material impact of that trend, and "that the future material impacts are reasonably likely to occur from the present-day perspective." *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1297 (9th Cir. 1998) (emphasis omitted). "Regulation S-K thus governs the disclosure of known historic trends, but does not provide a basis of liability where a corporation fails to 'disclose" the future." *In re Verifone Sec. Litig.*, 784 F. Supp. 1471, 1483 (N.D. Cal. 1992), *aff'd*, 11 F.3d 865 (9th Cir. 1993) (citing *In re Convergent Technologies Sec. Litig.*, 948 F.2d 507, 516 (9th Cir. 1991).

Plaintiffs allege that Defendants violated Item 303 "by failing to disclose a known uncertainty with respect to the risk of competition GoodRx was facing with Amazon's imminent entry in the online pharmacy industry and prescription drug discount market." CC ¶ 76. Defendants argue that "the risk of competition" is a vague description, not a "fact" that could be required to be disclosed, and that Amazon had not yet actually entered the market. GoodRx Mot. at 16-17; Underwriters Mot. at 9; Underwriters Reply at 16. Moreover, Item 303 requires adverse events and uncertainties to be disclosed only if they are both "presently known to management" and "reasonably likely to have material effects." *Steckman*, 143 F.3d at 1296 (quoting Management's Discussion and Analysis of Financial Condition, Securities Act Release No. 6835 (May 18, 1989), Fed. Sec. L. Rep. (CCH) ¶ 72,436, at 62,143). As discussed above, Plaintiffs do not allege any specific facts about Amazon's plans that were known to GoodRx management at the time of the IPO. Without facts indicating concrete knowledge of Amazon's plans, any lack of disclosure here would be merely a failure to 'disclose the future.' *Cf. Belodoff v. Netlist, Inc.*, No. 8:07-cv-00677, 2009 WL 1293690, at *12 (C.D. Cal. Apr. 17, 2009). As such, Plaintiffs' Item 303 claim is DISMISSED WITHOUT PREJUDICE.

Item 105 of Regulation S-K requires a "discussion of the material factors that makes an investment in the registrant or offering speculative or risky." 17 C.F.R. § 229.105. Plaintiffs allege that Defendants violated Item 105 by failing to disclose "the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. LA CV 20-11444-DOC-MAR     Date: January 6, 2022

Page 13

imminent risk of competition from Amazon" and warning of generic "potential or contingent risk" without disclosing that "that the potential future adverse impacts described were already occurring." CC. ¶ 78. Defendants respond that the Registration Statement extensively disclosed the risks of future competition in the same market, and that those "risk disclosures discuss exactly [the] possibilities" that Plaintiffs allege GoodRx omitted. GoodRx Mot. at 17; Underwriters Mot. at 10 (quoting *In re Pivotal Sec. Litig.*, No. 3:19-cv-03589, 2020 WL 4193384, at *8 (N.D. Cal. July 21, 2020)). In addition, Defendants reiterate that Plaintiffs allege no facts suggesting Defendants could have included a more specific warning about Amazon's plans. GoodRx Mot. at 18. This claim fails for the same reason as earlier claims, namely that Plaintiffs have not sufficiently alleged facts demonstrating that Defendants knew of Amazon's specific plans and that the risk was already occurring. As such, Plaintiffs' Item 105 claim is DISMISSED WITHOUT PREJUDICE.

### C. Individual Defendants' liability as control persons

Section 20(a) of the Exchange Act makes "controlling" persons liable for violations of § 10(b). 15 U.S.C. § 78t(a). "Section 20(a) claims may be dismissed summarily, however, if a plaintiff fails to adequately plead a primary violation of section 10(b)." *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 990 (9th Cir. 2009), *as amended* (Feb. 10, 2009). Similarly, § 15 of the Securities Act makes control persons liable for violations of § 11. Because Plaintiffs' § 10(b) and § 11 claims are insufficiently plead, the Court DISMISSES WITHOUT PREJUDICE Plaintiffs' § 20(a) and § 15 claims.

### IV. Disposition

For the reasons set forth above, the Court GRANTS the GoodRx Defendants' Motion to Dismiss and GRANTS the Underwriters' Motion to Dismiss. The Court DISMISSES WITHOUT PREJUDICE Plaintiffs' claims under § 10(b) and § 20(a) of the Exchange Act and Rule 10b-5, § 11 and § 15 of the Securities Act, and Items 303 and 105 of Regulation S-K.

Plaintiffs shall file any amended complaint by February 7, 2022. The hearing scheduled for January 10, 2022, is VACATED.

The Clerk shall serve this minute order on the parties.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No. LA CV 20-11444-DOC-MAR | Date: January 6, 2022 |
| | Page 14 |

| | |
|---|---|
| MINUTES FORM 11 | Initials of Deputy Clerk: kdu |
| CIVIL-GEN | |