PETER B. MORRISON (SBN 230148)
peter.morrison@skadden.com
VIRGINIA F. MILSTEAD (SBN 234578)
virginia.milstead@skadden.com
CANDACE ROSS PHOENIX (SBN 323585)
candace.phoenix@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
300 South Grand Avenue, Suite 3400
Los Angeles, California 90071
Telephone:   (213) 687-5000
Facsimile:   (213) 687-5600

Attorneys for Defendants
MORGAN STANLEY & CO. LLC, GOLDMAN
SACHS & CO. LLC, J.P. MORGAN
SECURITIES LLC, BARCLAYS CAPITAL
INC., B OF A SECURITIES INC., CITIGROUP
GLOBAL MARKETS INC., CREDIT SUISSE
SECURITIES (USA) LLC, RBC CAPITAL
MARKETS, LLC, UBS SECURITIES LLC,
COWEN AND COMPANY, LLC, DEUTSCHE
BANK SECURITIES INC., EVERCORE
GROUP L.L.C., CITIZENS CAPITAL
MARKETS, INC., KKR CAPITAL MARKETS
LLC, LIONTREE ADVISORS LLC,
RAYMOND JAMES & ASSOCIATES, INC.,
SVB SECURITIES LLC fka SVB LEERINK
LLC, ACADEMY SECURITIES, INC., LOOP
CAPITAL MARKETS LLC, R. SEELAUS &
CO., LLC and SAMUEL A. RAMIREZ &
COMPANY, INC.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| In re GOODRX HOLDINGS, INC. SECURITIES LITIGATION | Master File No. 2:20-cv-11444-DOC-MARx |
| | CLASS ACTION |
| This Document Relates To:<br><br>ALL ACTIONS. | DEFENDANTS' NOTICE OF JOINDER AND JOINDER IN MOTION TO DISMISS AND MOTION TO DISMISS FIRST AMENDED CONSOLIDATED COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS<br><br>Judge:      Hon. David O. Carter<br>Courtroom: 9D<br>Date:       June 6, 2022<br>Time:       8:30 a.m. |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on June 6, 2022, at 8:30 a.m. or at the nearest available date at which counsel may be heard, in Courtroom 9D of the above-referenced Court located at 411 West Fourth Street, Santa Ana, CA 92701-4516, Defendants Morgan Stanley & Co. LLC, Goldman Sachs & Co. LLC, J.P. Morgan Securities LLC, Barclays Capital Inc., BofA Securities Inc., Citigroup Global Markets Inc., Credit Suisse Securities (USA) LLC, RBC Capital Markets, LLC, UBS Securities LLC, Cowen and Company, LLC, Deutsche Bank Securities Inc., Evercore Group L.L.C., Citizens Capital Markets, Inc., KKR Capital Markets LLC, LionTree Advisors LLC, Raymond James & Associates, Inc., SVB Securities LLC fka SVB Leerink LLC, Academy Securities, Inc., Loop Capital Markets LLC, R. Seelaus & Co., LLC and Samuel A. Ramirez & Company, Inc. (collectively the "Underwriters") will, and hereby do, present for hearing by the Court this Motion To Dismiss The First Amended Consolidated Complaint For Violations Of The Federal Securities Laws ("Motion").

This Motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place on March 3, 2022. The Motion seeks dismissal with prejudice of the First Amended Consolidated Complaint For Violations Of The Federal Securities Laws (the "AC") brought by Lead Plaintiffs Betty Kalmanson, Lawrence Kalmanson, and Shawn Kalmanson ("Plaintiffs") for failure to state a claim upon which relief may be granted. The Motion is filed pursuant to Federal Rules of Civil Procedure 8(a), 9(b), and 12(b)(6) and is based on the accompanying memorandum of points and authorities, the request for judicial notice and incorporation by reference filed by GoodRx Holdings, Inc., this Court's January 6, 2022 Order Granting Defendants' Motions to Dismiss (ECF No. 98 ("Order")), all pleading and papers filed in this action, and such additional papers and arguments as may be presented at or in connection with the hearing.

The Underwriters further hereby join in Defendants' Motion to Dismiss Amended Consolidated Complaint and Defendants' Request for Judicial Notice and Incorporation by Reference filed by GoodRx Holdings, Inc. and the Individual Defendants in this

action and all arguments stated therein.

