LATHAM & WATKINS LLP
  Michele D. Johnson (Bar No. 198298)
   *michele.johnson@lw.com*
  Jordan D. Cook (Bar No. 293394)
   *Jordan.cook@lw.com*
650 Town Center Drive, 20th Floor
Costa Mesa, CA 92626-1925
Tel:  (714) 540-1235
Fax:  (714) 755-8290

LATHAM & WATKINS LLP
  Colleen C. Smith (Bar No. 231216)
   *colleen.smith@lw.com*
12670 High Bluff Drive
San Diego, CA 92130-3086
Tel:  (858) 523-5400
Fax:  (858) 523-5450

*Attorneys for Defendants GoodRx Holdings,
Inc., Douglas Hirsch, Trevor Bezdek,
Karsten Voermann, Christopher Adams,
Julie Bradley, Dipanjan Deb, Adam Karol,
Jacqueline Kosecoff, Stephen LeSieur,
Gregory Mondre and Agnes Rey-Giraud*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SOUTHERN DIVISION

| | |
|---|---|
| In re GOODRX HOLDINGS, INC. SECURITIES LITIGATION, | Master File No. 2:20-CV-11444-DOC (MARx) |
| This Document Relates To: | <u>CLASS ACTION</u> |
| ALL ACTIONS | **REPLY IN SUPPORT OF GOODRX DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT** |
| | Date:          June 6, 2022<br>Time:          8:30 a.m.<br>Courtroom: 9D<br>Judge:        Hon. David O. Carter |

# **TABLE OF CONTENTS**

|  |  | **Page** |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | ARGUMENT | 2 |
|  | A. Plaintiffs Misstate the Applicable Pleading Standards | 2 |
|  | B. The Absence of Section 11 Damages Is Plain From the Complaint and GoodRx's Undisputed Judicially Noticeable Stock Price | 3 |
|  | C. Plaintiffs Fail to Plead That the Challenged Statements in the Registration Statement Were False or Misleading | 7 |
|  |     1. GoodRx's Statements Regarding Competition Were Not False or Misleading | 7 |
|  |         a. No Allegations Support That GoodRx Had Advance Knowledge of Amazon's Plans | 8 |
|  |         b. Three of the Challenged Statements Are Puffery | 11 |
|  |         c. GoodRx's Risk Disclosures Are Not Misleading | 12 |
|  |         d. The Timing of the Challenged Statements Is Irrelevant | 13 |
|  |     2. GoodRx's Statements Regarding Pharmacy Benefit Managers Were Not Misleading | 13 |
|  |     3. Plaintiffs Have Not Pled a Violation of Item 303 or Item 105 | 15 |
|  | D. Plaintiffs Fail to Plead That Any of the Post-IPO Statements Were False or Misleading | 16 |
|  | E. Plaintiffs Fail to Plead Facts Supporting a Strong Inference of Scienter for the Exchange Act Claims | 18 |
|  |     1. GoodRx's Business Relationships Do Not Create a Compelling Inference of Fraud | 19 |
|  |     2. The Core Operations Inference Does Not Apply | 21 |
|  |     3. Neither the Timing of the IPO Nor Insider Stock Sales Supports Scienter | 22 |
| III. | CONCLUSION | 24 |

**TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*In re Alteryx, Inc. Sec. Litig.*,
2021 WL 4551201 (C.D. Cal. June 17, 2021)........................................ 18, 20, 23

*In re Am. Apparel, Inc. S'holder Litig.*,
855 F. Supp. 2d 1043 (C.D. Cal. 2012).................................................... 9

*In re Apple Inc. Sec. Litig.*,
2020 WL 2857397 (N.D. Cal. June 2, 2020) ........................................... 10

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ................................................................................... 9

*Azar v. Yelp, Inc.*,
2018 WL 6182756 (N.D. Cal. Nov. 27, 2018)......................................... 24

*Basic v. Levinson*,
485 U.S. 224 (1988) ................................................................................... 5

*Berg v. Velocity Fin., Inc.*,
2021 WL 268250 (C.D. Cal. Jan. 25, 2021)............................................. 16

*Bos. Ret. Sys. v. Uber Techs., Inc.*,
2020 WL 4569846 (N.D. Cal. Aug. 7, 2020)........................................... 9

*In re Broderbund/Learning Co. Sec. Litig.*,
294 F.3d 1201 (9th Cir. 2002) .................................................................. 4

*In re Burlington Coat Factory Sec. Litig.*,
114 F.3d 1410 (3d Cir. 1997) ................................................................... 18

*Cai v. Switch, Inc.*,
2020 WL 3893246 (D. Nev. July 10, 2020).......................................... 4, 5

*Cal. Grocers Ass'n v. City of Santa Ana*,
2021 WL 4439092 (C.D. Cal. June 30, 2021).................................... 15, 17

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*,
65 F. Supp. 3d 840 (N.D. Cal. 2014).................................................... 20

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*,
856 F.3d 605 (9th Cir. 2017).................................................... 20, 21, 22

*Coast Dental Servs., LLC v. Ozder Dental Corp.*,
2020 WL 3840438 (C.D. Cal. Apr. 3, 2020)........................................ 15

*In re Cornerstone Propane Partners, L.P.*,
355 F. Supp. 2d 1069 (N.D. Cal. 2005) ............................................... 11

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

REPLY ISO DEFENDANTS' MOTION TO
DISMISS AMENDED COMPLAINT
Case No. 2:20-CV-11444-DOC (MARx)

*In re Daou Sys., Inc.*,
   411 F.3d 1006 (9th Cir. 2005)......................................................................22

*Derr v. Ra Med. Sys., Inc.*,
   2021 WL 1117309 (S.D. Cal. Mar. 24, 2021).............................................10

*Doyun Kim v. Advanced Micro Devices, Inc.*,
   2019 WL 2232545 (N.D. Cal. May 23, 2019) .............................................12

*In re Facebook, Inc. Sec. Litig.*,
   477 F. Supp. 3d 980 (N.D. Cal. 2020).........................................................12

*Flynn v. Sientra, Inc.*,
   2016 WL 3360676 (C.D. Cal. June 9, 2016)................................................13

*Gammel v. Hewlett-Packard Co.*,
   2013 WL 1947525 (C.D. Cal. May 8, 2013).................................................13

*In re Gupta Corp. Sec. Litig.*,
   900 F. Supp. 1217 (N.D. Cal. 1994).............................................................11

*Indiana Public Retirement System v. SAIC, Inc.*,
   818 F.3d 85 (2d Cir. 2016) ...........................................................................11

*In re Initial Public Offering Sec. Litig.*,
   241 F. Supp. 2d 281 (S.D.N.Y. 2003)............................................................5

*In re Int'l Rectifier Corp. Sec. Litig.*,
   2008 WL 4555794 (C.D. Cal. May 23, 2008)..............................................24

*Knollenberg v. Harmonic, Inc.*,
   152 F. App'x 674 (9th Cir. 2005).................................................................3

*In re Lendingclub Sec. Litig.*,
   282 F. Supp. 3d 1171 (N.D. Cal. 2017) .........................................................4

*McMahan & Co. v. Wherehouse Entertainment, Inc.*,
   65 F.3d 1044 (2d Cir. 1995) .......................................................................5, 6

*In re Merck & Co., Inc. Sec. Litig.*,
   432 F.3d 261 (3d Cir. 2005).........................................................................18

*Metzler Inv. GMBH v. Corinthian Colls., Inc.*,
   540 F.3d 1049 (9th Cir. 2008)......................................................................23

