PETER B. MORRISON (SBN 230148)
peter.morrison@skadden.com
VIRGINIA F. MILSTEAD (SBN 234578)
virginia.milstead@skadden.com
CANDACE ROSS PHOENIX (SBN 323585)
candace.phoenix@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
300 South Grand Avenue, Suite 3400
Los Angeles, California 90071-3144
Telephone:   (213) 687-5000
Facsimile:   (213) 687-5600

Attorneys for Defendants
MORGAN STANLEY & CO. LLC, GOLDMAN
SACHS & CO. LLC, J.P. MORGAN SECURITIES
LLC, BARCLAYS CAPITAL INC., B OF A
SECURITIES INC., CITIGROUP GLOBAL
MARKETS INC., CREDIT SUISSE SECURITIES
(USA) LLC, RBC CAPITAL MARKETS, LLC, UBS
SECURITIES LLC, COWEN AND COMPANY, LLC,
DEUTSCHE BANK SECURITIES INC., EVERCORE
GROUP L.L.C., CITIZENS CAPITAL MARKETS,
INC., KKR CAPITAL MARKETS LLC, LIONTREE
ADVISORS LLC, RAYMOND JAMES &
ASSOCIATES, INC., SVB SECURITIES LLC fka
SVB LEERINK LLC, ACADEMY SECURITIES,
INC., LOOP CAPITAL MARKETS LLC, R.
SEELAUS & CO., LLC and SAMUEL A. RAMIREZ
& COMPANY, INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| In re GOODRX HOLDINGS, INC. SECURITIES LITIGATION, | )<br>)<br>)<br>) | Master File No. 2:20-cv-11444-DOC-MARx |
| | ) | <u>CLASS ACTION</u> |
| | )<br>) | DEFENDANTS' REPLY IN SUPPORT OF JOINDER IN MOTION TO DISMISS AND |
| This Document Relates To: | )<br>)<br>) | MOTION TO DISMISS FIRST AMENDED CONSOLIDATED COMPLAINT FOR |
| ALL ACTIONS. | )<br>)<br>) | VIOLATIONS OF THE FEDERAL SECURITIES LAWS |
| | )<br>)<br>) | |
| | )<br>)<br>)<br>) | Judge:      Hon. David O. Carter<br>Courtroom: 9D<br>Date:       June 6, 2022<br>Time:       8:30 a.m. |

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................................ii

I.    PRELIMINARY STATEMENT................................................................1

II.   THE COURT SHOULD DISMISS THE CLAIM AGAINST THE UNDERWRITERS..................................................................................4

      A.    The AC Fails To Allege A False Or Misleading Statement..........4

            1.    The AC Does Not Allege An Omission At The Time The Registration Statement Became Effective ..........................5

            2.    The AC Does Not Allege That The Omission Rendered Any Statement Misleading ..................................................9

            3.    The AC Fails To Plausibly Allege The Risk Disclosure Was Misleading ................................................................13

      B.    The AC Fails To Allege A Violation Of Item 303 Or 105..........17

III.  CONCLUSION .......................................................................................20

## TABLE OF AUTHORITIES

PAGE(S)

### CASES

*In re Adams Golf, Inc. Securities Litigation*,
381 F.3d 267 (3d Cir. 2004)............................................................................16

*In re American Apparel, Inc. Shareholder Litigation*,
855 F. Supp. 2d 1043 (C.D. Cal. 2012) ...........................................................8

*In re Apple Inc. Securities Litigation*,
No. 19-cv-02033-YGR,
2020 WL 2857397 (N.D. Cal. June 2, 2020) ...................................................7

*Belodoff v. Netlist, Inc.*,
No. SA CV 07-00677 DOC (MLGx),
2008 WL 2356699 (C.D. Cal. May 30, 2008) ...............................................11

*Belodoff v. Netlist, Inc.*,
No. SACV 07–00677 DOC (MLGx),
2009 WL 1293690 (C.D. Cal. Apr. 17, 2009) .........................4, 12, 13, 17, 18

*Berson v. Applied Signal Technology, Inc.*,
527 F.3d 982 (9th Cir. 2008)..........................................................................12

*Boston Retirement System v. Uber Technologies, Inc.*,
No. 19-cv-06361-RS,
2020 WL 4569846 (N.D. Cal. Aug. 7, 2020) ...................................................7

*Brody v. Transitional Hospitals Corp.*,
280 F.3d 997 (9th Cir. 2002)....................................................10, 11, 12, 15

*In re CIT Group, Inc. Securities Litigation*,
349 F. Supp. 2d 685 (S.D.N.Y. 2004).............................................................9

*In re Cosi, Inc. Securities Litigation*,
379 F. Supp. 2d 580 (S.D.N.Y. 2005) .............................................................5

*Derr v. RA Medical System, Inc.*,
No. 19cv1079-LAB-AHG,
2021 WL 1117309 (S.D. Cal. Mar. 24, 2021) .................................................7

*In re Dropbox Securities Litigation*,
No. 19-cv-06348-BLF,
2020 WL 6161502 (N.D. Cal. Oct. 21, 2020) ..........................................*passim*

*Flynn v. Sientra, Inc.*,
No.: CV 15-07548 SJO (RAOx),
2016 WL 3360676 (C.D. Cal. June 9, 2016) .................................................14

*Gammel v. Hewlett-Packard Co.*,
No. SACV 11–1404 AG (RNBx),
2013 WL 1947525 (C.D. Cal. May 8, 2013) ...................................................9

*In re Jumei International Holding Ltd. Securities Litigation*,
　No. 14cv9826,
　2017 WL 95176 (S.D.N.Y. Jan. 10, 2017) ...................................................... 2, 8

*Lefter v. Yirendai Ltd.*,
　No. CV 16–06437–MWF (AGRx),
　2017 WL 2857535 (C.D. Cal. June 20, 2017) ................................................... 15

*Medina v. Tremor Video, Inc.*,
　No. 13–cv–8364 (PAC),
　2015 WL 1000011 (S.D.N.Y. March 5, 2015),
　*aff'd*, 640 F. App'x 45 (2d Cir. 2016) .............................................................. 8

*Miller v. Thane International, Inc.*,
　519 F.3d 879 (9th Cir. 2008) ................................................................... 12, 13

*In re Network Commerce Inc. Securities Litigation*,
　2006 WL 1375049 (W.D. Wash. May 16, 2006) ................................................. 6

*Panther Partners, Inc. v. Ikanos Communications, Inc.*,
　538 F. Supp. 2d 662 (S.D.N.Y. 2008),
　*aff'd*, 347 F. App'x 617 (2d Cir. 2009) ............................................................. 8