DATED:  March 10, 2022            SKADDEN, ARPS, SLATE, MEAGHER
                                 & FLOM LLP

                                 By:_____/s/ Virginia F. Milstead_____
                                        VIRGINIA F. MILSTEAD
                                        *Attorneys for Defendants*
                                 MORGAN STANLEY & CO. LLC, et al.

ii

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................................iv

I.      PRELIMINARY STATEMENT.............................................................1

II.     THE COURT SHOULD DISMISS THE CLAIM AGAINST THE UNDERWRITERS.................................................................................3

        A.      The AC Fails To Allege A False Or Misleading Statement ..........3

                1.      Plaintiffs Cannot Allege An Omission At The Time The Registration Statement Became Effective ...........................5

                2.      Plaintiffs Cannot Allege The Omission Rendered Any Statement Misleading ..........................................................8

                3.      Plaintiffs Cannot Plausibly Allege The Risk Disclosures Were Misleading..................................................................11

        B.      The AC Fails To Allege A Violation Of Item 303 Or 105 ..........12

III.    CONCLUSION ......................................................................................14

## TABLE OF AUTHORITIES

### CASES

*Ashcroft v. Iqbal*,
     556 U.S. 662 (2009)...................................................................................... 3

*Belodoff v. Netlist, Inc.*,
     No. SA CV 07-00677 DOC (MLGx),
     2008 WL 2356699 (C.D. Cal. May 30, 2008)........................................... 9

*Belodoff v. Netlist, Inc.*,
     No. SACV 07–00677 DOC (MLGx),
     2009 WL 1293690 (C.D. Cal. Apr. 17, 2009)...............................9, 10, 13

*Brody v. Transitional Hospitals Corp.*,
     280 F.3d 997 (9th Cir. 2002) ................................................................8, 9

*In re Century Aluminum Co. Securities Litigation*,
     729 F.3d 1104 (9th Cir. 2013) ................................................................... 3

*Construction Laborers Pension Trust for Southern California v. CBS Corp.*,
     433 F. Supp. 3d 515 (S.D.N.Y. 2020) ...................................................... 8

*In re Cosi, Inc. Securities Litigation*,
     379 F. Supp. 2d 580 (S.D.N.Y. 2005) ...................................................... 6

*In re Dropbox Securities Litigation*,
     No. 19-cv-06348-BLF,
     2020 WL 6161502 (N.D. Cal. Oct. 21, 2020) ...........................6, 8, 9, 11

*In re Jumei International Holding Ltd. Securities Litigation*,
     No. 14cv9826,
     2017 WL 95176 (S.D.N.Y. Jan. 10, 2017) ............................................. 5

*Lefter v. Yirendai Ltd.*,
     No. CV 16–06437–MWF (AGRx),
     2017 WL 2857535 (C.D. Cal. June 20, 2017)....................................... 11

*Lipow v. Net1 UEPS Technologies, Inc.*,
     131 F. Supp. 3d 144 (S.D.N.Y. 2015) ...................................................... 8

*Nurlybayev v. ZTO Express (Cayman), Inc.*,
     No. 17 CV 6130-LTS-SN,
     2021 WL 1226865 (S.D.N.Y. Mar. 31, 2021).................................... 3, 11

*Omnicare, Inc. v. Laborers District Council Construction Industry Pension Fund*,
    575 U.S. 175 (2015) ............................................................................................ 9

*In re Par Pharmaceutical, Inc. Securities Litigation*,
    733 F. Supp. 668 (S.D.N.Y. 1990) ..................................................................... 8

*Peifa Xu v. Gridsum Holding Inc.*,
    No. 18 Civ. 3655 (ER),
    2021 WL 773002 (S.D.N.Y. Feb. 23, 2021) ........................................................ 6

*In re Pivotal Securities Litigation*,
    No. 3:19-cv-03589-CRB,
    2020 WL 4193384 (N.D. Cal. July 21, 2020) .................................... 11, 12, 14

*In re Restoration Robotics, Inc. Securities Litigation*,
    417 F. Supp. 3d 1242 (N.D. Cal. 2019) .............................................................. 3

*Rubke v. Capital Bancorp, Ltd.*,
    551 F.3d 1156 (9th Cir. 2009) .................................................................. 3, 5, 7

*In re Stac Electronics Securities Litigation*,
    89 F.3d 1399 (9th Cir. 1996) ................................................................. 7, 10, 11

*Steckman v. Hart Brewing, Inc.*,
    143 F.3d 1293 (9th Cir. 1998) ...................................................................... 12, 13

*In re Verifone Securities Litigation*,
    11 F.3d 865 (9th Cir. 1993) ................................................................................. 7

*In re Verifone Securities Litigation*,
    784 F. Supp. 1471 (N.D. Cal. 1992),
    *aff'd*, 11 F.3d 865 (9th Cir. 1993) ................................................................... 13