*Miller v. Thane Int'l, Inc.*,
   519 F.3d 879 (9th Cir. 2008)........................................................................14

*NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*,
   693 F.3d 145 (2d Cir. 2012) .......................................................................5, 6

*Nursing Home Pension Fund, Local 144 v. Oracle Corp.*,
   380 F.3d 1226 (9th Cir. 2004)......................................................................23

LATHAM&WATKINSLLP
ATTORNEYS AT LAW

iii

REPLY ISO DEFENDANTS' MOTION TO
DISMISS AMENDED COMPLAINT
Case No. 2:20-CV-11444-DOC (MARx)

*Osher v. JNI Corp.*,
  256 F. Supp. 2d 1144 (S.D. Cal. 2003) ...............................................................24

*Pirani v. Slack Techs., Inc.*,
  445 F. Supp. 3d 367 (N.D. Cal. 2020) ................................................................12

*In re Pivotal Sec. Litig.*,
  2020 WL 4193384 (N.D. Cal. July 21, 2020) .....................................................16

*In re Progenity, Inc.*,
  2021 WL 3929708 (S.D. Cal. Sept. 1, 2021) ......................................................16

*In re Quality Systems, Inc. Sec. Litig.*,
  865 F.3d 1130 (9th Cir. 2017) .............................................................................11

*In re Refco, Inc. Sec. Litig.*,
  503 F. Supp. 2d 611 (S.D.N.Y. 2007) ..................................................................3

*In re Remec Inc. Sec. Litig.*,
  415 F. Supp. 2d 1106 (S.D. Cal. 2006) ...............................................................19

*In re Resonant Inc. Sec. Litig.*,
  2016 WL 1737959 (C.D. Cal. Feb. 8, 2016) .....................................................3, 9

*Ronconi v. Larkin*,
  253 F.3d 423 (9th Cir. 2001) ...............................................................................23

*S. Ferry LP, No. 2 v. Killinger*,
  542 F.3d 776 (9th Cir. 2008) ..................................................................19, 21, 22

*SEB Investment Management AB v. Align Technology, Inc.*,
  485 F. Supp. 3d 1113 (N.D. Cal. 2020) ..............................................................21

*SEC v. Todd*,
  642 F.3d 1207 (9th Cir. 2011) .............................................................................16

*In re Silicon Graphics Inc. Sec. Litig.*,
  183 F.3d 970 (9th Cir. 1999) ...............................................................................23

*In re Snap Inc. Sec. Litig.*,
  2018 WL 2972528 (C.D. Cal. June 7, 2018) ......................................................12

*In re Snap Inc. Sec. Litig.*,
  2018 WL 3816764 (C.D. Cal. Aug. 8, 2018) ........................................................6

*In re Splash Tech. Holdings, Inc. Sec. Litig.*,
  160 F. Supp. 2d 1059 (N.D. Cal. 2001) ..........................................................11, 24

*In re Stac Electronics Sec. Litig.*,
  89 F.3d 1399 (9th Cir. 1996) ...........................................................................10, 18

*Steckman v. Hart Brewing, Inc.*,
  143 F.3d 1293 (9th Cir. 1998) .............................................................................15

*In re Stratosphere Corp. Sec. Litig.*,
  1 F. Supp. 2d 1096 (D. Nev. 1998) ...................................................................... 13

*In re Vantive Corp. Sec. Litig.*,
  283 F.3d 1079 (9th Cir. 2002) .......................................................................... 21

*In re Wash. Mut., Inc. Sec., Derivative & ERISA Litig.*,
  2010 WL 4272567 (W.D. Wash. Oct. 12, 2010) ................................................ 5

*Washtenaw Cnty. Emps. Ret. Sys. v. Celera Corp.*,
  2012 WL 3835078 (N.D. Cal. Sept. 4, 2012) ..................................................... 9

*Wenger v. Lumisys, Inc.*,
  2 F. Supp. 2d 1231 (N.D. Cal. 1998) ............................................................... 11

*Wong v. Arlo Techs., Inc.*,
  2019 WL 7834762 (N.D. Cal. Dec. 19, 2019) ............................................... 9, 18

*In re Worlds of Wonder Sec. Litig.*,
  35 F.3d 1407 (9th Cir. 1994) .............................................................................. 4

*Zucco Partners, LLC v. Digimarc Corp.*,
  552 F.3d 981 (9th Cir. 2009) ...................................................................... 20, 23

**RULES**

Ninth Cir. R. 36-3 ................................................................................................ 3

Fed. R. Civ. P. 8............................................................................................ 2, 3, 9

Fed. R. Civ. P. 9............................................................................................... 3, 9

## I.    INTRODUCTION

Like the Amended Complaint, Plaintiffs' opposition brief has changed little since the last round of pleadings and motion to dismiss, and suffers from the same fatal flaw:  Plaintiffs have pled no specific facts about "how Defendants knew about Amazon's not-yet-public plans, what exactly they knew, or when they knew it." Dkt. 98 ("Order") at 11.  Instead of addressing this defect, Plaintiffs proffer extraneous details about GoodRx's dealings with third parties like Inside Rx and try to recast innocent facts, such as the timing of the GoodRx IPO, as ill-willed.  Plaintiffs only selectively respond to the arguments in GoodRx's motion (thereby conceding certain pleading defects), and the arguments they do make lack merit.

*First*, there are no Section 11 damages.  Section 11 damages are capped by the difference between the IPO price and the price on the date the first complaint was filed, and GoodRx's closing stock price never dropped below the IPO price during that period.  Plaintiffs have now floated three different theories in an attempt to get around this fatal fact.  The Court has already rejected two of them.  Plaintiffs' new theory is that the "value" of GoodRx's stock on the date the complaint was filed was significantly less than its market price.  But Ninth Circuit precedent addressing this exact issue instructs that market price is the best measure of value.  In any event, there are no factual allegations in the Amended Complaint to suggest that the stock's "true value" was less than its price—let alone 26% less, given how much the stock price had risen above the IPO price by the time the complaint was filed.  The Section 11 claims should be dismissed.

*Second*, Plaintiffs fail to plead specific facts supporting the falsity of the challenged statements under Section 10(b) or Section 11.  There are no alleged facts showing that at the time of GoodRx's IPO, Amazon had plans to move into the prescription drug discount market, much less that GoodRx had foreknowledge of Amazon's secret plans.  Plaintiffs do not meaningfully distinguish any of GoodRx's case law, which demonstrates that the challenged competition

statements are puffery and that GoodRx had no duty to anticipate (or disclose) what another company might do. GoodRx also disclosed the risks of its Pharmacy Benefit Managers ("PBM") network and the competitiveness of the industry, and Plaintiffs allege nothing that makes those statements misleading. All of Plaintiffs' claims, including their Item 303 and 105 arguments and their challenges to post-IPO statements, are undermined by the absence of allegations about how or why GoodRx should have been privy to Amazon's impending announcements (both its initial announcement, and the one that occurred six months after the IPO).

*Third,* Plaintiffs' Section 10(b) claims fail for the additional reason that the alleged facts do not support a strong inference of scienter. Plaintiffs engage in rampant speculation about how GoodRx might have obtained knowledge of Amazon's plans to launch a new service, suggesting that maybe one of the other industry players with whom GoodRx works could have fed them the information, or Amazon itself may have shared it. These implausible scenarios are sheer speculation and insufficient to establish GoodRx's knowledge of another company's plans. They certainly do not amount to the detailed and specific allegations required to satisfy the core operations doctrine, as Plaintiffs suggest. Plaintiffs also argue that the timing of GoodRx's IPO and insider sales in the IPO were suspicious, but there no factual allegations establishing that anyone rushed the IPO to get ahead of Amazon's announcement or that the insider sales were unusual. The much more compelling and logical inference to draw is that GoodRx did not know of Amazon's plan to announce PrimeRx.