*Peifa Xu v. Gridsum Holding Inc.*,
　18 Civ. 3655 (ER),
　2021 WL 773002 (S.D.N.Y. Feb. 23, 2021) ............................................... 2, 5, 8

*Pirani v. Slack Technologies, Inc.*,
　445 F. Supp. 367 (N.D. Cal. Apr. 21, 2020),
　*aff'd*, 13 F.4th 940 (9th Cir. 2021) ................................................... 14, 16, 19

*In re Pivotal Securities Litigation*,
　No. 3:19-cv-03589-CRB,
　2020 WL 4193384 (N.D. Cal. Jul. 21, 2020) ............................................. 15, 19

*In re Progenity, Inc.*,
　No.: 20-cv-1683-CAB-AHG,
　2021 WL 3929708 (S.D. Cal. Sept. 1, 2021) ................................................... 14

*In re Qudian Inc. Securities Litigation*,
　17-CV-9741 (JMF),
　2019 WL 4735376 (S.D.N.Y. Sept. 27, 2019) .................................................. 8

*In re Rigel Pharmaceuticals, Inc. Securities Litigation*,
　697 F.3d 869 (9th Cir. 2012) ..................................................................... 3, 11

*Rubinstein v. Credit Suisse Group AG*,
　457 F. Supp. 3d 289 (S.D.N.Y. 2020) ............................................................. 13

*Rubke v. Capital Bancorp, Ltd.*,
　551 F.3d 1156 (9th Cir. 2009) ..................................................................... 5, 11

*S.E.C. v. Todd*,
　642 F.3d 1207 (9th Cir. 2011) ..................................................................... 19, 20

*In re Snap Inc. Securities Litigation*,
  Case No. 2:17–cv–03679–SVW–AGR,
  2018 WL 2972528 (C.D. Cal. June 7, 2018) ............................................................... 14

*Snellink v. Gulf Resources, Inc.*,
  870 F. Supp. 2d 930 (C.D. Cal. 2012) .................................................................. 18, 19

*In re Stac Electronics Securities Litigation*,
  89 F.3d 1399 (9th Cir. 1996) ........................................................................*passim*

*Steckman v. Hart Brewing, Inc.*,
  143 F.3d 1293 (9th Cir. 1998) .........................................................................17, 18

*Steinberg v. PRT Group, Inc.*,
  88 F. Supp. 2d 294 (S.D.N.Y. 2000) ...................................................................... 16

*In re Stratosphere Corp. Securities Litigation*,
  1 F. Supp. 2d 1096 (D. Nev. 1998).......................................................................... 9

*In re TVIX Securities Litigation*,
  25 F. Supp. 3d 444 (S.D.N.Y. 2014), *aff'd sub nom.*, *Elite Aviation LLC v. Credit Suisse AG*, 588 F. App'x 37 (2d Cir. 2014) ....................................................... 15

*In re Verifone Securities Litigation*,
  11 F.3d 865 (9th Cir. 1993) .....................................................................3, 6, 10

*Washtenaw County Employees Retirement System v. Celera Corp.*,
  No. 5:10–cv–02604 EJD,
  2012 WL 3835078 (N.D. Cal. Sept. 4, 2012) ....................................................... 7

*Weston Family Partnership LLLP v. Twitter, Inc.*,
  29 F.4th 611 (9th Cir. 2022) ............................................................................. 8

## STATUTES

15 U.S.C. § 77k.............................................................................................1, 5

## REGULATIONS

17 C.F.R. § 229.105 ........................................................................................ 19

17 C.F.R. § 229.303 ........................................................................................ 17

## I.　　PRELIMINARY STATEMENT[1]

Plaintiffs' Opposition did not—and cannot—cure the fatal deficiencies in the First Amended Consolidated Complaint for Violations of the Federal Securities Laws ("AC"). Instead, the Opposition, like the AC, relies on conclusory allegations that GoodRx Holdings, Inc.'s ("GoodRx") registration statement omitted the fact that Amazon was allegedly *going to* enter the prescription pharmaceuticals discount market, despite failing to allege that Amazon had any concrete plans, let alone that GoodRx was aware of these purported plans at the time the registration statement became effective. (*See* Opposition ("Opp.") 12.) Accordingly, the Court should dismiss the AC as it did Plaintiffs' Corrected Consolidated Complaint for Violations of the Securities Laws (ECF No. 84-1 ("CC")), this time with prejudice.

The Underwriters join in GoodRx's and the Individual Defendants' Reply in Support of GoodRx Defendants' Motion to Dismiss Amended Complaint ("GoodRx Reply"). The Underwriters also incorporate by reference herein each of the arguments in the GoodRx Reply as to why (i) Plaintiffs cannot demonstrate statutory damages, as required by Section 11(e), 15 U.S.C. § 77k(e), as a matter of law (GoodRx Reply at 3-6); (ii) the Rule 9(b) pleading standard applies to the AC as a whole, including the Section 11 claims (GoodRx Reply at 2-3); and (iii) Plaintiffs fail to allege the registration statement at issue contained any actionable, false or misleading misstatement or omission (GoodRx Reply at 7-16). The Underwriters once again reply separately to emphasize that regardless of the pleading standard the Court applies to the Section 11 claims, Plaintiffs still fail to plausibly allege a false or misleading statement.

*First*, Plaintiffs' Opposition acknowledges that no statement in the registration statement was literally false, but argues that statements about "GoodRx's advantages" were misleading given the "coming launch" of Amazon's PrimeRx. (Opp. 12.) Plaintiffs fail to

---

[1] Capitalized terms not defined herein have the same meaning as in the Underwriters' Motion to Dismiss ("Underwriters' Motion"). All emphases are in the original, and internal citations and quotations are omitted unless otherwise stated.

overcome the Court's finding in its January 6, 2022 Order Granting Defendants' Motions to Dismiss (ECF No. 98 ("Order")) that, "there are no factual allegations about the status of Amazon's plans as of the IPO in September 2020, two months before the launch." (Order 8.) Plaintiffs fail to allege any facts to show that the launch was "coming" at the time of GoodRx's IPO, let alone that Amazon was actually competing with GoodRx. Plaintiffs themselves acknowledge that Amazon's announcement and launch of PrimeRx was nearly two months after the registration statement became effective, and its announcement and launch of its alleged price comparison tool was eight months away. (AC ¶¶ 50, 63, 64.)