**STATUTES**

15 U.S.C. § 77k .......................................................................................... 1, 2, 3, 4

**REGULATIONS**

17 C.F.R. § 229.105 ........................................................................................... 13

17 C.F.R. § 229.303 ........................................................................................... 12

v

I.    **PRELIMINARY STATEMENT**

On January 6, 2022, this Court dismissed the Corrected Consolidated Complaint for Violations of the Securities Laws (ECF No. 84-1 ("CC")) in the above-captioned matter with leave to amend. (ECF No. 98 ("Order").) The First Amended Consolidated Complaint For Violations Of The Federal Securities Laws ("AC") fails to correct any of the defects identified by the Court. Moreover, the AC persists in the unsupported theory that GoodRx Holdings, Inc.'s ("GoodRx") registration statement omitted information about Amazon's entry into the market, despite a lack of any allegations that Amazon had any concrete plans to compete at the time the registration statement became effective. Therefore, the Court should now dismiss the AC with prejudice.

In the CC, Lead Plaintiffs Betty Kalmanson, Lawrence Kalmanson, and Shawn Kalmanson ("Plaintiffs") asserted one claim arising from Section 11 of the Securities Act of 1933, 15 U.S.C. § 77k, against each member of the syndicate of financial institutions (the "Underwriters") who served as underwriters for the September 23, 2020 initial public offering ("IPO") of Class A common stock of GoodRx. In its Order, the Court:

- dismissed the Section 11 claim, reasoning that Plaintiffs suffered no loss, as defined by Section 11(e) of the Securities Act, because the GoodRx stock price never dropped below the IPO price between the IPO and the filing of the suit (Order 4-5);

- concluded that the CC failed to allege GoodRx's registration statement issued in connection with the IPO contained a false or misleading statement; concluded that the challenged statements were either puffery, true based on GoodRx's market position at the time of the IPO, or not rendered misleading because GoodRx did not mention Amazon (Order 7-9); and

- concluded that with respect to Plaintiffs' claims that the registration statement omitted information required to be disclosed under Items 303 and 105 of Regulation S-K, Plaintiffs failed to allege "any specific facts about Amazon's plans that were known to GoodRx management at the time of the IPO" or that the risk of Amazon's competition was already occurring (Order 12-13).

1

The Court granted Plaintiffs leave to amend.

Plaintiffs' AC fails to cure any of the flaws the Court previously identified. The motion to dismiss ("GoodRx Motion") and Request for Judicial Notice and Incorporation by Reference ("GoodRx RJN") brought by GoodRx and the Individual Defendants[1] amply explain why the AC continues not to state a claim, and the Underwriters join in the GoodRx Motion and GoodRx RJN. The Underwriters also incorporate by reference herein each of the arguments in the GoodRx Motion as to why (i) Plaintiffs cannot demonstrate statutory damages, as required by Section 11(e), 15 U.S.C. § 77k(e), as a matter of law (GoodRx Motion 9-10); (ii) the Rule 9(b) pleading standard applies to the AC as a whole, including the Section 11 claims (GoodRx Motion 8); and (iii) Plaintiffs fail to allege the registration statement at issue contained any actionable, false or misleading misstatement or omission (GoodRx Motion 11-17).

The Underwriter Defendants also once again move separately to emphasize Plaintiffs' failure to allege any Section 11 claim because Plaintiffs fail to allege plausibly that GoodRx's registration statement contained any false or misleading statement at the time it became effective. Plaintiffs offer no new allegations that any statement in the registration statement was literally false. Instead, Plaintiffs continue to allege that the registration statement omitted information about Amazon's entry into the market. (AC ¶ 72.) However, the AC, like the CC, lacks any allegations that (i) Amazon had any concrete plans to compete at the time the registration statement became effective; (ii) the omission of information about Amazon's plans rendered any statement misleading, especially in light of GoodRx's extensive disclosures about the competitive risks it faced; or (iii) either Item 303 or 105 of Regulation S-K required disclosure of information about Amazon's plans. Accordingly, Plaintiffs have again failed to state a claim against the Underwriters, and the Court should dismiss the AC.

---

[1] The Individual Defendants include Douglas Hirsch, Trevor Bezdek, Karsten Voermann, Christopher Adams, Julie Bradley, Dipanjan Deb, Adam Karol, Jacqueline Kosecoff, Stephen LeSieur, Gregory Mondre and Agnes Rey-Giraud.

## II.   THE COURT SHOULD DISMISS THE CLAIM AGAINST THE UNDERWRITERS

To state a claim under Section 11, a plaintiff must allege that a "registration statement contained an omission or misrepresentation" and that the "omission or misrepresentation was material." *Rubke v. Capital Bancorp, Ltd.*, 551 F.3d 1156, 1161 (9th Cir. 2009). A registration statement is false or misleading if, at the time it "became effective," it "contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading." 15 U.S.C. § 77k(a).