Because Plaintiffs' Amended Complaint does not cure the defects this Court previously found supported dismissal, it should now be dismissed with prejudice.

## II.    ARGUMENT

### A.    Plaintiffs Misstate the Applicable Pleading Standards

Plaintiffs continue to argue that their Section 11 claims are subject to the Rule 8(a) pleading standard because their claims "do not necessarily 'sound in

fraud.'" Dkt. 110 ("Opp.") at 6. They are wrong. Plaintiffs' Section 10(b) and Section 11 claims are premised on the same alleged misstatements or omissions and the same purportedly "unified course of fraudulent conduct," meaning that the entire complaint must meet the exacting pleading standards of Rule 9(b). *See In re Resonant Inc. Sec. Litig.*, 2016 WL 1737959, at *5 (C.D. Cal. Feb. 8, 2016) (cited Dkt. 105 ("Mot.") at 8). Plaintiffs do not address *Resonant* at all. And while Plaintiffs point to *In re Refco, Inc. Securities Litigation*, 503 F. Supp. 2d 611, 632 (S.D.N.Y. 2007) (cited Opp. at 6), that out-of-Circuit case further supports application of the Rule 9(b) pleading standard because, unlike in *Refco*, here there is no division in the "substance of the allegations." *Id*. Indeed, Plaintiffs cite scienter allegations in support of their Securities Act claim. *See, e.g.*, Opp. at 11-12 (citing AC (Dkt. 100) ¶¶ 123-125). Plaintiffs' only Ninth Circuit citation, *Knollenberg v. Harmonic, Inc.*, 152 F. App'x 674, 683-84 (9th Cir. 2005), is likewise unavailing because it lacks any analysis and is not precedential. *See* Ninth Cir. R. 36-3(c) ("Unpublished dispositions and orders of this Court issued before January 1, 2007 may not be cited to the courts of this circuit . . . ."). In any event, and as discussed below and in the Defendants' opening briefs, Plaintiffs' claims fail and should be dismissed once and for all under either the Rule 9 or the Rule 8(a) pleading standard.

**B.    The Absence of Section 11 Damages Is Plain From the Complaint and GoodRx's Undisputed Judicially Noticeable Stock Price**

On September 23, 2020, GoodRx sold shares in its IPO for $33. AC ¶ 11. On November 17, 2020, the day Amazon announced Amazon Pharmacy, GoodRx shares closed at $36.21 per share. Ex. 6 (Dkt. 107-6). And by the time Plaintiffs filed this lawsuit on December 18, 2020, GoodRx's stock price was up to $44.61 per share. *Id. At no point between the IPO and the filing of this lawsuit did GoodRx's shares close below the IPO price.* Plaintiffs nonetheless persist in asking the Court to disregard the fact that any investor who bought shares in or

traceable to GoodRx's IPO could not possibly have suffered any losses caused by the challenged IPO statements, arguing that dismissal is not appropriate because GoodRx's stock price at the time the initial complaint was filed did not reflect its "true 'value,'" which supposedly "was not fully revealed until at least May 11, 2021." Opp. at 7-9. This argument fails as a matter of law.

Plaintiffs have contorted their damages argument in an attempt to avoid dismissal. Originally, Plaintiffs asserted that dismissal was unavailable because damages are not an element of a Section 11 claim. Dkt. 91 at 8-9. The Court rejected this argument because it is well-settled that the absence of damages is an affirmative defense that warrants dismissal at the pleading stage. Order at 4-5. Plaintiffs also argued that GoodRx's stock price at the *time of the IPO* did not reflect its true value. Dkt. 91 at 8-9. The Court rejected this argument, too, because the plain language of Section 11 "is clear that the starting point for damages is the price that Plaintiffs actually paid for the stocks, capped at the IPO price, meaning $33/share." Order at 5.

Having lost both of these prior arguments, Plaintiffs now contend that GoodRx's stock price on the date the Complaint was filed did not reflect its true value. Opp. at 7-9. But the Ninth Circuit has also foreclosed this argument, instructing that "damages must be 'measured by the difference between the amount paid for the security and *its price* at . . . the date the Section 11 claim was filed.'" *In re Broderbund/Learning Co. Sec. Litig.*, 294 F.3d 1201, 1204 (9th Cir. 2002) (emphasis added) (quoting *In re Worlds of Wonder Sec. Litig.*, 35 F.3d 1407, 1421 (9th Cir. 1994)). As this Court already recognized, the overwhelming majority of district courts in the Ninth Circuit have (correctly) adhered to this precedent and held that where market price is available, that is the "primary gauge" of value for Section 11 damages. *Cai v. Switch, Inc.*, 2020 WL 3893246, at *2-3 (D. Nev. July 10, 2020); *see also In re Lendingclub Sec. Litig.*, 282 F. Supp. 3d 1171, 1186-87 (N.D. Cal. 2017) ("Unquestionably, the typical value used to measure Section 11

damages is the stock's price on the day a plaintiff files suit, and in an open market value is ordinarily synonymous with price."); *In re Wash. Mut., Inc. Sec., Derivative & ERISA Litig.*, 2010 WL 4272567, at *12 (W.D. Wash. Oct. 12, 2010) (stating that it is "binding Ninth Circuit authority" that the "value" of a security for purposes of the second variable of the Section 11 damages formula is its price on the date the Section 11 claim was filed).  And here, Plaintiffs concede that GoodRx's stock traded in an efficient market (AC ¶ 134), such that the market price reflects all publicly available information relevant to its value.  *See Basic v. Levinson*, 485 U.S. 224, 241-42 (1988).  Plaintiffs claim that Defendants' reliance on *Cai v. Switch* is "misplaced" (Opp. at 10 n.6) because that case acknowledged that there are "limited situations where market price is not appropriate," but Plaintiffs fail to mention that *Cai* held that "those circumstances are 'unusual and rare'" and "difficult to square with the statute's language on timing."  2020 WL 3893246, at *3.  This is certainly not one of those "unusual and rare" situations.

In response to the nearly uniform approach taken by Ninth Circuit courts, Plaintiffs cite a handful of out-of-circuit cases and a single in-circuit case that this Court already distinguished in its prior Order.  Opp. at 8-10; Order at 5.  None supports Plaintiffs' "value" argument.  *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145, 149-50, 165 (2d Cir. 2012), acknowledged that market price is the "starting point" and only considered the securities' value because they were thinly traded mortgage-backed certificates, not exchange-traded common stock like the GoodRx shares.  *In re Initial Public Offering Securities Litigation*, 241 F. Supp. 2d 281, 351 n.80 (S.D.N.Y. 2003), is a pre-*Iqbal*/*Twombly* decision that simply declined to consider whether the "value" of certain securities differed from their price.  And in *McMahan & Co. v. Wherehouse Entertainment, Inc.*, 65 F.3d 1044, 1048-49 (2d Cir. 1995), the court found damages because "there was a substantial decline in the market *price* of the Debentures between the date plaintiffs purchased the Debentures and the date of the merger" and

divergence between price and value is "unusual and rare" (emphasis added).  Even in the Second Circuit, where most of the cases Plaintiffs cited originate, "when market value is available and reliable, 'market value will always be the primary gauge of a [security's] worth.'"  *Id*.; *NECA-IBEW Health & Welfare Fund*, 693 F.3d at 165.  The only in-circuit case Plaintiffs cite, *In re Snap Inc. Securities Litigation*, 2018 WL 3816764, at *2 (C.D. Cal. Aug. 8, 2018), focused on Plaintiffs' abandoned "value at the time of the IPO" theory, not the value at the time the Complaint was filed.  And as the Court noted previously, *Snap* "cited only two district court cases, neither of which support using IPO 'value' instead of IPO price."  Order at 5.