Plaintiffs argue that "the inference can be drawn that, at the very least, Defendants were notified by Express Scripts of Amazon's and Inside Rx's intentions well before Amazon publicly announced them." (Opp. 12.) But Plaintiffs ignore the argument from the Underwriters' Motion that Plaintiffs fail to allege sufficient facts to describe what that work or collaboration was, let alone its status or that it had advanced to the point that it created a "material risk of competition." (AC ¶ 55; Mot. 6:14-7:4.) *See Peifa Xu v. Gridsum Holding Inc.*, 2021 WL 773002, at *10 (S.D.N.Y. Feb. 23, 2021) (dismissing Section 11 claim regarding defendants' own anticipated product launch because "an inference that a statement or omission was materially misleading *at the time it was made . . . .* would logically require allegations regarding what facts existed, or were reasonably anticipated, about this product launch at the time of the IPO"). Plaintiffs repeat their argument that the "short time" between the IPO and Amazon's announcement and entry into the market supports their claim that the challenged statements in the registration statement were misleading. (Opp. 15:18-25.) But this argument fails because the gap in time was almost two months—not mere days—and courts have rejected similar arguments as "simply inadequate pleading." *In re Jumei Int'l Holding Ltd. Sec. Litig.*, 2017 WL 95176, at *4 (S.D.N.Y. Jan. 10, 2017) (dismissing Section 11 claim because the complaint contained "no allegations that Defendants knew of [the defendant's own] impending exit [four months later] from the beauty-supplies marketplace at the time of the IPO, much less the probable effect of that exit on Jumei's share price").

Although Plaintiffs argue that the fact that Amazon "*was about* to enter the market with a product that competed directly with GoodRx's core product would have been material to investors" (Opp. 12), Plaintiffs ignore that GoodRx had no obligation to make such a forecast. *See In re Verifone Sec. Litig.*, 11 F.3d 865, 869 (9th Cir. 1993) (affirming dismissal of claim that a defendant "omitted to state the 'fact' that future prospects may not be as bright as past performance").

*Second*, Plaintiffs allege that statements regarding competition and relationships with Pharmacy Benefit Managers ("PBMs") were misleading, but they fail to explain how this is so. (Opp. 16-17.) These general statements do not make any representation, express or implied, about any particular competitor or PBM, let alone give any misimpression that GoodRx had *no* existing or future competition. Nor do the challenged statements imply that Amazon had no plans to enter the market and develop relationships with GoodRx's PBMs; in fact, they say nothing about Amazon at all. *See In re Rigel Pharms., Inc. Sec. Litig.*, 697 F.3d 869, 880 n.8 & 886 n.15 (9th Cir. 2012) (explaining that even material omissions are not actionable unless they make a statement that was actually made misleading). Furthermore, the registration statement contained extensive risk disclosures about the risks from competitors. Reasonable investors would not read the challenged statements in isolation, but in the context of GoodRx's robust risk disclosures.

*Third*, Plaintiffs allege that GoodRx's risk disclosures were generic, boilerplate warnings and that GoodRx "knew very well [the risks from competition with Amazon] *would* occur." (Opp. 14.) However, neither PrimeRx nor the price comparison tool had yet been announced, let alone become operational, so no risk had actually come to fruition. Plaintiffs cite no authority showing that GoodRx's risk disclosures had to be clairvoyant, predicting future events as though they were settled facts. Moreover, there is no "rule of completeness" for securities disclosures because "[n]o matter how detailed and accurate disclosure statements are, there are likely to be additional details that could have been disclosed but were not." *In re Dropbox Sec. Litig.*, 2020 WL 6161502, at *6 (N.D. Cal. Oct. 21, 2020). Instead, Plaintiffs must show that the failure to disclose Amazon's plans

rendered the risk disclosure misleading. Here, Plaintiffs fail to address the fact that Amazon's plans were entirely consistent with the disclosed risks, among others, that competitors could "develop and market similar offerings," or "new market entrants with greater resources and better offerings" could offer similar products, or that while "we negotiate protective terms . . . with PBMs, our cont[r]acts with these parties are not exclusive and PBMs work with others in the industry to drive volume to their networks." (GoodRx RJN, Ex. 1 (S-1/A) at 27.) Therefore, the failure to disclose Amazon's plans did not render the risk disclosures misleading.

*Fourth*, Plaintiffs' Opposition fails to demonstrate a violation of Item 303 or 105 of Regulation S-K. Item 303 of Regulation S-K "governs the disclosure of known historic trends, but does not provide a basis of liability where a corporation fails to 'disclose' the future." *Belodoff v. Netlist, Inc.*, 2009 WL 1293690, at *11 (C.D. Cal. Apr. 17, 2009) (Carter, J.) ("*Belodoff II*"). Here, any risk from Amazon was in the future, and Item 303 did not require GoodRx to speculate about Amazon's future actions. Item 105 requires a discussion of "the most significant factors" that make the investment risky, and GoodRx's registration statement included just such a discussion. For instance, GoodRx stated that it "*may* face increased competition from those that attempt to replicate our business model or marketing tactics," which "*could* impact our ability to attract and retain consumers." (AC ¶ 71.) Plaintiffs fail to allege facts showing that Item 105 required specific disclosure of Amazon's plans.

For these reasons, as well as those below and in the Underwriters' and GoodRx's Motion, the Court should dismiss the AC with prejudice.

## II.    THE COURT SHOULD DISMISS THE CLAIM AGAINST THE UNDERWRITERS

### A.    The AC Fails To Allege A False Or Misleading Statement

As with the CC, Plaintiffs fail to allege plausibly that any statement in the registration statement was false or misleading. Plaintiffs again acknowledge that GoodRx's statements were "technically correct." (Opp. 12:13-15.) Therefore, Plaintiffs do not allege

that any GoodRx statement "contained an untrue statement of a material fact." 15 U.S.C. § 77k(a). Instead, Plaintiffs again rely solely on a theory of omission: they allege that statements about "GoodRx's advantages" were misleading given the "coming launch" of Amazon's PrimeRx. (Opp. 12.) As shown in the Underwriters' Motion, this allegation fails.

### 1.    The AC Does Not Allege An Omission At The Time The Registration Statement Became Effective

Plaintiffs do not and cannot dispute that "[a] claim under section 11 based on the omission of information must demonstrate that the omitted information existed at the time the registration statement became effective." *Rubke v. Capital Bancorp Ltd.*, 551 F.3d 1156, 1164 (9th Cir. 2009). As this Court previously concluded, "there are no factual allegations about the status of Amazon's plans as of the IPO in September 2020, two months before the launch." (Order 8). Plaintiffs' Opposition fails to point to any allegations that cure this defect. (Mot. 11:6-15:25.)