The "complaint must allege 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104, 1107 (9th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). This means the plaintiff must plead "sufficient facts from which this Court can infer 'a statement was either false or misleading (in light of omitted information).'" *In re Restoration Robotics, Inc. Sec. Litig.*, 417 F. Supp. 3d 1242, 1257 (N.D. Cal. 2019) (citation omitted); *see also Nurlybayev v. ZTO Express (Cayman), Inc.*, 2021 WL 1226865, at *6, *7 (S.D.N.Y. Mar. 31, 2021) (requiring enough facts to support a "plausible inference" that the statements at issue were misleading).

### A.   The AC Fails To Allege A False Or Misleading Statement

Plaintiffs' AC continues to challenge all but two of the statements challenged in the CC. These include (i) GoodRx's "partnerships across the healthcare ecosystem, scale and strong customer brand create a deep competitive moat that is reinforced by our proprietary technology platform" (AC ¶ 65); (ii) "We are a market leader with a significant scale and brand advantage over our competitors. Our growth accelerates self-reinforcing network effects that further strengthen our competitive position." (*id.* ¶ 66, 67); (iii) the size of GoodRx's database, "combined with our proprietary platform, allows us to present highly competitive prices to consumers" (*id.* ¶ 68); (iv) GoodRx is the "only significant direct-to-consumer channel" for many of its Pharmacy Benefit Manager ("PBM") partners (*id.* ¶ 69);

and (v) GoodRx "prevent[s] PBMs from circumventing our platform" (*id.* ¶ 70). Plaintiffs challenge one new statement, that GoodRx's PBM contracts "restrict the ability of PBMs to compete with us and solicit our customers." (*Id.*)

Plaintiffs also challenge GoodRx's risk warning, which provided:

> We compete with companies that provide savings on prescriptions, as well as companies that offer telehealth services and advertising and market access for pharmaceutical manufacturers. Within the prescriptions market, our competition is fragmented and consists of competitors that are smaller than us in scale. ***There can be no assurance that competitors will not develop and market similar offerings to ours,*** or that industry participants, such as integrated PBMs and pharmacy providers, will not seek to leverage our platform to drive consumer demand and traffic to their networks and eventually away from, or outside of, our platform. ***We may face increased competition from those that attempt to replicate our business model or marketing tactics***, such as discount websites, apps, cash back and loyalty programs and new comparison shopping sites from various industry participants, ***any of which could impact our ability to attract and retain consumers***.

(AC ¶ 71 (emphasis altered).)

Notably, Plaintiffs no longer challenge two statements: (i) that GoodRx had 4.4 million monthly active consumers in the second quarter of 2020 and had been "the most downloaded medical app" for three years (CC ¶ 60); and (ii) that GoodRx believes its "financial results reflect the significant market demand for [its] offerings" (*id.* ¶ 64).

As in the CC, Plaintiffs do not allege that any of the statements above was literally false or that it "contained an untrue statement of a material fact." 15 U.S.C. § 77k(a). Plaintiffs do not allege, for example, that GoodRx did not in fact have a "deep competitive

moat" (AC ¶ 65); did not have "brand advantage over [its] competitors" (*id.* ¶¶ 66, 67); did not "present highly competitive prices to consumers" (*id.* ¶ 68); was not the "only significant direct-to-consumer channel" for many of its PBMs (*id.* ¶ 69); did not "prevent PBMs from circumventing [its] platform;" or "restrict the ability of PBMs to compete with us and solicit our customers." (*id.* ¶ 70).

Instead, Plaintiffs allege that the statements were misleading because they failed to disclose "adverse information that existed at the time of the IPO." (AC ¶ 72.) This newly alleged "adverse information" includes: (i) that "[a]t the time of the IPO Amazon was working with Express Scripts and Inside Rx to launch PrimeRx, in order to grow Inside Rx's cash pay business," and "in the few years" before the IPO, "Express Scripts/Inside Rx were collaborating with Amazon to facilitate Amazon's expansion in the prescription drug industry"; (ii) "[w]hile market analysts speculated about a collaboration between Amazon and Express Scripts/Inside Rx," GoodRx was aware of Amazon's intentions at the time of the IPO due to GoodRx's relationships with Express Scripts and Inside Rx, GoodRx's partnership with Amazon subsidiary PillPack, GoodRx's statement that it had a "long standing partnership with Inside Rx," and GoodRx's "regular[] communicat[ion]" with Amazon; and (iii) "[g]iven Amazon's size and access to millions of Amazon Prime members, Amazon's entry into the prescription drug discount market, with Inside Rx as its partner, was a material competitive threat to GoodRx's core business." (AC ¶ 72.) These claims fail.