Even if it were appropriate for the Court to consider the "value" of GoodRx's stock as distinct from its price at the time the Complaint was filed, there are no allegations whatsoever supporting Plaintiffs' claim that the stock's price was 26% higher than the value at which it actually traded on a developed national exchange.  The Complaint was filed after Amazon announced its supposedly competing product, so it cannot be the case that investors were in the dark about Amazon's plans (as GoodRx was until Amazon announced them).  After Amazon announced enhancements to its program on May 11, 2021, GoodRx's stock dropped by only $1.97 over two days.  AC ¶ 64.  Even assuming that drop was entirely caused by Amazon's announcement—an assumption for which the Amended Complaint offers no support—subtracting $1.97 from GoodRx's $44.61 stock price on the date the original complaint was filed leaves a "true" price of $42.64, which is *still nearly $10 higher than the IPO price*.  So even under Plaintiffs' discredited theory, the "true" value of GoodRx's stock on the date the Complaint was filed exceeded the IPO price.  There are no Section 11 damages.  That claim should once again be dismissed on this basis alone.

## C.    Plaintiffs Fail to Plead That the Challenged Statements in the Registration Statement Were False or Misleading

In the opposition brief, Plaintiffs continue to argue that the challenged statements were false because GoodRx knew, but failed to disclose, that it would soon face competition from Amazon.  Opp. at 10-19.  Plaintiffs' Amended Complaint *still* lacks any alleged facts to support this conclusion.  Plaintiffs do not explain how GoodRx allegedly obtained proprietary information about Amazon's plans, and they do not cite a single case that required GoodRx to make disclosures speculating about plans its competitors (or would-be competitors) theoretically might have.  Because Plaintiffs do not address the deficiencies identified in the Court's prior dismissal order, their claims should once again be dismissed.

### 1.    GoodRx's Statements Regarding Competition Were Not False or Misleading

Plaintiffs raise nearly identical (and in some places verbatim) objections to GoodRx's motion to dismiss the statements about its competitive position (AC ¶¶ 65-67), and its risk warning regarding existing and potential future competition (*id.* ¶ 71), as in their previous opposition brief.[1]  *Compare* Opp. at 7-17, *with* Dkt. 91 at 9-15.  Plaintiffs concede that the challenged statements were "technically correct," but argue that that they were misleading because:  (1) GoodRx worked with companies that had ties to Amazon, which somehow should have made GoodRx privy to Amazon's impending launch of an allegedly competing service (Opp. at 11-12); (2) they were not puffery (*id.* at 13-14); (3) GoodRx's risk disclosures were insufficient (*id.* at 14-15); and (4) the timing of GoodRx's IPO is "further indication that [the] statements were false when made" (*id.* at 15).  None of these arguments has merit.

---

[1] Plaintiffs incorrectly group one of the PBM-related statements in with the competition statements.  *See* Opp. at 11 (citing AC ¶ 68 as a competition statement).  The Court properly characterized it as a PBM statement in its previous motion to dismiss order (Order at 7), and it fails for the reasons discussed below.

### a.    No Allegations Support That GoodRx Had Advance Knowledge of Amazon's Plans

*First*, Plaintiffs argue that that they sufficiently alleged falsity because "Defendants knew of Amazon's intentions as they were preparing for GoodRx to go public." Opp. at 11. To support that assertion, Plaintiffs embellish the Amended Complaint, claiming that it says GoodRx "had access to information about Amazon before investors did" and was "notified by Express Scripts of Amazon's and Inside Rx's intentions well before Amazon publicly announced them." Opp. at 11-12 (citing AC ¶¶ 57-58, 123-125). The Amended Complaint includes no such allegations, much less any support for them. The Amended Complaint instead alleges that GoodRx had a partnership with Inside Rx and PillPack, and that Defendant and co-CEO Hirsch said that GoodRx "communicate[d] with [Amazon] regularly." AC ¶¶ 57-58, 125. That GoodRx and Amazon communicated "regularly" has no bearing on what those communications consisted of, and certainly does not support the conclusion that Amazon would share proprietary information about its business plans with GoodRx (a future competitor) before those plans were publicly announced. The other "support" Plaintiffs cite comes from the *scienter* section of the Amended Complaint, which alleges that Plaintiffs can "*presume* that defendants were appraised [sic] of . . . material information . . . concerning Amazon's imminent launch of a competing product" because "GoodRx's contracts with its PBMs contained protective provisions that restricted the ability of its PBMs to compete with" GoodRx. AC ¶ 123 (emphasis added). Nowhere do Plaintiffs allege that GoodRx was *actually* notified of Amazon's plans by any of its PBMs (including Express Scripts), merely that they "presume" that may have occurred. Nor does the Amended Complaint include any allegations supporting the suggestion that PBMs would be required to report their involvement with any other company simply because GoodRx had "protective provisions" in its contracts. Plaintiffs' conclusory statements about

what GoodRx might have learned, devoid of factual support, are insufficient.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009) (even the Rule 8 pleading standard "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions"); *Resonant*, 2016 WL 1737959, at *6-7 (plaintiffs who made only "conclusory statements" supporting falsity failed to state a Section 10(b) or Section 11 claim under Rule 9(b) pleading standard).

Plaintiffs' allegations once again fail to rise above the level of mere speculation (or "presum[ption]," AC ¶ 123) as to how or why Amazon would tell GoodRx of its plans to launch a competing service prior to the GoodRx IPO, and before it shared that information with the public.  *See Wong v. Arlo Techs., Inc.*, 2019 WL 7834762, at *6-7 (N.D. Cal. Dec. 19, 2019) (cited Mot. at 13) (dismissing Section 11 and Section 10(b) claims regarding company's prediction that it would release new products in the next quarter where plaintiff offered "no facts" showing "that *at the time* of the Registration Statement the Defendants knew that Arlo was having problems" with the products).  In response to this central flaw in their pleading, Plaintiffs simply cite the same inapposite cases as in their last round of opposition briefing, Dkt. 91 at 10, without acknowledging or responding to GoodRx's previous distinction of them, Dkt. 92 at 8-9, or the Court's dismissal on this point, Order at 8-9.  As before, each of the cases Plaintiffs cite involved specific factual allegations that established a contemporaneous fact existed and that the defendants knew about the fact at the time of the registration statement.  *See* Opp. at 12-13; *Bos. Ret. Sys. v. Uber Techs., Inc.*, 2020 WL 4569846, at *8 (N.D. Cal. Aug. 7, 2020) (ongoing legislative process around a bill directly impacting Uber, and a California Supreme Court decision underlying it, were known to Uber before IPO); *In re Am. Apparel, Inc. S'holder Litig.*, 855 F. Supp. 2d 1043, 1048, 1069 (C.D. Cal. 2012) (U.S. Immigration & Customs Enforcement investigative memorandum showed company was aware that its hiring practices were not in compliance with immigration laws); *Washtenaw Cnty. Emps. Ret. Sys. v. Celera*

*Corp.*, 2012 WL 3835078, at *3 (N.D. Cal. Sept. 4, 2012) (confidential witnesses statements detailed company's problems obtaining payments from patients); *In re Apple Inc. Sec. Litig.*, 2020 WL 2857397, at *3, *16 (N.D. Cal. June 2, 2020) (confidential witness statements described slowing sales in China); *Derr v. Ra Med. Sys., Inc.*, 2021 WL 1117309, at *2, *6 (S.D. Cal. Mar. 24, 2021) (internal audit report established knowledge of laser system manufacturing issue).  Here, in contrast to these cited cases, Plaintiffs have not pled facts supporting even the existence of Amazon's plans at the time of GoodRx's IPO, nor do they provide specific facts supporting the conclusion that GoodRx knew about those plans if they did exist.