Plaintiffs' arguments that "Amazon was working with Express Scripts (one of GoodRx's largest PBMs) and Inside Rx (with whom GoodRx was in partnership) to launch PrimeRx" (Opp. 11:14-17) and that in "the few years" before the IPO "Express Scripts/Insider Rx were working with Amazon" (*id.* 11:18-19) are insufficient to show that Amazon imminently planned to compete with GoodRx at the time of the IPO. The Court need not accept Plaintiffs' conclusory allegations as true. *See In re Dropbox Sec. Litig.*, 2020 WL 6161502, at *5 (N.D. Cal. Oct. 21, 2020) (dismissing Section 11 claim based on "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences"). Indeed, courts consistently reject Section 11 claims when plaintiffs fail to allege sufficient facts regarding allegedly omitted *plans*. See *In re Cosi, Inc. Sec. Litig.*, 379 F. Supp. 2d 580, 587 (S.D.N.Y. 2005) (dismissing Section 11 claim for failure to disclose franchising plans when plaintiffs did "not allege that a franchising plan had been submitted to or approved by the board, or that any affirmative steps had been taken to implement a franchising plan"); *Peifa Xu v. Gridsum Holding Inc.*, 2021 WL 773002, at *10 (S.D.N.Y. Feb. 23, 2021) (dismissing Section 11 claim regarding *defendants' own*

5

anticipated product launch because "an inference that a statement or omission was materially misleading *at the time it was made . . . .* would logically require allegations regarding what facts existed, or were reasonably anticipated, about this product launch at the time of the IPO"); *In re Network Com. Inc. Sec. Litig.*, 2006 WL 1375049, at *4 (W.D. Wash. May 16, 2006) (dismissing Section 11 claim when "complaint provides no information regarding when, where, or by whom the [*defendant's own*] alleged plan [to pay additional compensation to senior executives] was developed, who the proposed beneficiaries were, or whether undisclosed compensation was ever actually paid to senior executives other than [CEO]"). As pointed out in the Underwriters' Motion (Mot. 6:18-23)—and as the Opposition ignores—the AC lacks any facts describing the alleged collaboration between Express Scripts and Amazon, let alone its status or that it had advanced to the point that it created a "material risk of competition" at the time the registration statement became effective. (AC ¶ 55.)

Plaintiffs' argument that it "would have been material to investors at the time of the IPO" that Amazon "was about to enter the market" fails. (Opp. 12:22-24.) As this Court previously concluded, "'a company is not required to forecast future events' in its public statements." (Order 7 (quoting *In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1406 (9th Cir. 1996))); *see also Verifone*, 11 F.3d at 869 (affirming dismissal of claim that a defendant "omitted to state the 'fact' that future prospects may not be as bright as past performance"). Here, regardless of what "work" Amazon and Express Scripts may have done together in the "few years leading up to the IPO" (Opp. 11:14-19), and regardless of what Plaintiffs claim Amazon was "about to" do (*id.* 12:23), PrimeRx and Amazon's price comparison tool were at best future events—not existing facts—when the registration statement became effective. Amazon had not even announced, much less operated, PrimeRx or its price comparison tool at the time of the IPO. GoodRx had no obligation to forecast its would-be competitor's product launch.

Plaintiffs' argument that "the inference can be drawn that, at the very least, Defendants were notified by Express Scripts of Amazon's and Inside Rx's *intentions* well

6

before Amazon publicly announced them" (Opp. 12:1-5 (emphasis added))—while failing to explain how or why "business relationships" with Express Scripts, Inside Rx and Amazon would make GoodRx privy to Amazon's plans—are irrelevant. Purported knowledge of Amazon's "intentions" does not mean those "intentions" had progressed to a point to make PrimeRx a concrete threat at the time of the IPO. It stands to reason that if PrimeRx was not developed or definite enough for Amazon to announce, it was not developed or definite enough for GoodRx to disclose Amazon's "intentions" as if they were presently existing competition or a competitive threat. (Mot. 7:5-23); see *Stac*, 89 F.3d at 1407 (dismissing claim based on failure to disclose competitors' plans because "another company's plans cannot be known to a certainty").

Plaintiffs argue that "simply because [Amazon's entry into the market] did not become public until after the IPO does not make the allegation hindsight pleading." (Opp. 12:25-27.) This argument misses the point. The Underwriters' argument is not that the allegedly omitted facts *became public* after the IPO; it is that the allegedly omitted facts *did not exist* at the time of the IPO. The authorities Plaintiffs cite in the Opposition—the same authorities Plaintiffs cited in support of the CC—are therefore inapposite. In those cases, unlike here, the plaintiffs alleged that the defendants omitted existing facts or facts about risks that had already come to fruition. (Opp. 12-13.) *See Derr v. RA Med. Sys., Inc.*, 2021 WL 1117309, at *6 (S.D. Cal. Mar. 24, 2021) (finding statements misleading because defendants "[d]isclos[ed] 'unforeseen' manufacturing issues and the risk that a recall 'could occur' . . . manufacturing issues had arisen and a recall was already underway"); *Boston Ret. Sys. v. Uber Techs., Inc.*, 2020 WL 4569846, at *8 (N.D. Cal. Aug. 7, 2020) (noting that plaintiff alleged "contemporaneous, not post-IPO events" to support claim); *In re Apple Inc. Sec. Litig.*, 2020 WL 2857397, at *16 (N.D. Cal. June 2, 2020) (finding statements misleading because defendant described sources of growth but omitted facts about how "throttling" contributed to growth); *Washtenaw Cnty. Emps. Ret. Sys. v. Celera Corp.*, 2012 WL 3835078, at *3 (N.D. Cal. Sept. 4, 2012) (statements about costs being "reimbursed" by insurance misleading because defendants omitted that insurers were

paying patients directly, not the company); *In re Am. Apparel, Inc. S'holder Litig.*, 855 F. Supp. 2d 1043, 1069 (C.D. Cal. 2012) (concluding that plaintiff sufficiently pleaded that there were "significant compliance problems at the time the statements were made"). Plaintiffs allege no such existing facts here.

Plaintiffs repeat their argument that "the short time between the IPO and Amazon's entry into the market [indicates] that Defendants' statements were false when made." (Opp. 15.) Plaintiffs appear to imply that the seven week gap is evidence of the falsity of the challenged statements. (*Id.*) In fact, Plaintiffs' argument is an acknowledgment that PrimeRx was not ready to launch at the time of the IPO. Amazon needed almost two months after the IPO to even announce PrimeRx.