### 1.    Plaintiffs Cannot Allege An Omission At The Time The Registration Statement Became Effective

"A claim under section 11 based on the omission of information must demonstrate that the omitted information existed at the time the registration statement became effective." *Rubke*, 551 F.3d at 1164 (citation omitted); *see also In re Jumei Int'l Holding Ltd. Sec. Litig.*, 2017 WL 95176, at *4 (S.D.N.Y. Jan. 10, 2017) (dismissing Section 11 claim because the complaint contained "no allegations that Defendants knew of [the company's] impending exit [four months later] from the beauty-supplies marketplace at the

time of the IPO, much less the probable effect of that exit on Jumei's share price").

GoodRx's registration statement became effective on September 22, 2020 (AC ¶ 50), but Amazon did not announce its launch of PrimeRx until November 17, 2020—nearly two months later. (*Id.* ¶ 63.) It did not announce its alleged price comparison tool until May 11, 2021—eight months after the registration statement became effective. (*Id.* ¶ 64.) Nevertheless, in the AC, Plaintiffs allege that GoodRx "failed to disclose that GoodRx's core business was facing material risk of competition from tech giant Amazon" and that Amazon was "***in the process*** of working with Express Scripts and Inside Rx to launch a prescription drug savings program." (*Id.* ¶ 55 (emphasis added).) The Court need not accept these conclusory assertions as true. *See In re Dropbox Sec. Litig.*, 2020 WL 6161502, at *5 (N.D. Cal. Oct. 21, 2020) (dismissing Section 11 claim based on "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences" (citation omitted)).

As this Court previously concluded, "there are no factual allegations about the status of Amazon's plans as of the IPO in September 2020, two months before the launch." (Order 8). Thus, no facts support that Amazon presently posed a concrete—and not merely theoretical—risk of competition at the time the registration statement became effective. None of Plaintiffs' new allegations cure this defect. The allegation that, at the time of the IPO, "Amazon was working with Express Scripts and Inside Rx to launch PrimeRx," or that, "in the few years" before the IPO, "Express Scripts/Inside Rx were collaborating with Amazon to facilitate Amazon's expansion in the prescription drug industry" (AC ¶ 72(a)), include no facts to describe what that work or collaboration was, let alone its status or that it had advanced to the point that it created a "material risk of competition." (*Id.* ¶ 55.) This alone defeats Plaintiffs' claim. *See In re Cosi, Inc. Sec. Litig.*, 379 F. Supp. 2d 580, 587 (S.D.N.Y. 2005) (dismissing Section 11 claim for failure to disclose franchising plans when plaintiffs did "not allege that a franchising plan had been submitted to or approved by the board, or that any affirmative steps had been taken to implement a franchising plan"); *Peifa Xu v. Gridsum Holding Inc.*, 2021 WL 773002, at *10 (S.D.N.Y. Feb. 23,

2021) (dismissing Section 11 claim regarding defendants' own anticipated product launch because "an inference that a statement or omission was materially misleading *at the time it was made . . . .* would logically require allegations regarding what facts existed, or were reasonably anticipated, about this product launch at the time of the IPO").

Moreover, as this Court previously concluded, "'a company is not required to forecast future events' in its public statements." (Order 7 (quoting *In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1406 (9th Cir. 1996))); *see also In re Verifone Sec. Litig.*, 11 F.3d 865, 869 (9th Cir. 1993) (affirming dismissal of claim that a defendant "omitted to state the 'fact' that future prospects may not be as bright as past performance"). Thus, GoodRx had no obligation to forecast its would-be competitor's product launch. As such, the allegations that GoodRx was "aware of Amazon's intentions" at the time of the IPO due to its relationships with Express Scripts and Inside Rx, and its alleged partnership with Amazon subsidiary PillPack (AC ¶ 72(b))—while not explaining how or why those "relationships" or "partnership" would make GoodRx privy to Amazon's plans regarding PrimeRx—are irrelevant. Purported knowledge of Amazon's "intentions" does not mean those "intentions" had progressed to a point to make PrimeRx a concrete threat at the time of the IPO. Likewise, the mere fact that "Amazon's size and access to millions of Amazon Prime members" would make Amazon a "material competitive threat" *if* it launched a competing business (*Id.* ¶ 72(c)), does not mean it was *actually* a competitive threat at the time of the IPO. The Court should reject Plaintiffs' attempt to impose an obligation on GoodRx to disclose Amazon's plans months before Amazon itself did. *See Stac*, 89 F.3d at 1407 (dismissing claim based on failure to disclose competitors' plans because "another company's plans cannot be known to a certainty").