Plaintiffs' efforts to distinguish *In re Stac Electronics Securities Litigation*, 89 F.3d 1399, 1406-07 (9th Cir. 1996) (cited Mot. at 12), also fall flat.  Plaintiffs argue that *Stac* represents a different situation because in that case the company's risk disclosures identified Microsoft as a potential competitor by name, whereas GoodRx's risk disclosures did not identify Amazon by name.  *See* Opp. at 13.  But in rejecting the plaintiffs' claim that Stac should have disclosed more than a hypothetical risk warning about Microsoft, the court relied on the maxim that "another company's plans cannot be known to a certainty."  89 F.3d. at 1407.  Applying that basic (and logical) premise, the court held that, "[e]ven assuming . . . that Microsoft had informed Stac that it planned to introduce [its competing offering], Stac could not have known whether or not Microsoft would truly do so."  *Id.*  The Court's reasoning applies even more starkly here:  not one allegation establishes that GoodRx knew Amazon planned to launch a drug-discount program, much less any details of what that program entailed, whether it would directly compete with GoodRx, or when the launch would occur.  GoodRx could not have been expected to say *anything* about Amazon because its allegedly competing service had not even been announced.

### b.    Three of the Challenged Statements Are Puffery

*Second*, Plaintiffs attempt to rebuff GoodRx's argument that three of the challenged statements are puffery.  Mot. at 11-12 (citing AC ¶¶ 65-67).  But courts routinely find that statements similar to GoodRx's regarding its "deep competitive moat" (AC ¶ 65), being a "market leader" (*id.* ¶¶ 66-67), and "growth [that] accelerates self-reinforcing network effects" (*id.*) are non-actionable puffery.  *See, e.g., Wenger v. Lumisys, Inc.*, 2 F. Supp. 2d 1231, 1245 (N.D. Cal. 1998) ("We're the leader in a rapidly growing market."); *In re Gupta Corp. Sec. Litig.*, 900 F. Supp. 1217, 1236 (N.D. Cal. 1994) ("[W]e already have a sizable lead over our competition, and we hope to maintain that."); *see also In re Cornerstone Propane Partners, L.P.*, 355 F. Supp. 2d 1069, 1087 (N.D. Cal. 2005) ("industry leading" growth that "positions us beautifully"); *In re Splash Tech. Holdings, Inc. Sec. Litig.*, 160 F. Supp. 2d 1059, 1077 (N.D. Cal. 2001) (statement that company was "well positioned").  Plaintiffs' opposition does not attempt to distinguish any of the cases that GoodRx cited in its opening brief on this point.  Mot. at 12.

Nor do either of the cases Plaintiffs cite support a finding that the challenged statements are actionable due to the "context in which they were made."  Opp. at 13-14.  Plaintiffs cite *In re Quality Systems, Inc. Securities Litigation*, 865 F.3d 1130, 1144 (9th Cir. 2017), for the general proposition that statements are not puffery if they create an impression of a state of affairs that differs in a material way from one that actually exists.  Opp. at 14.  But that case involved statements that the "number and type of prospective sales [were] unchanged, or even growing," against specific contradictory alleged facts.  *Quality Sys., Inc.,* 865 F.3d at 1143-44.  In Plaintiffs' other cited case—*Indiana Public Retirement System v. SAIC, Inc.*, 818 F.3d 85 (2d Cir. 2016)—the court found that statements about a company having a "reputation for upholding the highest standards" were puffery because they were not "specific."  *Id.* at 97-98.  Plaintiffs here likewise have not

alleged sufficient facts to show that GoodRx touted specific aspects of its operations that it knew to be performing poorly at the time of the IPO.

### c. GoodRx's Risk Disclosures Are Not Misleading

*Third*, Plaintiffs' challenge to one of GoodRx's risk disclosures (AC ¶ 71) should be rejected because GoodRx specifically warned investors of existing competition and the risk that future competition may emerge (Ex. 1 (Dkt. 107-1) at 43-44), and Plaintiffs offer no specific facts establishing that undisclosed risks had already come to fruition. *See In re Facebook, Inc. Sec. Litig.*, 477 F. Supp. 3d 980, 1017-18 (N.D. Cal. 2020) (holding that plaintiffs must plead facts establishing that "when the risk factor was made, the risk warned of was 'already affecting' the defendant"). Plaintiffs' theory that GoodRx knew about Amazon's impending announcement is not plausible, as Plaintiffs do not even plead that Amazon itself had solidified the nature or timing of its new business venture at the time of GoodRx's IPO, much less facts that would lead to the conclusion that anyone at GoodRx knew of Amazon's plans. *See id.* (cited Mot. at 14) (risk warning statements regarding competitive position not misleading because no alleged facts established that this harm had already occurred); *Doyun Kim v. Advanced Micro Devices, Inc.*, 2019 WL 2232545, at *7 (N.D. Cal. May 23, 2019) (cited Mot. at 14) (dismissing challenge to risk warnings regarding the possibility of cyberattacks and data breaches absent factual allegations establishing that such attacks had happened). That lack of specific allegations about Amazon's entry into the market dooms Plaintiffs' efforts to distinguish *Facebook* and *Doyun Kim*. Opp. at 15.

Correspondingly, Plaintiffs cannot lean on cases that *did* involve specific allegations about events that had already transpired. *See Pirani v. Slack Techs., Inc.*, 445 F. Supp. 3d 367, 386-87 (N.D. Cal. 2020) (risk warnings misleading when allegations established a service outage and payment of service credits that had already happened); *In re Snap Inc. Sec. Litig.*, 2018 WL 2972528, at *6-8 (C.D. Cal. June 7, 2018) (risk of competition with Instagram Stories was not

properly disclosed where plaintiffs alleged that "Snap's DAU growth had been significantly diminished by" it); *Flynn v. Sientra, Inc.*, 2016 WL 3360676, at *11 (C.D. Cal. June 9, 2016) (holding risk warnings were inadequate given detailed allegations that "serious regulatory issues had already transpired").  Such allegations are entirely absent from the Amended Complaint.

### d.   The Timing of the Challenged Statements Is Irrelevant

*Fourth*, Plaintiffs argue that the short time between the IPO and Amazon's entry into the market supports falsity.  Opp. at 15.  But Plaintiffs' cited authorities confirm that a short time period between a false statement and corrective disclosure is supportive of falsity only if specific factual allegations establish that the information that was later revealed was actually known to the company at the time.  *See* Opp. at 15; *Gammel v. Hewlett-Packard Co.*, 2013 WL 1947525, at *15 (C.D. Cal. May 8, 2013) (pointing to "numerous confidential witness statements" establishing that defendants knew they would not be able to timely implement software platform); *In re Stratosphere Corp. Sec. Litig.*, 1 F. Supp. 2d 1096, 1111-12 (D. Nev. 1998) (holding that internal documents created shortly after the statements showing knowledge at the time may support falsity).  Plaintiffs allege no such facts here.