In any event, "[c]ourts have previously rejected similar efforts to 'ask the Court to assume that Defendants *must* have known because something did in fact occur later' as 'simply inadequate pleading.'" *Jumei*, 2017 WL 95176, at *4 (quoting *Panther Partners, Inc. v. Ikanos Commc'ns, Inc.*, 538 F. Supp. 2d 662, 673 (S.D.N.Y. 2008), *aff'd*, 347 F. App'x 617 (2d Cir. 2009)); *see also In re Qudian Inc. Sec. Litig.*, 2019 WL 4735376, at *9 n.6 (S.D.N.Y. Sept. 27, 2019) ("[W]hile 'knowledge [of plans] on day-120 does not mean Defendants "knew" or "must have known" on day-1,' knowledge on 'day-2' arguably would support an inference of knowledge on 'day-1.'"); *Medina v. Tremor Video, Inc.*, 2015 WL 1000011, at *3 (S.D.N.Y. March 5, 2015) (dismissing Section 11 claim when plaintiffs argued that defendants' knowledge could be inferred when an alleged trend explained company's later loss because "[t]here were no such facts alleged here which could support an inference that Defendants were aware of the trend or uncertainty"), *aff'd*, 640 F. App'x 45 (2d Cir. 2016); *see also Weston Fam. P'ship LLLP v. Twitter, Inc.*, 29 F.4th 611, 622 (9th Cir. 2022) (concluding that "temporal proximity alone" was insufficient to allege falsity under Section 10(b)).

Indeed, courts have rejected similar arguments when the time between the IPO and another event was less than the seven weeks here. *See Peifa*, 2021 WL 773002, at *10 (dismissing Section 11 claim when plaintiffs did not allege "what facts existed, or were

reasonably anticipated, about this product launch at the time of the IPO, such as the substance or impact of future revenue recognition policies associated with the new product," "other than emphasizing that the product was introduced in the month following the IPO"); *In re CIT Grp., Inc. Sec. Litig.*, 349 F. Supp. 2d 685, 690 (S.D.N.Y. 2004) (dismissing Section 11 claim when plaintiffs argued that defendants could not have believed that loan loss reserves were adequate "because defendants decided to increase loan loss reserves just three weeks after the IPO" when "Plaintiffs provide no additional facts from which to infer that defendants did not believe that reserves were adequate or had no reasonable basis for such a belief").

Plaintiffs' authorities, the same cases Plaintiffs previously cited in support of their CC, are distinguishable. In *Gammel v. Hewlett-Packard Co.*, 2013 WL 1947525, at \*15 (C.D. Cal. May 8, 2013), plaintiffs' allegations about defendants' knowledge due to the temporal proximity of a disclosure were bolstered by plaintiffs' "numerous confidential witness statements" which corroborated their allegations. Here, Plaintiffs have failed to allege any facts about the status of Amazon's plans. In *In re Stratosphere Corp. Sec. Litig.*, 1 F. Supp. 2d 1096, 1111 (D. Nev. 1998), the court noted that "several of the documents [offered to show that statements were false at the time] are mere days or weeks after the statement at issue" and the "length of time between the statement and the document must be addressed in light of the particular statement at issue." Here, rather than "mere days or weeks," Amazon's announcement of PrimeRx occurred nearly two months after the IPO, and its announcement of the price comparison tool was eight months after the IPO. And, in *Stratosphere* the documents used to infer knowledge were internal communications and budgets from a company-hired construction firm. Plaintiffs allege no such documents showing the status of Amazon's plans.

### 2.    The AC Does Not Allege That The Omission Rendered Any Statement Misleading

Plaintiffs assert that "GoodRx's statements about their 'deep competitive moat' and 'brand advantage over our competitors' (AC ¶¶65-68) are misleading in context because at

the time they were spoken, GoodRx knew that Amazon, a competitor with an overall brand advantage over it, was about to launch a competing product." (Opp. 14:10-14.) Plaintiffs also assert that statements about GoodRx's relationships with its PBM partners "led investors to believe GoodRx had minimal, if any, competitive risks when in fact that was not true." (Opp. 16.) These arguments fail.[2]

*First*, Plaintiffs' Opposition does not dispute that "[f]or Plaintiffs to state an omission-based Section 11 claim, it is not enough that the Registration Statement omitted relevant or material facts." *Dropbox*, 2020 WL 6161502, at *6. Instead, as Plaintiffs acknowledge (Opp. 17:5-8), an omission must cause a statement to "'affirmatively create[] an impression of a state of affairs that differ[s] in a material way from the one that actually exist[s]." *Id.* (quoting *Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002)). Plaintiffs fail to explain how they meet this standard. For instance, GoodRx's statements that it had a "deep competitive moat," offered "highly competitive prices," and was a "market leader with significant scale and brand advantage over our competitors"— statements that Plaintiffs admit were "technically correct" at the time GoodRx made them (Opp. 11, 12:13-15)—do not give an impression that GoodRx had ***no*** competition or that GoodRx would not face any new or more intense competition in the future. They do not predict anything about the future at all. *See, e.g.*, *VeriFone*, 11 F.3d at 869 (rejecting claim that defendant "omitted to state the 'fact' that future performance may not be as bright as past performance" and concluding, "failure to make the omitted forecasts did not render other statements that were made misleading").

Moreover, because none of the challenged statements even mentions Amazon, the registration statement does not create an impression about Amazon as a potential threat, and it certainly does not suggest that Amazon did ***not*** plan to enter the market. *See Brody*, 280 F.3d at 1006 (affirming dismissal when statements at issue "neither stated nor implied

---

[2] As argued in GoodRx's Motion, many of the statements at issue are puffery or opinions and therefore unactionable. The Underwriters incorporate by reference the arguments in GoodRx's Reply responding to Plaintiffs' Opposition (Opp. 13:21-14:16) on this point.

anything" regarding the omitted information); *see also Belodoff v. Netlist, Inc.*, 2008 WL 2356699, at *11 (C.D. Cal. May 30, 2008) (Carter, J.) ("*Belodoff I*") (dismissing Section 11 claim when "the challenged statements are disconnected from the alleged omissions").