Plaintiffs' new allegation that "market analysts speculated about a collaboration between Amazon and Express Scripts/Inside Rx" (AC ¶ 72(b)), if anything, defeats Plaintiffs' claim. "[I]t is pointless and costly to compel firms to reprint information already in the public domain." *Rubke*, 551 F.3d at 1163 (citation omitted). To the extent "market analysts" were already speculating about Amazon's entry into the market at the time of the

7

IPO, the public already knew about any risk of Amazon competing with GoodRx, to the extent it then existed. The AC does not identify a single fact about PrimeRx that GoodRx knew, but the market did not. (*See* AC ¶ 72(b).)

In any event, GoodRx had no obligation to reprint the rumors of market analysts in its registration statement. *See Constr. Laborers Pen. Trust for So. Cal. v. CBS Corp.*, 433 F. Supp. 3d 515, 537 (S.D.N.Y. 2020) (concluding that company had no duty to foretell ouster of CEO based on rumors of misconduct). Accordingly, "[d]efendants cannot be held liable for failing to disclose what would have been pure speculation" from market analysts. *See Lipow v. Net1 UEPS Techs., Inc.*, 131 F. Supp. 3d 144, 170-71 (S.D.N.Y. 2015) (alteration in original) (quoting *In re Par Pharm., Inc. Sec. Litig.*, 733 F. Supp. 668, 678 (S.D.N.Y. 1990)) (concluding that defendant had no duty to disclose risk of regulatory scrutiny and invalidation of a contract when "Plaintiff fail[ed] to plead that it was more than mere speculation" that this outcome would occur).

### 2.       Plaintiffs Cannot Allege The Omission Rendered Any Statement Misleading

As in the CC, Plaintiffs do not allege plausibly that any omission regarding Amazon's plans rendered any statement in the registration statement misleading. "For Plaintiffs to state an omission-based Section 11 claim, it is not enough that the Registration Statement omitted relevant or material facts." *Dropbox*, 2020 WL 6161502, at *6. "Instead an omission 'must affirmatively create an impression of a state of affairs that differs in a material way from the one that actually exists' to be actionable." *Id.* (quoting *Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002)).

Again, "Plaintiffs fail to explain why [GoodRx's] omission of [Amazon's plans] created an 'impression of a state of affairs that differs in a material way from the one that actually exists.'" *Dropbox*, 2020 WL 6161502, at *7 (quoting *Brody*, 280 F.3d at 1006). For one thing, the challenged statements are general statements about GoodRx's competitive positioning and relationships with PBMs, which do not make any

representation, express or implied, about any particular competitor. (*See* AC ¶¶ 65-70.)[2] None of the statements says anything about Amazon, and the alleged facts about Amazon's plans do not make the statements any less true. *See Brody*, 280 F.3d at 1006 (affirming dismissal when statements at issue "neither stated nor implied anything" regarding the omitted information); *Belodoff v. Netlist, Inc.*, 2008 WL 2356699, at *11 (C.D. Cal. May 30, 2008) (Carter, J.) ("*Belodoff I*") (dismissing Section 11 claim when "the challenged statements are disconnected from the alleged omissions"). As the statements create no impression about Amazon, they do not suggest that Amazon has *no* plans of entering into a competing business. *See Dropbox*, 2020 WL 6161502, at *7 (dismissing claim that company failed to disclose that its "user conversion rate" was decreasing when existing disclosures could not "plausibly infer" that user conversion rate "was, in fact, increasing").

Furthermore, courts have "repeatedly refused to find disclosure of accurate historical data misleading." *Dropbox*, 2020 WL 6161502, at *7; *see also Belodoff v. Netlist, Inc.*, 2009 WL 1293690, at *8-10 (C.D. Cal. Apr. 17, 2009) (Carter, J.) ("*Belodoff II*") (dismissing Section 11 claim based on "historical statement" that did "not make any predictions" about future performance). Here, the statement that GoodRx "[t]o date, [had] retained all of [its] PBM partners" (AC ¶ 69), is simply an accurate report of historical fact. It does not suggest anything about GoodRx's future partners, and the omission of Amazon's future plans does not make the statement any less true. Similarly, regarding the statements about (i) the size of GoodRx's PBM database (*id.* ¶ 68); (ii) that GoodRx is the "only significant direct-to-consumer channel" for many of its PBMs (*id.* ¶ 69); and (iii) that GoodRx "prevent[s] PBMs from circumventing our platform" (*id.* ¶ 70), this Court previously concluded that "Plaintiffs make no allegations that these statements about existing demand and contracts were false" (Order 7). The AC does not change this.