### 2.   GoodRx's Statements Regarding Pharmacy Benefit Managers Were Not Misleading

Plaintiffs argue that the PBM statements are misleading because Amazon was able to partner with Inside Rx, which had an "affiliation with" one of GoodRx's "largest PBMs," Express Scripts, notwithstanding GoodRx's assurances that it had contracts in place to prevent PBMs from circumventing its platform.  Opp. at 16-17 (citing AC ¶¶ 69-70).  That is wrong, just as it was the first time the Court considered this argument.  Order at 8.  Plaintiffs' two-steps-removed chain of connections between Amazon and GoodRx is altogether too attenuated to create

a plausible inference that GoodRx knew about Amazon's plans to work with one of GoodRx's PBMs.  And GoodRx never said that its partnerships with all PBMs were exclusive, or that others would not partner with them.  To the contrary, GoodRx disclosed that many of its PBM relationships were "*not exclusive* and PBMs work with others in the industry," and that GoodRx's number of "PBM partners may even decline."  Ex. 1 at 42-43 (emphasis added).

Plaintiffs also argue that the "context" of the PBM statements makes them actionable because GoodRx "assured investors that GoodRx had little, if any, competitive risk" due to its restrictive PBM contracts.  Opp. at 16-17.  Not so.  The Court already held that the three previously challenged PBM statements "did not guarantee the continuation of GoodRx's PBM contracts," and therefore were not misleading.  Order at 8.  Plaintiffs provide *no reason* why the Court should reverse its conclusion:  they fail to cite any of their new allegations; they do not refer to any other portion of the Registration Statement (outside of the challenged statements) providing "context" that might make the challenged statements misleading; and they do not even attempt to distinguish any of the cases cited by GoodRx (Mot. at 15).

Nor does the new challenged statement (the only one not included in the Complaint) about PBMs change the calculus, because it is functionally the same as one of the previously challenged statements.  *Compare* AC ¶ 70 (previously challenged statement that GoodRx's PBM contracts "prevent PBMs from circumventing our platform"), *with id.* (new statement that GoodRx's PBM contracts "restrict the ability of PBMs to compete with us and solicit our customers").  The one case Plaintiffs cite is inapt—there, the court found that the challenged statements, together with other specific language in the defendant's public disclosures, created a "clear implication" of a state of affairs that would have misled investors.  *See Miller v. Thane Int'l, Inc.*, 519 F.3d 879, 886-87 (9th Cir. 2008) (cited Opp. at 16).  Plaintiffs point to no similar language in

GoodRx's Registration Statement that would make the challenged statements misleading. In fact, the registration statement included numerous statements supporting the conclusion that GoodRx operated in a competitive environment with a "limited number of major PBMs" and could not ensure that its PBM relationships would continue. Ex. 1 at 43; *see* Mot. at 3-4, 15.

The opposition also provides no rebuttal to GoodRx's argument that the challenged statement about GoodRx's "belie[f]" that it has "the largest database of PBM prices in the United States" is an inactionable opinion. *See* Mot. at 16 (quoting AC ¶ 68). The Court should "recognize[] Plaintiff[s'] silence as a concession" and dismiss their allegations about the statement. *Cal. Grocers Ass'n v. City of Santa Ana*, 2021 WL 4439092, at *2 (C.D. Cal. June 30, 2021) (Carter, J.) (dismissing plaintiff's claims for failure to address an argument in opposition briefing); *see also Coast Dental Servs., LLC v. Ozder Dental Corp.*, 2020 WL 3840438, at *4 (C.D. Cal. Apr. 3, 2020) (Carter, J.) ("Claims may be properly dismissed when an opposition brief fails to respond to a movant's claim in a motion to dismiss."). Alternatively, this statement should be dismissed because Plaintiffs do not meet the pleading standard for opinions. *See* Mot. at 16.

**3.      Plaintiffs Have Not Pled a Violation of Item 303 or Item 105**

Plaintiffs' argument that GoodRx's Registration Statement did not comply with Items 303 or 105 of Regulation S-K similarly fails. Opp. at 18-19. Plaintiffs argue that Amazon's "impending entry into the market" should have been disclosed under both Item 303 and Item 105 because that information "was likely to have a negative impact on GoodRx's revenues." *Id.* First, as the Court has already recognized (Order at 12-13), Item 303 requires disclosure only of trends that are "presently known" to management, and as discussed, no such facts are alleged. *See Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1296-97 (9th Cir. 1998). The only specific fact to which Plaintiffs point—that GoodRx's revenue

allegedly fell below expectations in the quarter after Amazon's launch (Opp. at 18-19)—has nothing to do with what GoodRx knew earlier, at the time of the IPO.

Second, Plaintiffs argue that GoodRx failed to discharge its duties under Item 105 because the Registration Statement did not disclose "that Amazon had plans to enter into the online pharmacy industry." Opp. at 19. This argument fails for the same reason as Plaintiffs' Item 303 allegations—the Amended Complaint does not adduce "specific facts about Amazon's plans that were known to GoodRx management at the time of the IPO." Order at 12-13. Plaintiffs' suggestion that the risk of competition from Amazon was both "imminent" and "already occurring" (Opp. at 19) is paradoxical. Moreover, the risk of competition, including with companies as yet unknown to GoodRx, *was disclosed* in the Registration Statement. *See* Mot. at 3-4 (quoting Ex. 1 at 43-47).

Plaintiffs resort to arguing that the sufficiency of risk disclosures under Item 105 is a mixed question of law and fact that is never appropriate for resolution at the motion to dismiss stage (Opp. at 19, citing *SEC v. Todd*, 642 F.3d 1207, 1220 (9th Cir. 2011)), but this is wrong. As an initial matter, *Todd* does not pertain to Item 105 and was not a decision on a motion to dismiss; the court's analysis focused on materiality instead. 642 F.3d at 1221. Courts routinely dismiss improperly pled Item 105 claims, and *Todd* says nothing to the contrary. *See In re Pivotal Sec. Litig.*, 2020 WL 4193384, at *8 (N.D. Cal. July 21, 2020) (dismissing Item 105 claim); *see also In re Progenity, Inc.*, 2021 WL 3929708, at *14 (S.D. Cal. Sept. 1, 2021) (same); *Berg v. Velocity Fin., Inc.*, 2021 WL 268250, at *10 (C.D. Cal. Jan. 25, 2021) (same).

**D.  Plaintiffs Fail to Plead That Any of the Post-IPO Statements Were False or Misleading**

The post-IPO statements (AC ¶¶ 108, 112-117) are the same ones that Plaintiffs previously challenged, and they fail for the same reasons as before (Order at 11). Plaintiffs' arguments in opposition do not move the needle. To

begin with, Plaintiffs do not respond to GoodRx's argument that Mr. Bezdek's November 12, 2020 statement that GoodRx had not seen "any competitors that have really impacted our business . . . historically or currently" (AC ¶ 108) is backward-looking, and therefore not misleading because Amazon had not yet emerged as a competitor at the time that the statement was made. Mot. at 17-18. This statement should be dismissed. *See Cal. Grocers Ass'n*, 2021 WL 4439092, at *2 (silence as to a certain argument warrants dismissal).