Plaintiffs argue that a reasonable investor would have considered information about Amazon's plans to be "important" when deciding whether to purchase or sell GoodRx stock. (Opp. 13:6-9.) Plaintiffs misunderstand the standard. Even if investors would have considered Amazon's future plans "important," Plaintiffs cannot state a claim simply by identifying "important" information that was omitted. *See In re Rigel Pharms., Inc. Sec. Litig.*, 697 F.3d 869, 880 n.8, 886 & n.15 (9th Cir. 2012) (affirming dismissal of Section 11 claim when plaintiffs failed to allege that omission of material information rendered statements misleading "even if investors would consider the omitted information significant"); *Rubke*, 551 F.3d at 1162-63 (explaining that the complaint must allege why the statements at issue "were misleading or untrue, not simply why the statements were incomplete" and that "Section 11 does not require the disclosure of all information a potential investor might take into account when making his decision"); *Brody*, 280 F.3d at 1006 (concluding that the securities laws contain no "freestanding completeness requirement"). Plaintiffs must instead allege that the statements *affirmatively created a misimpression* by omitting disclosure of Amazon's future plans. *See Dropbox*, 2020 WL 6161502, at *7.

Here, given GoodRx's extensive risk disclosures, no reasonable investor would interpret the challenged statements as a guarantee against existing or future competition, from Amazon or any other competitor. In fact, as the Court previously observed, "the Registration Statement explicitly warned that with a 'limited number of major PBMs' GoodRx 'may not expand beyond our existing PBM partners and the number of our PBM partners may even decline,' and that while 'we negotiate protective terms . . . with PBMs, our cont[r]acts with these parties are not exclusive and PBMs work with others in the industry to drive volume to their networks.'" (Order 7.) Despite Plaintiffs' assertion that the statements regarding PBMs "assured investors that GoodRx had little, if any, competitive

risk" (Opp. 16-17), this Court previously found that "[t]he challenged statements did not guarantee the continuation of GoodRx's PBM contracts or numbers and warned they might decrease, so any omitted information about Amazon did not render them misleading." (Order 8.)

Furthermore, the risk disclosures also stated that (i) GoodRx could give "no assurance that competitors will not develop and market similar offerings" to GoodRx, and "increased competition" "*could* impact [GoodRx's] ability to attract and retain consumers" (AC ¶ 71); (ii) that GoodRx operates in "a very competitive industry," and potential competitors could include "existing or new market entrants with greater resources and better offerings, reputations and market strategies," "such as discount websites, apps, cash back and loyalty programs and new comparison shopping sites," that could "form a strategic alliance with one of our competitors or other industry participants" and "have a negative impact on [GoodRx's] business." (GoodRx RJN, Ex. 1 (S-1/A) at 27-28.) *See Belodoff II*, 2009 WL 1293690, at *8-9 (concluding that warnings concerning "risky" business model, along with existing disclosures, prevented statements from being misleading); *see also Stac*, 89 F.3d at 1406 (affirming dismissal of Section 11 claim when the prospectus made "detailed disclosures concerning the risk of competition"). Therefore, GoodRx's registration statement was not misleading.

Because the challenged statements did not state or give any impression that GoodRx had no competition, or suggest that Amazon was not a potential competitor, Plaintiffs' cases are distinguishable. In *Brody*, the court affirmed dismissal of plaintiffs' section 10(b) claim, noting that "[i]f the press release had affirmatively intimated that no merger was imminent, it may well have been misleading." *Brody*, 280 F.3d at 1006 (Opp. 12). In *Berson v. Applied Signal Tech., Inc.*, 527 F.3d 982 (9th Cir. 2008) (Opp. 10), the court found that plaintiffs sufficiently alleged that statements were misleading under section 10(b), but noted that "[h]ad defendants released no backlog reports, their failure to mention the stop-work orders might not have misled anyone." *Berson*, 527 F.3d at 986-87. Likewise, in *Miller v. Thane Int'l, Inc.*, 519 F.3d 879 (9th Cir. 2008), the court found that defendants misleadingly

implied that they would list shares on the NASDAQ when the prospectus discussed the NASDAQ *six times* in the prospectus, including the cover page. *Miller*, 519 F.3d at 888. Here, *none* of the challenged statements even mentions Amazon, much less creates an impression that Amazon was not a threat.

*Second*, in their Opposition, Plaintiffs do not dispute that courts have "repeatedly refused to find disclosure of accurate historical data misleading." *Dropbox,* 2020 WL 6161502, at *7; *see also Belodoff II*, 2009 WL 1293690, at *8-10 (dismissing Section 11 claim based on "historical statement" that did "not make any predictions" about future performance). Here, the statement that GoodRx "[t]o date, [had] retained all of [its] PBM partners" (AC ¶ 69), is simply an accurate report of historical fact. It does not suggest anything about GoodRx's future partners, and the omission of Amazon's future plans does not make the statement any less true. Similarly, regarding the statements about (i) the size of GoodRx's PBM database (*id.* ¶ 68); (ii) that GoodRx is the "only significant direct-to-consumer channel" for many of its PBMs (*id.* ¶ 69); and (iii) that GoodRx "prevent[s] PBMs from circumventing our platform" (*id.* ¶ 70), this Court previously concluded that "Plaintiffs make no allegations that these statements about existing demand and contracts were false." (Order 7.) The Opposition does nothing to cure this deficiency.

### 3.    The AC Fails To Plausibly Allege The Risk Disclosure Was Misleading

Plaintiffs' argument that GoodRx's risk disclosures were misleading also fails. (Opp. 14.) *First*, Plaintiffs claim that Defendants' "generic risk disclosures" that GoodRx "***may*** face increased competition from those that attempt to replicate [its] business model . . . any of which ***could*** impact [its] ability to attract and retain consumers" does not "absolve [Defendants] of their duty to disclose." (*Id.*) Courts have rejected similar arguments. *See Stac*, 89 F.3d at 1406 (rejecting claim that risk disclosures were inadequate because company "*knew* that Microsoft was going to come out with a competitive product"); *Rubinstein v. Credit Suisse Grp. AG*, 457 F. Supp. 3d 289, 297 (S.D.N.Y. 2020) (dismissing

13

claim that risk warnings were misleading because they said risks "could" or "may" affect the value of the securities instead of that they "would").

Any case law finding risk warnings misleading found them so because the risk—and its fallout—had *already* occurred when the defendants made the statement. In *In re Snap Inc. Sec. Litig.*, 2018 WL 2972528, at *6 (C.D. Cal. June 7, 2018), the court concluded that the risk warnings at issue did not absolve defendants of a duty to disclose "*known* material adverse trends *currently affecting* Snap's user growth and the viability of its platform" (emphasis added). Similarly, in *Pirani v. Slack Techs., Inc.*, 445 F. Supp. 3d 367, 385-86 (N.D. Cal. 2020), *aff'd*, 13 F.4th 940 (9th Cir. 2021), and *Flynn v. Sientra, Inc.*, 2016 WL 3360676, at *10 (C.D. Cal. June 9, 2016), the plaintiffs pleaded facts showing that the disclosures identified risks as hypotheticals when they had already come to fruition. Here, GoodRx's disclosure did not identify increased competition as a hypothetical risk when Amazon was in fact already competing. Because Amazon had not announced PrimeRx or its price comparison tool, let alone operated them effectively against GoodRx, no risk had come to fruition. As this Court previously concluded, "there are no factual allegations about the status of Amazon's plans as of the IPO in September 2020, two months before launch." (Order 8.) Because any risk from PrimeRx or the price comparison tool had not already affected GoodRx's business, Plaintiffs' authorities are inapposite.