What is more, in assessing whether the plaintiff has alleged a misleading statement, courts take into account all the "surrounding text, including hedges, disclaimers, and

---

[2] Indeed, as set forth in the GoodRx Motion (GoodRx Motion 11-12, 16), many of the statements are inactionable puffery or opinion statements that Plaintiffs have failed to allege were false or misleading.

apparently conflicting information." *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 190 (2015). Here, given GoodRx's extensive disclosures concerning competitive risks, as detailed in the examples below and set forth in the GoodRx motion (GoodRx Motion 3-4), no reasonable investor would interpret GoodRx's statements as a guarantee against existing or future competition, from Amazon or any other competitor. *See Belodoff II*, 2009 WL 1293690, at *8-9 (concluding that warnings concerning "risky" business model, along with existing disclosures, prevented statements from being misleading); *see also Stac*, 89 F.3d at 1406 (affirming dismissal of Section 11 claim when the prospectus made "detailed disclosures concerning the risk of competition").

On the contrary, reasonable investors would not read each of GoodRx's challenged statements in isolation, but in the context of, and in conjunction with, GoodRx's robust risk disclosures. These included, among others, that (i) GoodRx could give "no assurance that competitors will not develop and market similar offerings" to GoodRx, and "increased competition" "could impact [GoodRx's] ability to attract and retain consumers" (AC ¶ 71); and (ii) that GoodRx operates in "a very competitive industry," and potential competitors could include "existing or new market entrants with greater resources and better offerings, reputations and market strategies," "such as discount websites, apps, cash back and loyalty programs and new comparison shopping sites," that could "form a strategic alliance with one of our competitors or other industry participants" and "have a negative impact on [GoodRx's] business." (GoodRx RJN, Ex. 1 (S-1/A) at 25; *see also id.* at 29 (similar).) And as the Court previously observed, "the Registration Statement explicitly warned that with a 'limited number of major PBMs' GoodRx 'may not expand beyond our existing PBM partners and the number of our PBM partners may even decline,' and that while 'we negotiate protective terms . . . with PBMs, our cont[r]acts with these parties are not exclusive and PBMs work with others in the industry to drive volume to their networks.'" (Order 7 (alterations in original).) Given these warnings, the Court should reject Plaintiffs' AC for the same reasons it dismissed the previous complaint: "[t]he challenged statements

did not guarantee the continuation of GoodRx's PBM contracts or numbers and warned they might decrease, so any omitted information about Amazon did not render them misleading." (*Id.* 8.)

### 3. Plaintiffs Cannot Plausibly Allege The Risk Disclosures Were Misleading

Plaintiffs again attempt to challenge GoodRx's statement that it "*may* face increased competition from those that attempt to replicate our business model or marketing tactics," which "*could* impact our ability to attract and retain consumers." (AC ¶ 71.) Plaintiffs allege this statement was misleading because it "failed to disclose the imminent and known direct competitor that was being developed by Amazon at the time of the IPO," and "did not even identify Amazon as a potential competitor." (*Id.*) The AC also challenges GoodRx's statement in its risk disclosure that its PBM contracts "restrict the ability of PBMs to compete with us and solicit our customers." (*Id.* ¶ 70.) These claims fail.

There is no "rule of completeness" for securities disclosures because "[n]o matter how detailed and accurate disclosure statements are, there are likely to be additional details that could have been disclosed but were not." *Dropbox*, 2020 WL 6161502, at *6; *cf. Lefter v. Yirendai Ltd.*, 2017 WL 2857535, at *7 (C.D. Cal. June 20, 2017) (dismissing Section 10(b) claim when risks disclosures "never created the impression that the Draft Measures did *not* put its business model at risk; they simply did not explain the risk in the manner or level of detail that Plaintiff would have preferred"). Accordingly, for a risk disclosure to be misleading, the plaintiff must identify undisclosed information *inconsistent with* that disclosure, such as "factual allegations indicating that the risks had already 'come to fruition.'" *In re Pivotal Sec. Litig.*, 2020 WL 4193384, at *6-7 (N.D. Cal. July 21, 2020) (citations omitted); *see also Stac*, 89 F.3d at 1406 (rejecting claim that risk disclosure was misleading when the plaintiff did not "allege[] any . . . contradictory statements"). To allege that a risk came to fruition, the plaintiff must allege that the company had already felt its adverse effects. *See Nurlybayev*, 2021 WL 1226865, at *7 (dismissing Section 11 claim when plaintiff alleged risk had materialized, but "profitability and cash flow improved").

11

Here, Plaintiffs still fail to allege that the risk from Amazon's competition had already "come to fruition." *Pivotal*, 2020 WL 4193384, at *6. As this Court concluded, "there are no factual allegations about the status of Amazon's plans as of the IPO in September 2020, two months before launch." (Order 8.) The AC admits that Amazon had not yet launched a competing product when the registration statement became effective. (AC ¶ 73.) As such, Plaintiffs cannot allege Amazon was already "impact[ing] [GoodRx's] ability to attract and retain customers" at that time. (*Id.* ¶ 71.)