As for the remaining post-IPO challenged statements, Plaintiffs offer only two arguments, that: (1) GoodRx "continued to receive information about the development of Amazon's competing PrimeRx product," leading up to Amazon's May 2021 product launch; and (2) competition from Amazon was material to investors based on the stock drop that occurred between May 10 and 12, 2021. Opp. at 17-18. As to the first point, Plaintiffs make only conclusory statements about GoodRx's receipt of information regarding Amazon's plans after the IPO. Though the two companies allegedly had some third-party business connections in common, Plaintiffs offer no facts that establish, much less suggest, that those connections were used to funnel proprietary information about Amazon's plans to GoodRx. While Plaintiffs allege that GoodRx was a "founding partner" that helped to launch Inside Rx (AC ¶¶ 7, 43), and from that assertion conclude that GoodRx would know about any fees paid by Amazon to Inside Rx (Opp. at 18), the Amended Complaint offers nothing to support that illogical leap. For example, the Amended Complaint contains no alleged facts to establish that GoodRx actually received fees from Amazon through Inside Rx (much less how GoodRx would know that any fees received "from pharmacies" through Inside Rx (*id.*) came from Amazon), and no alleged facts demonstrating that GoodRx had any kind of investment stake in Inside Rx or other means of knowing about any such fees before the IPO, before Amazon's program even launched. The fact that Inside Rx "used GoodRx's software" (*id.*)—a fact that is not actually alleged in the

Amended Complaint (*see* AC ¶ 124)—implies nothing about any relationship between GoodRx and Amazon and certainly does not lead to the inference that Amazon was using the GoodRx platform for its new program, much less that GoodRx knew this purported fact. Like the challenged statements from the Registration Statement, Plaintiffs' allegations about post-IPO statements improperly rely on speculation about what GoodRx *might* have known, which is insufficient to survive a motion to dismiss. *See Wong v. Arlo Techs., Inc.*, 2019 WL 7834762, at *6-7.

As to Plaintiffs' second argument, even if the allegedly omitted facts were material, materiality alone does not give rise to falsity, which requires that the omitted fact is both known (so that it could be disclosed in the first place) and "necessary to make a statement not misleading." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1417 (3d Cir. 1997) (referring to quoted language as part of the "first step" of a Rule 10b-5 analysis). Plaintiffs' own cited cases acknowledge as much. *See In re Merck & Co., Inc. Sec. Litig.*, 432 F.3d 261, 268 (3d Cir. 2005) (citing *Burlington Coat* "first step" test) (cited Opp. at 18). Plaintiffs do not even allege that Amazon *itself* had conceived of the new features added to its PrimeRx product at the time of GoodRx's statements, much less that GoodRx knew about those features. Even if Plaintiffs had alleged that GoodRx had some reason to think that Amazon *might* continue making moves into the prescription drug discount market, GoodRx had no duty to speculate about Amazon's plans. *See Stac Elecs.*, 89 F.3d at 1407 (no duty to speculate because "another company's plans cannot be known to a certainty").

### E.    Plaintiffs Fail to Plead Facts Supporting a Strong Inference of Scienter for the Exchange Act Claims

Plaintiffs' Exchange Act claims require that they allege, "in great detail," facts that "constitute strong circumstantial evidence of deliberately reckless or conscious misconduct." *In re Alteryx, Inc. Sec. Litig.*, 2021 WL 4551201, at *3

(C.D. Cal. June 17, 2021) (Carter, J.).  In addition, allegations of scienter must be "cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Id*.  Plaintiffs fail to meet either requirement.  There are no particularized facts that create a strong inference of scienter, and the competing non-fraudulent inference—that Amazon did not tell GoodRx its plans to launch a new, and potentially competing service—is far more compelling.

Plaintiffs offer three arguments in an effort to bolster their scienter allegations:  (1) GoodRx must have known about Amazon's purported plans because of its relationship with Inside Rx and its "regular[]" "communicat[ions]" with Amazon (Opp. at 20-21); (2) Amazon's discount coupon service related to GoodRx's "core operations" (*id.* at 21-23); and (3) the timing of GoodRx's IPO and insider stock sales were suspicious (*id.* at 23-25).  As the Court suggested in its previous motion to dismiss order (Order at 11), none of these are sufficient.

### 1.    GoodRx's Business Relationships Do Not Create a Compelling Inference of Fraud

Plaintiffs argue that GoodRx was "aware, at the time of the IPO, of Amazon's plans to launch a directly competing service," because of GoodRx's relationship with Inside Rx and an allegedly ongoing "GoodRx-Amazon collaboration."  Opp. at 20-21.  To support their claims of scienter through Inside Rx, Plaintiffs point to the following:  Inside Rx used GoodRx's software, so GoodRx "must have been aware of what the use case for the software would be"; GoodRx was a "founder[] of Inside Rx"; and Inside Rx "administered Amazon's PrimeRx program." *Id.*  None of these amount to "detailed and specific allegations about [GoodRx's] exposure" to "the disputed information"—namely, Amazon's plans to roll out PrimeRx. *S. Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 785-86 (9th Cir. 2008); *see also* Opp. at 19 (citing *S. Ferry*); *In re Remec Inc. Sec. Litig*., 415 F. Supp. 2d 1106, 1116 (S.D. Cal. 2006) (allegations that defendants "knew," "recklessly disregarded," "were aware," and "had access to information they

needed" were too general to allege scienter with the required specificity). Contrary to Plaintiffs' suggestion, whether Inside Rx used GoodRx's software says nothing about GoodRx's knowledge of *how* it would be used or that Inside Rx would soon partner with Amazon. Moreover, as already noted, the Amended Complaint does not allege that GoodRx was a "founder[] of Inside Rx" (Opp. at 20-21); that GoodRx helped launch Inside Rx (AC ¶¶ 7, 43) says nothing about its continuing involvement or knowledge of Inside Rx's operations. There is no basis to infer that the alleged ties between GoodRx and Inside Rx meant that Inside Rx shared information about Amazon's impending plans.

Likewise, Plaintiffs' contention that GoodRx had insider knowledge about Amazon's plans because of their "ongoing" relationship, and because Mr. Hirsch stated that the two companies communicate "regularly," is outlandish. Opp. at 21. The Amended Complaint contains no facts to support the inferential leap that those communications involved discussions about potentially competing services Amazon may have been developing. As GoodRx explained in its motion (Mot. at 21), the more compelling inference is that Amazon would *not* tell (or allow its business partners to tell) a future competitor about its purported plan to launch a competing service. *See, e.g.*, *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 991 (9th Cir. 2009) (allegations will only survive a motion to dismiss if the "inference of scienter is *cogent and at least as compelling* as any opposing inference one could draw from the facts alleged" (emphasis in original)); *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 65 F. Supp. 3d 840, 859-60 (N.D. Cal. 2014) (holding pleadings insufficient to overcome non-fraudulent inference where plaintiffs allegations "largely depend[ed] on supposition rather than facts to place . . . [the] information in the individual defendants' hands"), *aff'd*, 856 F.3d 605 (9th Cir. 2017); *Alteryx*, 2021 WL 4551201, at *8-9 (finding "non-culpable explanation . . . more compelling and cogent"). That Amazon ultimately did launch PrimeRx, and later expanded it, does

nothing to show GoodRx's knowledge of information about Amazon's plans ahead of time. *See In re Vantive Corp. Sec. Litig.*, 283 F.3d 1079, 1084-85 (9th Cir. 2002) (PSLRA's heightened falsity and scienter pleading requirements were intended "to put an end to the practice of pleading 'fraud by hindsight'").