*Second*, Plaintiffs argue that, even though GoodRx disclosed risks from competition—including the risk of "new market entrants with greater resources" (GoodRx RJN Ex. 1 (S-1/A) at 27)—it did not specifically describe risks that Amazon would pose in the future (in the event Amazon eventually got PrimeRx up and running). (Opp. 14.) Again, there is no "rule of completeness" in securities disclosures because "[n]o matter how detailed and accurate disclosure statements are, there are likely to be additional details that could have been disclosed but were not." *Dropbox*, 2020 WL 6161502, at *6; *see also In re Progenity, Inc.*, 2021 WL 3929708, at *11 (S.D. Cal. Sept. 1, 2021) (dismissing Section 11 claim when defendants' "failure to disclose a potential decrease in ASP and revenue, 'even if investors would consider the omitted information significant,' is not

14

actionable insofar as it did not make the actual statements made about test volume fluctuation misleading"); *cf. Lefter v. Yirendai Ltd.*, 2017 WL 2857535, at *7 (C.D. Cal. June 20, 2017) (dismissing Section 10(b) claim when risk disclosures "never created the impression that the Draft Measures did ***not*** put its business model at risk; they simply did not explain the risk in the manner or level of detail that Plaintiff would have preferred"). GoodRx could always add more details about the identity and future strategy of its competitors to its risk disclosures, but the question here is not whether GoodRx could have included such information, but whether the omission created a misimpression. It did not.

Instead, to sufficiently plead that a risk disclosure was misleading, a plaintiff must show that the undisclosed information *contradicts* that disclosure. *See In re Pivotal Sec. Litig.*, 2020 WL 4193384, at *6-7 (N.D. Cal. Jul. 21, 2020); *see also Stac*, 89 F.3d at 1406 (rejecting claim that risk disclosure was misleading when the plaintiff did not "allege[] any . . . contradictory statements"). Plaintiffs ignore the fact that the eventual launch of PrimeRx was entirely consistent with GoodRx's risk disclosure. GoodRx's statements that it "may face increased competition from those that attempt to replicate our business model or marketing tactics" or competition from "new market entrants with greater resources" are entirely consistent with the fact that Amazon would enter the market almost two months later. As such, Amazon's alleged undisclosed plan was merely an additional detail *consistent* with the risk disclosure; it is not a fact that caused the disclosure to create a misimpression if omitted. In fact, if anything, Amazon's eventual launch of PrimeRx is just an example of the "increased competition" that GoodRx warned about. As such, the omission of Amazon's undisclosed plans does not render the risk disclosures misleading. *See Brody*, 280 F.3d at 1006; *see also In re TVIX Sec. Litig.*, 25 F. Supp. 3d 444, 457 (S.D.N.Y. 2014) ("Defendants are not required to 'predict the precise manner in which risks will manifest themselves.'"), *aff'd sub nom.*, *Elite Aviation LLC v. Credit Suisse AG*, 588 F. App'x 37 (2d Cir. 2014). The Opposition does not overcome this Court's prior ruling that "given the warnings about potential competitors 'replicat[ing] our business model,' any

15

missing information about Amazon's plans would make the statements simply incomplete." (Order 8.)

What is more, courts have routinely rejected arguments that disclosures are misleading for omitting specific facts about competitors. In *Stac*, for example, the Ninth Circuit determined that defendants need not disclose additional information about Microsoft's plans since "Stac could not have known whether or not Microsoft would truly [introduce a competitive product]" because "another company's plans cannot be known to a certainty." *Stac*, 89 F.3d at 1407; *see also Pirani*, 445 F. Supp. 3d, at 388 (dismissing plaintiffs' Section 11 claim regarding disclosure of competition with Microsoft when "Slack was under no duty to report the data and relative capacity of its competitors"). Rather, courts have held that an "[i]ssuer[] o[f] securities must reveal *firm-specific* information" about itself. *In re Adams Golf, Inc. Sec. Litig.*, 381 F.3d 267, 278 (3d Cir. 2004). It need not "compare itself in myriad ways to its competitors, whether favorably or unfavorably." *Id.* (concluding that company's statement about the limited supply of its own product to retailers was not rendered misleading by omission of competitors' oversupply of product); *Steinberg v. PRT Grp., Inc.*, 88 F. Supp. 2d 294, 304 (S.D.N.Y. 2000) (dismissing section 11 claim when "defendants had no duty to disclose the activities of [Company's] competitors or to state publicly that the Company was losing ground to competitors in bidding for IT contracts").

Plaintiffs attempt to distinguish *Stac*, claiming that there, the company not only disclosed risks from competition, but mentioned competitive risks from Microsoft specifically. (Opp. 13.) Plaintiffs claim that here, GoodRx "essentially said it had no real competition" and made no warnings about Amazon specifically. (*Id.*) This distinction fails. For one thing, far from saying "it had no real competition," GoodRx acknowledged, like the company in *Stac*, competition "from those that attempt to replicate our business model or marketing tactics." *See Stac*, 89 F.3d at 1406; (GoodRx RJN, Ex. 1 at 27; AC ¶ 71). GoodRx further disclosed that it "*may* face *increased competition* . . . which could impact our ability to attract and retain consumers." (AC ¶ 71.) To support its allegation that

16

GoodRx said it had no "real competition," Plaintiffs attempt to rely on the disclosure that "our competition is fragmented and consists of competitors that are smaller than us in scale." (Opp. 13.) However, this disclosure—which Plaintiffs do not dispute accurately described the state of competition at the time of the IPO—does not give any misimpression that GoodRx had *no* competition, or that GoodRx would not face competition from larger competitors in the future.

As for making a disclosure directly about Microsoft, in *Stac*, the company's main product was used in computers with Microsoft's operating system, and it had already obtained a patent infringement judgment against Microsoft. *See Stac*, 89 F.3d at 1401, 1405. Yet even then, the company was not obligated to disclose Microsoft's future plans to make its disclosures not misleading. *Id.* at 1407. Here, in contrast, Plaintiffs fail to allege similar facts to support that Amazon posed an existing competitive threat at the time of the IPO. There is even less reason GoodRx should have disclosed Amazon's future plans.