Furthermore, GoodRx's risk disclosure does not plausibly create the impression that Amazon, or any other competitor, was ***not*** planning to enter the market. It expressly discloses the opposite, that "[t]here can be no assurance that competitors will not develop and market similar offerings to ours." (AC ¶ 71.) Thus, Amazon's alleged undisclosed plans are merely additional details ***consistent*** with the risk disclosure; they are not facts that cause the disclosure to create a misimpression if not disclosed. "[G]iven the warnings about potential competitors," this Court previously reasoned that "any missing information about Amazon's plans would make the statements simply incomplete." (Order 8.) The AC does not change this.

## B. The AC Fails To Allege A Violation Of Item 303 Or 105

As this Court previously concluded, Plaintiffs fail to allege plausibly that GoodRx had any duty to disclose Amazon's plans under Items 303 or 105 of Regulation S-K. (Order 12-13.) Under Item 303, issuers must "[d]escribe any known trends or uncertainties" that have had or that the registrant "reasonably expects will have a material favorable or unfavorable impact on net sales or revenues or income from continuing operations." (*Id.* 12 (alteration in original) (quoting 17 C.F.R. § 229.303(a)(2)(ii)).) A "plaintiff must allege facts showing defendants knew of an adverse trend, the material impact of that trend, and 'that the future material impacts are reasonably likely to occur from the present-day perspective.'" (*Id.* 12 (quoting *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1297 (9th Cir. 1998) (emphasis omitted)).)

As shown in GoodRx's Motion (GoodRx Motion 16-17, 19-24), Plaintiffs fail to

allege plausibly that, when the registration statement became effective, GoodRx management knew of Amazon's plans or reasonably expected those plans to have an unfavorable impact on net sales or revenues or income from continuing operations. "Item 303 requires adverse events and uncertainties to be disclosed only if they are both 'presently known to management' and 'reasonably likely to have material effects.'" (Order 12 (quoting *Steckman*, 143 F.3d at 1296).)

Furthermore, Regulation S-K "does not provide a basis of liability where a corporation fails to 'disclose' the future." (Order 12 (quoting *In re Verifone Sec. Litig.*, 784 F. Supp. 1471, 1483 (N.D. Cal. 1992), *aff'd*, 11 F.3d 865 (9th Cir. 1993)).) In the AC, Plaintiffs again improperly attempt to allege GoodRx's failure to disclose the future. In particular, the AC, like the CC, alleges that GoodRx should have disclosed "the risk of competition GoodRx was facing with Amazon's imminent entry in the online pharmacy industry and prescription drug discount market." (AC ¶ 82.) In other words, Amazon was not in that market when the registration statement became effective; it only allegedly *planned* to enter that market in the future. Plaintiffs' failure to allege facts indicating that GoodRx was aware of Amazon's *plans*, justifies dismissal for the same reasons the Court found in its prior Order. "Plaintiffs do not allege any specific facts about Amazon's plans that were known to GoodRx management at the time of the IPO. Without facts indicating concrete knowledge of Amazon's plans, any lack of disclosure here would be merely a failure to 'disclose the future.'" (Order 12 (quoting *Belodoff v. Netlist, Inc.*, 2009 WL 1293690, at *12 (C.D. Cal. Apr. 17, 2009)).)

Plaintiffs also fail to allege a violation of Item 105. Item 105 requires "a discussion of the material factors that make an investment in the registrant or offering speculative or risky." (Order 12 (citing 17 C.F.R. § 229.105(a)).) The Court should dismiss this claim for the same reasons it articulated in its previous order: "Plaintiffs have not sufficiently alleged facts demonstrating that Defendants knew of Amazon's specific plans and that the risk was already occurring." (*Id.* 13.) As shown in GoodRx's Motion, the registration statement amply discussed the risks GoodRx faced, including those from competitors. As such,

13

Plaintiffs "have not plausibly alleged that [GoodRx] violated Item 105" by omitting disclosure of risks from Amazon's plans. *See Pivotal*, 2020 WL 4193384, at \*8 (rejecting claim based on Item 105 when the "risk disclosures discuss exactly [the] possibilities" that plaintiffs alleged the company omitted).

## III.  CONCLUSION

For the reasons stated herein, and in GoodRx's Motion, which the Underwriters fully incorporate by reference here and, for the convenience of the Court, do not repeat, the Court should dismiss the Amended Complaint.

DATED: March 10, 2022

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

By: _____*/s/ Virginia F. Milstead*_____
VIRGINIA F. MILSTEAD
*Attorneys for Defendants*
MORGAN STANLEY & CO. LLC, et al.

14