**2.      The Core Operations Inference Does Not Apply**

Next, Plaintiffs boldly assert that it would be "absurd" to assume that Defendants did not know about Amazon's plans because of the importance of GoodRx's prescription drug discount program to its revenues and business strategy. Opp. at 19-21. As an initial matter, the far more "absurd" assumption would be that Amazon intended to move into a new market, in competition with GoodRx, and notified GoodRx of its intentions in advance or allowed that information to leak to GoodRx through one of its business partners. Regardless, the core operations doctrine turns on the presence of "detailed and specific allegations about management's exposure to factual information *within the company*." *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 620 (9th Cir. 2017) (quoting *S. Ferry*, 542 F.3d at 785) (emphasis added). "[W]ithin the company" necessarily excludes information about what *another company* is doing. Plaintiffs argue that the "core operations doctrine can sometimes apply . . . to a defendant's knowledge of a business other than his or her own" (Opp. at 21), but their case citations do not support that conclusion. *City of Dearborn Heights* (cited Opp. at 21) was about the defendant's knowledge of information contained in its *own* "SEC filings and press releases." 856 F.3d at 621. And *SEB Investment Management AB v. Align Technology, Inc.*, 485 F. Supp. 3d 1113 (N.D. Cal. 2020) (cited Opp. at 22), also involved a defendant's knowledge of information about its *own* primary product. *Id.* at 1133.

Plaintiffs misconstrue GoodRx's argument in order to set up a strawman response. Plaintiffs claim that GoodRx is trying to limit the core operations doctrine to "statements about [GoodRx's] own company." Opp. at 22. That is not

GoodRx's argument.  GoodRx's argument is that the core operations doctrine turns on whether a company must have had knowledge about certain information, and the standard applies only to knowledge about the defendant's own company.  Mot. at 23 (citing *S. Ferry,* 542 F.3d at 786).  Plaintiffs also revert to arguments about the alleged materiality and falsity of GoodRx's challenged statements, instead of scienter or the core operations doctrine.  Opp. at 22-23 (arguing that certain challenged statements were "false and misleading when made").  Again—the core operations inquiry, and even more broadly the scienter inquiry, center on the defendant's knowledge and intent.  *See City of Dearborn Heights*, 856 F.3d at 620 (core operation theory looks to "management's exposure to factual information");  *In re Daou Sys., Inc.,* 411 F.3d 1006, 1014-15 (9th Cir. 2005) (scienter focuses on whether a defendant acted "intentionally or with deliberate recklessness").  Plaintiffs' arguments on those points fail.

### 3. Neither the Timing of the IPO Nor Insider Stock Sales Supports Scienter

In a last-gasp attempt to demonstrate that they sufficiently pled scienter, Plaintiffs again argue that the timing of GoodRx's IPO and of "insiders' stock sales" are suspicious enough to raise an inference of scienter.  Opp. at 23-25.  Plaintiffs contend that GoodRx has offered no "non-culpable explanation for the timing of the IPO" (Opp. at 23), but it is unclear what explanation Plaintiffs are looking for.  The IPO was months in the making, and Plaintiffs allege no specific facts that create an inference that GoodRx timed the IPO to occur before Amazon made its initial announcement (which GoodRx did not even consider an announcement of a competing service, as the post-IPO challenged statements show, AC ¶¶ 112-117).

Plaintiffs further argue that the high dollar figure of "insider" stock sales made prior to the Amazon announcement (before the expiration of the lock-up period) gives rise to an inference of scienter.  But under Ninth Circuit law, it is not

just the "amount," but also the "*percentage* of shares sold by insiders" that is relevant to the inquiry of whether stock sales are suspicious. *Zucco Partners*, 552 F.3d at 1005 (emphasis added). Here, the percentage of sales is far lower than in other cases where no inference of scienter was found. *See* Mot. at 22 (noting sale percentages here are 5.5% and 5.9%, whereas other cases have allowed up to 75.3% without finding an inference of scienter); *see also id.* (citing *Alteryx*, 2021 WL 4551201, at *4; *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1067 (9th Cir. 2008) (sale of 37% of total stock holdings did not establish scienter); *Ronconi v. Larkin*, 253 F.3d 423, 435 (9th Cir. 2001) (insider selling 17% of his shares while allegedly in possession of material nonpublic information was "not suspicious in amount"); *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 987 (9th Cir. 1999) (sale of 43.6% and 75.3% of executive' holdings failed to give rise to a strong inference of scienter)).

Plaintiffs' claim that it "does [not] matter that the sellers retained some portion of their holdings" (Opp. at 24) fails to grapple with *Zucco* or any of the other cases GoodRx cited to the contrary. Even Plaintiffs' cited case, *Nursing Home Pension Fund, Local 144 v. Oracle Corp.*, 380 F.3d 1226 (9th Cir. 2004) (cited Opp. at 24), acknowledges that the Ninth Circuit gives "great weight to the percentage of stock sold." *Id.* at 1232. There, contrary to Plaintiffs' parenthetical, the court did not conclusively determine that the stock sales at issue were suspicious, but noted that "less weight should be given to the fact that [the sales] may represent a small portion of the defendant's holdings" because the "stock sales result[ed] in a truly astronomical figure" of $900 million worth of stock by one individual. *Id.* Here, the stock sales of a number of insiders allegedly totaled $369 million (Opp. at 23; AC ¶ 104)—just over *one third* of the amount sold by one individual in *Oracle*, and insufficient to disregard the small percentages of each defendant's holdings. Ex. 1 at 189-90 (Mr. Slutsky sold 5.5% of his holdings and Idea Men, LLC sold 5.9%); *see* Mot. at 22.

The post-lockup stock sales are not suspicious either.  All but two of the trades were made within a week of the lock-up's expiration, pursuant to 10b5-1 plans.  Mot. at 23.  Courts in this Circuit routinely hold that both of these facts negate an inference of scienter.[2]  *Id.* (citing *In re Int'l Rectifier Corp. Sec. Litig.*, 2008 WL 4555794, at *19-21 (C.D. Cal. May 23, 2008); *Osher v. JNI Corp.*, 256 F. Supp. 2d 1144, 1165 (S.D. Cal. 2003); *In re Splash Tech.*, 2000 WL 1727405, at *12 (N.D. Cal. Sept. 29, 2000)).  Even Plaintiffs' tortured retelling of the holding in *Splash Technologies* does not disguise the court's conclusion:  the defendant's sale of "almost 60% of its holdings" did *not* suggest scienter when viewed in the "context[]" that the sale was made after a "lock-up 180 day restraint."  Opp. at 25 (quoting *Splash Tech.*, 2000 WL 1727405, at *12).  Plaintiffs cite no case with a contrary holding.

## III. CONCLUSION

Defendants respectfully request that the Court dismiss Plaintiffs' Amended Complaint with prejudice.

Dated:  May 4, 2022

Respectfully submitted,

LATHAM & WATKINS LLP

By  */s/ Michele D. Johnson*
Michele D. Johnson
Colleen C. Smith
Jordan D. Cook

*Attorneys for Defendants GoodRx Holdings, Inc., Douglas Hirsch, Trevor Bezdek, Karsten Voermann, Christopher Adams, Julie Bradley,*

---

[2] Plaintiffs' comment about GoodRx not providing copies of its 10b5-1 plans (Opp. at 25 n.8) is bizarre and contrary to convention in securities cases, where defendants frequently submit Forms 4 to demonstrate the existence of 10b5-1 plans, as GoodRx did here (Ex. 8 (Dkt. 107-8)). *See, e.g.*, *Azar v. Yelp, Inc.*, 2018 WL 6182756, at *4 (N.D. Cal. Nov. 27, 2018) ("Courts in this circuit have routinely taken judicial notice of Forms 4 to determine whether insider stock sales raise an inference of scienter to support a § 10(b) action," including where "[d]efendants counter that the Forms 4 reflect that [insider] sales were made pursuant to a Rule 10b5-1 plan adopted prior to the alleged fraud").

*Dipanjan Deb, Adam Karol, Jacqueline Kosecoff, Stephen LeSieur, Gregory Mondre and Agnes Rey-Giraud*