### B. The AC Fails To Allege A Violation Of Item 303 Or 105

Plaintiffs' argument that GoodRx violated Item 303 of Regulation S-K because GoodRx "knew, but did not disclose, Amazon's forthcoming entry" in the market fails. (Opp. 18.) Plaintiffs argue that Amazon's entry in the market is the "very type of disclosure required by Item 303" (Opp. 19), which requires issuers to "[d]escribe any known trends or uncertainties" that have had or that the registrant "reasonably expects will have a material favorable or unfavorable impact on net sales or revenues or income from continuing operations." (Order 12 (alteration in original) (quoting 17 C.F.R. § 229.303(a)(2)(ii)).)

Plaintiffs ignore that, under Item 303, a "plaintiff must allege facts showing defendants knew of an adverse trend, the material impact of that trend, and 'that the future material impacts are reasonably likely to occur from the present-day perspective.'" (*Id.* 12 (quoting *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1297 (9th Cir. 1998) (emphasis omitted)).) Issuers must disclose known historic trends, but they need not "disclose the future." *Belodoff II*, 2009 WL 1293690, at *12; *see also Steckman*, 143 F.3d at 1297

(distinguishing between existing trends reasonably likely to affect the future and "anticipating a future trend or event").

Despite Plaintiffs' allegations that GoodRx's revenue guidance and "Monthly Active Consumers" trends for the first quarter of 2021 "confirm" that GoodRx was required to disclose Amazon's entry (Opp. 19), Plaintiffs continue to ignore the fact that Amazon had not launched PrimeRx at the time of the registration statement. Moreover, even if Amazon disclosed its plans to GoodRx, GoodRx could not have known if Amazon would launch at all, and it would have been speculative for GoodRx to disclose that if and when Amazon launched PrimeRx, it would have a negative effect on GoodRx. *See Stac*, 89 F.3d at 1407 (concluding that even if Microsoft had informed defendant of its plans, defendant "could not have known whether or not Microsoft would truly do so"). As this Court previously found, Plaintiffs fail to allege "any specific facts about Amazon's plans that were known to GoodRx management at the time of the IPO. Without facts indicating concrete knowledge of Amazon's plans, any lack of disclosure here would be merely a failure to 'disclose the future.'" (Order 12 (quoting *Belodoff II*, 2009 WL 1293690, at * 12 (C.D. Cal. Apr. 17, 2009)).)

Plaintiffs' continued reliance on *Steckman* is misplaced. In *Steckman*, the court affirmed dismissal when plaintiffs failed to sufficiently allege that defendants "reasonably expected" a slowdown would have "a material impact on net sales, revenues or income." *Steckman*, 143 F.3d at 1297-98. Here, Plaintiffs have failed to allege that GoodRx management reasonably expected Amazon's alleged plans to have an unfavorable impact on net sales or revenues or income from continuing operations.

Plaintiffs' reliance on *Snellink v. Gulf Res., Inc.*, 870 F. Supp. 2d 930 (C.D. Cal. 2012), is similarly unhelpful. In *Snellink*, the court found that in this "not typical" situation, defendants were required to disclose a direct competitor because the competitor, which was controlled by defendant company's chairman of the board and owned by the chairman and his wife, was closely related to defendant. *Snellink*, 870 F. Supp. 2d at 939-40. The *Snellink*

18

court also noted that generally, "Regulation S–K *does not* mandate disclosure of competitors' names." *Id.* at 940 (emphasis added).

Plaintiffs also fail to cure deficiencies in their Item 105 allegations. Item 105 requires "a discussion of the material factors that make[] an investment in the registrant or offering speculative or risky." (Order 12 (citing 17 C.F.R. § 229.105(a).) Plaintiffs assert that they sufficiently allege that the risk factors in the registration statement were general and failed to disclose "the imminent risk that was already occurring," Amazon's plans to enter the market. (Opp. 19.) However, Plaintiffs have failed to overcome this Court's finding that "Plaintiffs have not sufficiently alleged facts demonstrating that Defendants knew of Amazon's specific plans and that the risk was already occurring." (Order 13.)

Additionally, GoodRx did disclose the risks it faced from competitors, including that it "*may* face increased competition from those that attempt to replicate our business model or marketing tactics," which "*could* impact our ability to attract and retain consumers." (AC ¶ 71.) Plaintiffs fail to show how omitting Amazon's plans rendered these disclosures insufficient. At the time the registration statement became effective, Amazon's launch of PrimeRx was, at best, an event that would occur in the future. Accordingly, GoodRx's risk disclosure precisely warned about the competition presented by Amazon—"increased competition from those that attempt to replicate our business model or marketing tactics." (AC ¶ 71); *see also Pivotal*, 2020 WL 4193384, at *8.

Plaintiffs' continued reliance on *Pirani*, 445 F. Supp. 3d, at 387, to bolster their Item 105 claim is misplaced. There, plaintiffs plausibly alleged that the outage risks defendants identified as hypotheticals had come true because of frequent outages before the IPO. *Id.* at 386. Here, Plaintiffs have failed to plausibly allege that Amazon's program was operational, much less actively competing, at the time of the IPO.

Finally, Plaintiffs continue to rely on *S.E.C. v. Todd*, 642 F.3d 1207, 1220 (9th Cir. 2011), to argue that "whether adverse facts were adequately disclosed is a mixed question to be decided by the trier of fact." However, *Todd* also acknowledged that resolving an issue as a matter of law is "appropriate when the adequacy of the disclosure is 'so obvious

that reasonable minds [could] not differ.'" *Id.* (alteration in original). Here, "reasonable minds" could not disagree that the registration statement amply discussed the risks GoodRx faced, including those from competitors. *See Stac*, 89 F.3d at 1409 (affirming dismissal of Section 11 claim when the prospectus "adequately disclosed the information [plaintiff] alleges Stac to have concealed and that it contained '*enough* cautionary language or risk disclosure that reasonable minds could not disagree that the challenged statements were not misleading'").

## III.    CONCLUSION

For the reasons stated herein, and in GoodRx's Reply, which the Underwriters fully incorporate by reference here and, for the convenience of the Court, do not repeat, the Court should dismiss the Amended Complaint.

DATED:  May 4, 2022

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

By:    */s/ Peter B. Morrison*
PETER B. MORRISON
*Attorneys for Defendants*
MORGAN STANLEY & CO. LLC, et al.